UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

PRISCILLA CHAVOUS,

                                    Plaintiff,

                                                        5:22-cv-00811
v.                                                      (LEK/TWD)

HOUSING VISIONS UNLIMITED, INC., MARY
A. MARRONE, and JENNIFER ST. MARKS,

                                    Defendants.

_____

APPEARANCES:

PRISCILLA CHAVOUS
Plaintiff, *pro se*
139 Maple Ter.
Syracuse, NY 13210

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

<u>**ORDER AND REPORT-RECOMMENDATION**</u>

The Clerk has sent to the Court for review a complaint filed by Priscilla Chavous

("Plaintiff").  (Dkt. No. 1.)  Plaintiff has also moved to proceed *in forma pauperis* ("IFP").  (Dkt.

No. 2.)

**I.      IFP APPLICATION**

Plaintiff declares she is unable to pay the filing fee for this action.  (Dkt. No. 2.)  After

reviewing Plaintiff's application, this Court finds she is financially eligible for IFP status.

Therefore, Plaintiff's IFP application is granted for purposes of filing only.[1]

_____

[1]  Plaintiff should also note that although her IFP application has been granted, she will still be
required to pay fees that she may incur in this action, including copying and/or witness fees.

## II.     SUFFICIENCY OF THE COMPLAINT

### A.     Legal Standard

This Court must conduct an initial review of complaints filed IFP.  28 U.S.C. § 1915(e).

When conducting this review, "the court shall dismiss the case at any time if the court

determines . . . the action . . . is frivolous or malicious . . . [or] fails to state a claim on which

relief may be granted."  28 U.S.C. §§ 1915(e)(2)(B)(i), (ii); *see also Allen v. Stringer*, No. 20-

3953, 2021 WL 4472667, at *1 (2d Cir. Sept. 30, 2021).  The Court must also dismiss a

complaint, or portion thereof, when the Court lacks subject matter jurisdiction.  *See* Fed. R. Civ.

P. 12(h)(3).  While the law mandates dismissal on any of these grounds, the Court is obliged to

construe *pro se* pleadings liberally.  *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009); *see also*

*Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding that a *pro se* litigant's complaint is to be

held "to less stringent standards than formal pleadings drafted by lawyers"); *see also Sealed*

*Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008).

"An action is frivolous when either: (1) the factual contentions are clearly baseless such

as when the claims are the product of delusion or fantasy; or (2) the claim is based on an

indisputably meritless legal theory."  *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437

(2d Cir. 1998).  "A claim is based on an indisputably meritless legal theory when either the claim

lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the

complaint."  *Id.*

To survive dismissal for failure to state a claim, a complaint must contain a short and

plain statement of the claim showing that the pleader is entitled to relief.  Fed. R. Civ. P. 8(a)(2).

This short and plain statement of the claim must be "plausible on its face."  *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The statement of the claim must do more than present "an unadorned, the-defendant-harmed-me accusation." *Id.*  It must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555; *see also* Fed. R. Civ. P. 8(a)(2).

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994).  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

### B.      Summary of Complaint

On August 1, 2022, Plaintiff commenced this action against Housing Visions Unlimited Inc., Mary A. Marrone, Manager, and Jennifer St. Marks, Supervisor (collectively, "Defendants").  (Dkt. No. 1.[2])  The complaint is a form-complaint pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*.  *Id.*  Plaintiff alleges she has cancer and glaucoma, and complains of the following conduct: "failure to make alterations to accommodate disability", "retaliation", and "other acts" in that "Housing Visions and its staff

---

[2]  According to its website, Housing Vision Unlimited, Inc. ("Housing Visions") is a not-for-profit Developer, General Contractor, and Property Manager with a mission to be the catalyst for substantiable positive change in neighborhoods through real estate development and community collaboration.  Based out of Syracuse, New York, Housing Visions works throughout Upstate New York and Pennsylvania.  Housing Visions owns and manages approximately 1,600 rental units for individuals and families, including special populations.  *See* https://www.housingvisions.org (last visited Oct. 17, 2022).

harass and intimidate.  They want the apartment to get more rent.  They are trying to evict me from the apartment.  They do not identify themselves." *Id*. at 4.

In December 2009, Plaintiff moved into a "Housing Visions house . . . because they were offering incentives for rent to own." *Id*. at 5.  She paid $490.00 in rent, along with a $490.00 security deposit.  *Id*.  Specifically, "[t]he offer was if you pay rent consecutively for 10 years you will be able to own your 1st home with the security deposit interest as a down payment and Housing Vision will help with the process." *Id*.

In May 2016, Supervisor St. Marks and the police searched Plaintiff's home when she was not present.  *Id*.  They found Plaintiff's "medical use" "cannabis trees" in a locked box, and she was arrested.  *Id*.  Supervisor St. Marks told the police "this was a landlord-tenant dispute." *Id*.  "This is when [Plaintiff] learned that they wanted [her] evicted. " *Id*.

In December 2016, Plaintiff asked for a rent reduction.  *Id*.  Supervisor St. Marks told Plaintiff "that she would have to move to a smaller place.  This was not the truth." *Id*.  In July 2021, Plaintiff put a "copy of a discontinuance letter from social security in the rent drop box." *Id*. at 6.  Nevertheless, her rent was increased.  *Id*.  Plaintiff complains she is "unable to communicate with management" because they do not answer her calls, and the office door is always locked.  *Id*.

In April 2022, Plaintiff "got an infraction in the mail" from Manager Marrone.  *Id*.  Plaintiff was told to "take down" her greenhouse that had been "up" for about a year.  *Id*.  In June 2022, Plaintiff received another "infraction in the mail" because she would not allow maintenance to take down her greenhouse.  *Id*.  Later that month, she received another "infraction in the mail" signed by Defendant Marrone for "harassment of neighbor with

violence." *Id*.  Yet it was the neighbor's sister who "threatened" Plaintiff's life.  *Id*.  Plaintiff is afraid to sleep, and her health has deteriorated.  *Id*.  "The police don't come!"  *Id*.

Plaintiff claims "they" are "trying to remove" her from the Housing Visions property by issuing the infractions, "which can lead to eviction."  *Id*.  "They used this tactic once before."  *Id*.  "They" are trying to get Plaintiff to "leave and walk away from a house that [she] can live in forever as long as [she] pays rent on time."  *Id*.  Additionally, trees are blocking the front windows, and there are no lights on the front porch or back porch.  *Id*. at 8.  She does not feel safe in her home.  *Id*.  She has to do all of her own repairs.  *Id*.  She is afraid of Housing Visions and their management, which changes often.  *Id*.  They do not wear nametags to identify themselves, and they have spare keys to her home.  *Id*.

As for relief, Plaintiff wants to own her first home.  *Id*. at 9.  She wants to be compensated for the gardens that were destroyed, all of her repair work, and for pain and suffering because her health has declined due to the stress caused by Housing Visions and their management team.  *Id*.

### C.    Analysis

Although Plaintiff utilizes a form complaint for violations of the ADA, she has failed to allege facts plausibly suggesting a claim for relief pursuant to the ADA.  (Dkt. No. 1.)

The complaint refers to the ADA generally.  Based on the facts alleged, Plaintiff cannot proceed with a claim under Title I of the ADA, which addresses employment discrimination, because she has not alleged that she was employed by Defendants.  42 U.S.C. § 12117; *see also Mary Jo C. v. New York State Local Retirement Sys.*, 707 F.3d 144, 169 (2d Cir. 2013) (quoting *Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 360, n.1 (2001)) ("'Title I of the ADA expressly deals with th[e] subject' of employment discrimination.").

"Title II of the ADA proscribes discrimination against the disabled in access to public services." *Harris v. Mills*, 572 F.3d 66, 73 (2d Cir. 2009).[3]  To plead a violation of Title II of the ADA, a plaintiff must allege "(1) that [she] is a qualified individual with a disability; (2) that [she] was excluded from participation in a public entity's services, programs, or activities or was otherwise discriminated against by a public entity; and (3) that such exclusion or discrimination was due to [her] disability." *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009) (quoting *Hargrave v. Vermont*, 340 F.3d 27, 34-35 (2d Cir. 2003)) (internal quotation marks omitted).  The public entities defined in the ADA are state or local governments and their instrumentalities.  42 U.S.C. § 12131(1).  Private entities are not subject to the provisions of Title II even if they receive government funding.  *Brennan v. NCAComp Inc.*, No. 3:22-CV-0127 (GTS/ML), 2022 WL 4290660, at *7 (N.D.N.Y. Apr. 25, 2022), *report-recommendation adopted*, 2022 WL 3097843 (N.D.N.Y. Aug. 4, 2022) (citations omitted).  Further, "individuals cannot be held liable under the ADA." *Walker v. Flynn*, No. 5:22-CV-0400 (GLS/ML), 2022 WL 2304169, at *6 (N.D.N.Y. June 27, 2022) (collecting cases), *report-recommendation adopted*, 2022 WL 2789355 (N.D.N.Y. July 15, 2022); *see Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001) (holding that Title II of the ADA does not provide for suits against individuals).

Here, the complaint is devoid of factual allegations plausibly suggesting Defendants are public entities.  Further, the complaint is devoid of factual allegations plausibly suggesting

---

[3]  "Monetary damages are available under Title II of the ADA only where the plaintiff is able to 'demonstrate intentional discrimination.'" *Frank v. Sachem Sch. Dist.*, 84 F. Supp. 3d 172, 186 (E.D.N.Y. 2015) (citing *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 275 (2d Cir. 2009)), aff'd, 633 F. App'x 14 (2d Cir. 2016) (summary order).  To prevail on a claim for intentional discrimination under Title II, "a plaintiff must prove a policymaker's 'deliberate indifference to the rights secured the disabled by those statutes,' in addition to the other elements of a Title II claim." *Gershanow v. City of Rockland*, No. 11-CV-8174 (CS), 2014 WL 1099821, at *4 (S.D.N.Y. Mar. 20, 2014) (quoting *KM ex rel. D.G. v. Hyde Park Cent. Sch. Dist.*, 381 F. Supp. 2d 343, 358 (S.D.N.Y. 2005)).

Plaintiff was unable to access public programs due to her disability, how her disability prevented

her from accessing those programs, or what accommodations she sought and was denied by

Defendants.  Thus, Plaintiff has failed to state a claim upon which relief may be granted pursuant

to Title II of the ADA.

Title III of the ADA prevents discrimination based on a disability in places of public

accommodation.  42 U.S.C. § 12182.[4]  To plead a claim under Title III of the ADA, a plaintiff

must allege "(1) that [she] is disabled within the meaning of the ADA; (2) that defendants own,

lease, or operate a place of public accommodation; and (3) that defendants discriminated against

[her] by denying [her] a full and equal opportunity to enjoy the services defendants provide."

*Camarillo v. Carrols Corp.*, 518 F.3d 153, 156 (2d Cir. 2008).  The term "public

accommodation" includes "an inn, hotel, motel, or other place of lodging . . . . "  42 U.S.C. §

12181(7)(A).  "However, the legislative history of the ADA clarifies that 'other place of lodging'

does not include residential facilities."  *Alston v. Jarrell*, No. 3:14-CV-132, 2015 WL 418153, at

*4 (D. Conn. Jan. 30, 2015) (citation omitted); *see also Reid v. Zackenbaum*, No. 05-CV-1569,

2005 WL 1993394, at *4 (E.D.N.Y. Aug.17, 2005) ("Because [the plaintiff] is alleging

discrimination in connection with a place of residence, he fails to state a claim that is subject to

the ADA under the public accommodation provision of that act.").

Here, the complaint does not allege facts plausibly suggesting that Defendants' actions

constituted discrimination under Title III of the ADA or resulted in the discriminatory provision

---

[4]  Title III provides a private right of action for injunctive relief but no right of action for
monetary relief.  42 U.S.C. § 12188; *see Krist v. Kolombos Rest. Inc.*, 688 F.3d 89, 94 (2d Cir.
2012) (holding that Title III of the ADA "authorizes private actions only for injunctive relief, not
monetary damages."); *Powell*, 364 F.3d at 86 ("Monetary relief . . . is not available to private
individuals under Title III of the ADA.").

of services to Plaintiff.  Thus, Plaintiff has failed to state a claim upon which relief may be granted pursuant to Title III of the ADA.

Title IV of the ADA does not appear to be applicable to Plaintiff's claims because Title IV prohibits disability discrimination in telecommunications.  *Genco v. Sargent & Collins LLP*, 18-CV-0107, 2018 WL 3827742, at *3 n.5 (W.D.N.Y. June 4, 2018).

Finally, Title V of the ADA, sometimes referred to as the "retaliation provision," also does not appear applicable because Plaintiff does not allege that she engaged in activity protected by the ADA, that Defendants were aware of that activity, or that Defendants took any adverse action against Plaintiff causally related to that protected activity.[5]  *Chiesa v. New York State Dep't of Labor*, 638 F. Supp. 2d 316, 323 (N.D.N.Y. 2009); *see also Constantine v. Merola*, No. 20-CV-1012 (DNH/ML), 2020 WL 8450544, at *5 (N.D.N.Y. Nov. 6, 2020) (recommending dismissal of the plaintiff's Title V ADA claims where the complaint failed to allege that the plaintiff "engaged in any protected activity, that any [d]efendant knew that [p]laintiff was involved in the protected activity, or that any adverse decision or course of action taken by [d]efendants was causally connected to that protected activity."), *report-recommendation adopted*, 2021 WL 392487 (N.D.N.Y. Feb. 4, 2021).

---

[5] Title V "does not provide for punitive or compensatory damages under the ADA." *Jones v. Volunteers of Am. Greater New York*, No. 20-CV-5581, 2022 WL 768681, at *6 n.8 (S.D.N.Y. Mar. 14, 2022) (citing *Spiegel v. Schulmann*, 604 F.3d 72, 79 (2d Cir. 2010); *Shipman v. New York State Office of Persons with Developmental Disabilities*, No. 11-CV-2780, 2012 WL 897790, at *9 (S.D.N.Y. Mar. 12, 2012) (even in the retaliation context, "individuals cannot be held liable for money damages under the ADA in either their personal or official capacities."), *report and recommendation adopted*, 2012 WL 3704837, at *3 (S.D.N.Y. Mar. 26, 2012) (money damages unavailable under the ADA)).

As a result, the Court recommends dismissing the complaint for failure to state a claim upon which relief may be granted.[6]

### D.    Opportunity to Amend

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires.").  An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.").  Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993).

---

[6]  While the Court is not unsympathetic to Plaintiff's alleged predicament, even when liberally construed, it appears the complaint sounds in state common law.  (*See*, *e.g.*, Dkt. No. 1 at 4 ("Housing Visions and its staff harass and intimidate.  They want the apartment to get more rent.  They are trying to evict me from the apartment.  They do not identify themselves."), 6 ("they" are "trying to remove me" from the Housing Visions property by issuing infractions, "which can lead to eviction.").  "Federal courts, unlike state courts, have no jurisdiction over landlord-tenant matters."  *Burke v. Vonnard*, No. 5:15-CV-1133 (MAD/TWD), 2015 WL 13744417, at *5 (N.D.N.Y. Sept. 28, 2015) (citations omitted), *report-recommendation adopted*, 2016 WL 3176653 (N.D.N.Y. June 7, 2016); *see also Rosen v. Shore Towers Apartments, Inc.*, No. 11-CV-0752, 2011 WL 2550733, at *5 (E.D.N.Y. June 27, 2011) (noting that courts in this Circuit "routinely dismiss for lack of subject matter jurisdiction" claims concerning eviction) (collecting cases).

This Court has serious doubts about whether Plaintiff can amend to assert any form of federal jurisdiction over the situation that she describes in her complaint.  Nevertheless, in deference to Plaintiff's *pro se* status and out of an abundance of caution, the Court recommends affording Plaintiff an opportunity to file an amended complaint.[7]

**WHEREFORE**, it is hereby

**ORDERED** that Plaintiff's IFP Application (Dkt. No. 2) is **GRANTED** solely for purposes of initial review; and it is further

**RECOMMENDED** that Plaintiff's complaint (Dkt. No. 1) be **DISMISSED WITH LEAVE TO AMEND**; and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), Plaintiff has fourteen days within which to file written objections to the foregoing report.[8]  Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing

---

[7]  Should Plaintiff be permitted to file an amended complaint, and if she chooses to avail herself of an opportunity to amend, any amended complaint, which shall supersede and replace the original complaint in its entirety, must allege claims of misconduct or wrongdoing against each named defendant that Plaintiff has a legal right to pursue, and over which jurisdiction may properly be exercised.  Any amended complaint filed by Plaintiff must also comply with the pleading requirements of Rules 8 and 10 of the Federal Rules of Civil Procedure.

[8]  If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. 6(a)(1)(C).

*Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1)

(Supp. 2013); Fed. R. Civ. P. 72, 6(a).

**IT IS SO ORDERED.**

Dated: October 17, 2022
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

Allen v. Stringer, Not Reported in Fed. Rptr. (2021)

2021 WL 4472667

2021 WL 4472667
Only the Westlaw citation is currently available.
United States Court of Appeals, Second Circuit.

Doran ALLEN, Plaintiff-Appellant,

v.

Scott M. STRINGER, New York City Comptroller,
Warden AMKC-C-95, Defendants-Appellees.

20-3953
|
September 30, 2021

Appeal from a judgment of the United States District Court
for the Southern District of New York (Stanton, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY
ORDERED, ADJUDGED, AND DECREED** that the
judgment of the district court is **AFFIRMED**.

**Attorneys and Law Firms**

FOR PLAINTIFF-APPELLANT: Doran Allen, pro se,
Ossining NY.

FOR DEFENDANTS-APPELLEES: No appearance.

PRESENT: RICHARD C. WESLEY, RICHARD J.
SULLIVAN, Circuit Judges, JOHN G. KOELTL, District
Judge. [*]

[*]      Judge John G. Koeltl of the United States District
Court for the Southern District of New York, sitting
by designation.

**SUMMARY ORDER**

Appellant Doran Allen, proceeding pro se, sued Scott M.
Stringer, in his capacity as New York City Comptroller, and
the unnamed warden of the Rikers Island Anna M. Kross
Center ("AMKC") under 42 U.S.C. § 1983 for violations of
the Due Process Clause of the Fourteenth Amendment. Allen
alleges that, while he was detained at AMKC, a corrections
officer refused to help him carry breakfast trays, causing him
to slip and fall on broken stairs, injuring himself. The district
court dismissed the complaint sua sponte for failure to state a
claim. We assume the parties' familiarity with the underlying

facts, the procedural history of the case, and the issues on
appeal.

We review de novo a district court's sua sponte dismissal of
a complaint under 28 U.S.C. § 1915(e)(2). *Zaleski v. Burns*,
606 F.3d 51, 52 (2d Cir. 2010). Under that statute, the district
court must dismiss a complaint filed in forma pauperis if
it determines that the action "(i) is frivolous or malicious;
(ii) fails to state a claim on which relief may be granted;
or (iii) seeks monetary relief against a defendant who is
immune from such relief." 28 U.S.C. § 1915(e)(2)(B). To
avoid dismissal, a complaint must plead "enough facts to
state a claim to relief that is plausible on its face." *Bell Atl.
Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft
v. Iqbal*, 556 U.S. 662, 678 (2009) (recognizing that "legal
conclusions" and "[t]hreadbare recitals of the elements of a
cause of action, supported by mere conclusory statements, do
not suffice" to plead a viable claim). Pro se submissions are
reviewed with "special solicitude," and "must be construed
liberally and interpreted to raise the strongest arguments that
they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d
471, 474–75 (2d Cir. 2006) (internal quotation marks and
emphasis omitted).

Conditions-of-confinement claims brought by pretrial
detainees are analyzed under the Fourteenth Amendment's
Due Process clause. *Darnell v. Pineiro*, 849 F.3d 17, 29
(2d Cir. 2017). To state such a claim, a plaintiff must
satisfy both an objective prong and a subjective prong.
*See id.* The objective prong requires "showing that the
challenged conditions were sufficiently serious to constitute
objective deprivations of the right to due process," while
the subjective prong requires "showing that [an] officer
acted with at least deliberate indifference to the challenged
conditions." *Id.* (internal quotation marks omitted). If a
conditions-of-confinement claim is predicated on an unsafe
condition, a court will analyze "whether society considers
the risk that the prisoner complains of to be so grave that it
violates contemporary standards of decency to expose *anyone*
unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25,
36 (1993).

Allen alleges that he slipped or tripped on broken stairs,
causing him to fall. But while the existence of broken stairs
could be deemed to constitute negligence on the part of
the prison, broken stairs alone cannot satisfy the objective
prong of a conditions-of-confinement claim. *See McCray v.
Lee*, 963 F.3d 110, 120 (2d Cir. 2020) (explaining that the
defendant's complaint alleging unconstitutional conditions of

2021 WL 4472667

confinement after a slip and fall in an icy prison yard did not show "exceptional circumstances" that would "elevate" the conditions "beyond the typical level of danger presented by a slippery sidewalk or a wet floor"). Because broken stairs cannot be considered a risk that is "so grave that it violates contemporary standards of decency," Allen's conditions-of-confinement claim was properly dismissed. *Helling*, 509 U.S. at 36.

**\*2** But even if it could be argued that Allen alleged an objectively serious condition, the district court properly dismissed Allen's claims against Stringer and the AMKC warden due to the obvious deficiencies in Allen's complaint. As the district court concluded, the suit against the warden in his official capacity was more properly a suit against the City of New York because Allen did not allege that the warden personally had done or failed to do anything that violated his rights. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("Suits against state officials in their official capacity... should be treated as suits against the State."). Similarly, Stringer, as the New York City Comptroller, is sued in his official capacity. Allen was therefore obligated to allege sufficient facts showing that the Fourteenth Amendment violation occurred "pursuant to a municipal policy or custom," *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004) (citing, inter alia, *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692–94 (1978)), or was caused by a "failure to train," *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) (citing *Monell*, 436 U.S. at 694). Allen did not allege any facts showing that the corrections officer acted pursuant to an unconstitutional policy or custom, or that the City of New York failed to train its corrections officers, as required for such a claim.

The district court also did not abuse its discretion by declining to exercise supplemental jurisdiction over any state-law claims because the district court properly dismissed Allen's § 1983 claim, the only claim over which it had original jurisdiction. *See Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("[A] district court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction." (internal quotation marks omitted)).

Finally, the district court did not err by denying Allen leave to amend his complaint. A district court should not dismiss a pro se plaintiff's complaint without granting leave to amend "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation marks omitted). As discussed above, the incident involving the corrections officer and the broken steps did not amount to a due process violation, and that deficiency in the complaint cannot not be cured. Accordingly, amendment would have been futile.

We have considered all of Allen's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

### All Citations

Not Reported in Fed. Rptr., 2021 WL 4472667

---

**End of Document**

© 2022 Thomson Reuters. No claim to original U.S. Government Works.

2022 WL 4290660
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Kevin Joseph Gabriel BRENNAN, Plaintiff,
v.
NCACOMP INC., Owner Kevin Gregory;
Joleen M. Bolger, (Snowdon) Manager, NCA
Inc.; Dr. Anne M. Caulkins; Dr. Ira Breite;
and Rene Barnes (Picirrili), Defendants.

3:22-CV-0127 (GTS/ML)
|
Signed April 25, 2022

**Attorneys and Law Firms**

KEVIN JOSEPH GABRIEL BRENNAN, Plaintiff, Pro Se,
319 Exchange Avenue, Townhouse #20, Endicott, New York
13760.

**ORDER and REPORT-RECOMMENDATION**

MIROSLAV LOVRIC, United States Magistrate Judge

**\*1** The Clerk has sent this *pro se* complaint together
with an amended complaint, application to proceed *in forma
pauperis*, and supplemental information to the *in forma
pauperis* application filed by Kevin Joseph Gabriel Brennan
("Plaintiff") to the Court for review. (Dkt. Nos. 1, 2, 4,
5.) For the reasons discussed below, I grant Plaintiff's *in
forma pauperis* application (Dkt. No. 2) and recommend that
Plaintiff's Amended Complaint (Dkt. No. 5) be dismissed in
its entirety (1) in part with leave to amend, and (2) in part
without leave to amend.

**I. BACKGROUND**

On February 10, 2022, Plaintiff commenced this action by the
filing of a Complaint alleging that his rights were violated
by defendants NCAComp Inc., Joleen Bolger, Dr. Anne
M. Caulkins, Dr. Ira Breite, and Rene Barnes (collectively
"Defendants"). (Dkt. No. 1.) On March 25, 2022, Plaintiff
filed an amended complaint as of right, which supersedes
his original complaint. (*See* Dkt. No. 5 [Am. Compl.]); *Int'l
Controls Corp v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977)
("It is well established that an amended complaint ordinarily
supersedes the original, and renders it of no legal effect.").

Thus, presently before the undersigned for review pursuant to
28 U.S.C. § 1915, is Plaintiff's Amended Complaint.

Plaintiff alleges that he is disabled based, at least in part, on
an injury he sustained at work on November 1, 1995. (*See
generally* Dkt. No. 5.)

Plaintiff alleges that "in the Spring of 2018" his workers'
compensation case was "turned over to NCAComp. Inc." and
Defendant Bolger was assigned as his claim examiner. (*Id.*)

Plaintiff alleges that on December 14, 2018, he was injected
with Depomedrol by Defendant Caulkins while he was also
taking Meloxicam and Voltaren Gel. (*Id.*) Plaintiff alleges that
in January 2019, he "experienced the worst episode of rectal
bleeding he had ever had." (*Id.*) Plaintiff alleges that due to
his rectal bleeding, he went to "the Lourdes Walk-in," where
he was directed to stop taking the Meloxicam but the Voltaren
Gel was not discussed. (*Id.*)

Plaintiff alleges that on February 10, 2019, he filled his
prescription for Voltaren Gel, but the amount that he was
usually prescribed doubled "from two tubes to four." (*Id.*)
Plaintiff alleges that, pursuant to New York State Workers'
Compensation Law, any prescription medication change must
be accompanied by either an appointment where the change
was requested or a written order from a treating physician
explaining why the change was necessary. (*Id.*) Plaintiff
alleges that he did not request a change in the amount of
Voltaren Gel and he has not seen any written order explaining
a need for the increase. (*Id.*)

Plaintiff alleges that on February 26, 2019, he was examined
by Dr. Saleem, who ordered a colonoscopy to determine the
cause of Plaintiff's rectal bleeding. (*Id.*) Plaintiff alleges that
Defendant Bolger "assisted the office staff" at Dr. Saleem's
office "with completing the [C-4] form." (*Id.*) Plaintiff alleges
that he did not have the colonoscopy procedure because his
request through workers' compensation was not approved and
he did not have health insurance. (*Id.*)

**\*2** Plaintiff alleges that, at some point in time, due to the
rectal bleeding, on his own accord, he stopped taking all of
the other medication he was prescribed except the Voltaren
Gel. (*Id.*)

Plaintiff alleges that on June 1, 2019, he obtained health
insurance. (*Id.*) Plaintiff alleges that on June 12, 2019, he
scheduled his first colonoscopy, and was diagnosed with

ulcerative colitis, which requires him to take Mesalamine for the rest of his life. (*Id.*) The same day, Plaintiff alleges that he applied the Voltaren Gel and looked closely at the container, which contained a warning to discontinue use if rectal bleeding occurred. (*Id.*) Plaintiff alleges that he immediately ceased use of Voltaren Gel and began taking Mesalimine, and the rectal bleeding stopped the following day. (*Id.*)

Plaintiff alleges that Voltaren Gel is "a powerful NSAID which contains the chemicals known to cause deterioration of the mucosal walls of the colon." (*Id.*) Plaintiff alleges that Defendant Caulkins was aware of the risks associated with Voltaren and that in July of 2018, she stated that his Voltaren Gel dosage should not be increased due to toxicity. (*Id.*) Plaintiff alleges that he filed a medical malpractice lawsuit in New York State court against Defendant Caulkins, and that in retaliation, she improperly doubled his prescription for Voltaren Gel. (*Id.*)

Plaintiff alleges that Defendant Bolger improperly authorized his Voltaren Gel prescription change but failed to authorize the colonoscopy procedure. (*Id.*)

Plaintiff alleges that Defendant NCAComp and its employees intentionally deny medical treatment so that it does not have to pay for the treatment. (*Id.*)

Plaintiff alleges that Defendant Barnes is associated with the New York State Workers' Compensation Board and was aware that Plaintiff was being treated for rectal bleeding, that his Voltaren Gel prescription was doubled, and took no action to protect him. (*Id.*)

Plaintiff alleges that in December—of an unspecified year—he received a report completed by independent medical examiner Defendant Breite, which included several false claims and omitted significant information. (*Id.*)

Based on these factual allegations, Plaintiff appears to assert the following seven causes of action: (1) a claim that Defendant Caulkins retaliated against him by improperly doubling his prescription for Voltaren Gel after he filed a medical malpractice suit against her, and that Defendant Bolger authorized the improper increased prescription; (2) a claim that Defendant Bolger intentionally denied Plaintiff's necessary medical treatment by failing to provide information when requested and then providing inaccurate information; (3) a claim that Defendant NCAComp, through its employees,

denied Plaintiff his prescribed gym membership in violation of New York State Workers' Compensation Law; (4) a claim that Defendant Caulkins falsified records by stating that Plaintiff's left hip replacement was not causally related to his work injury; (5) a claim that Defendant Breite violated his Hippocratic oath by stating that ulcerative colitis is not a disease, which caused violations of Plaintiff's "constitutional right to due process and equal access to medical treatment"; (6) a claim that Defendant Barnes has been e-mailed "many documents" and knows that Plaintiff "has been grossly denied his right to due process and access accommodations" and that he is permanently disabled but the Workers' Compensation Board refuses to identify him as such, which is a "gross violation of [his] right to life, liberty, and the pursuit of happiness" and an intentional infliction of emotional distress; and (7) a claim that pursuant to New York Workers' Compensation Law, Defendant NCAComp intentionally denied Plaintiff a medical procedure, which resulted in denial of his procedural and substantive due process rights and was a "gross violation of the covenant of 'Exclusive Remedy.' " (*Id.*)

**\*3** As relief, Plaintiff seeks $120,000.00 in damages from each of Defendants and treble damages pursuant to the Americans with Disabilities Act. (*Id.*)

## II. PLAINTIFF'S APPLICATION TO PROCEED *IN FORMA PAUPERIS*

"When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $402, must ordinarily be paid. 28 U.S.C. § 1914(a). A court is authorized, however, to permit a litigant to proceed *in forma pauperis* status if a party "is unable to pay" the standard fee for commencing an action. 28 U.S.C. § 1915(a)(1). [1] After reviewing Plaintiff's *in forma pauperis* application (Dkt. No. 2), the Court finds that Plaintiff meets this standard. Therefore, Plaintiff's application to proceed *in forma pauperis* is granted. [2]

[1]     The language of that section is ambiguous because it suggests an intent to limit availability of *in forma pauperis* status to prison inmates. *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). The courts have construed that section, however, as making *in forma pauperis* status available to any litigant who can meet the governing financial criteria. *Hayes v.*

*United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

2    Plaintiff is reminded that, although his application to proceed *in forma pauperis* has been granted, he is still required to pay fees that he may incur in this action, including copying and/or witness fees.

### III. LEGAL STANDARD FOR REVIEW OF THE COMPLAINT

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).

In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief ... requires the ... court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citation and punctuation omitted).

"In reviewing a complaint ... the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

**\*4** Courts are "obligated to construe a pro se complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009); *see also Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam) (reading the plaintiff's *pro se* complaint "broadly, as

we must" and holding that the complaint sufficiently raised a cognizable claim). "[E]xtreme caution should be exercised in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and [the] parties ... have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).

The Court, however, also has an overarching obligation to determine that a claim is not legally frivolous before permitting a *pro se* plaintiff's complaint to proceed. *See, e.g.,* *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (holding that a district court may *sua sponte* dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee). "Legal frivolity ... occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint." *Aguilar v. United States*, 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at *2 (D. Conn. Nov. 8, 1999) (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998)); *see also* *Neitzke v. Williams*, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory ... or factual contentions lack an arguable basis."); *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory for purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").

### IV. ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Complaint with this principle in mind, I recommend that all causes of action be dismissed.

#### A. Claims Pursuant to 42 U.S.C. § 1983

To the extent that Plaintiff attempts to assert any constitutional claims, the Court construes those claims as made pursuant to 42 U.S.C. § 1983. "Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes state action." *Fabrikant v. French*, 691 F.3d 193, 206 (2d Cir. 2012) (internal quotation marks omitted). "A plaintiff pressing a claim of [a] violation of his constitutional rights under § 1983 is thus required to show state action." *Fabrikant*, 691 F.3d at 206 (internal quotation marks omitted). "State action requires

*both* ... the exercise of some right or privilege created by the State ... *and*" the involvement of "a person who may fairly be said to be a state actor." *Flagg v. Yonkers Sav. & Loan Ass'n, FA*, 396 F.3d 178, 186 (2d Cir. 2005) (internal quotation marks and brackets omitted).

There is no single test that is determinative of whether a private person or entity may be a state actor, but rather a host of factors. *Baum. N. Dutchess Hosp.*, 764 F. Supp. 2d 410, 428 (N.D.N.Y. 2011) (Treece, M.J.). A state actor may be found when: (1) "[the challenged activity] results from the State's exercise of coercive powers"; (2) "the State provides significant encouragement, either overt or covert ... or when a private actor operates as a willful participant in joint activity with the State or its agents"; (3) "it is controlled by an agency of the State;" (4) "it has been delegated a public function by the State [known as the public function test]"; or (5) "it is entwined with governmental policies or when government is entwined in its management or control[.]" *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n,* 531 U.S. 288, 296 (2001) (citations, quotation marks, and alterations omitted).[3]

[3]
    On occasion, these criteria have been stated differently but the impact remains the same:
        The conduct of private actors can be attributed to the State for [§ 1983] purposes if (1) the State compelled the conduct, (2) there is a sufficiently close nexus between the State and the private conduct, or (3) the private conduct consisted of activity that has traditionally been the exclusive prerogative of the State.
    *Hogan v. A.O. Fox Mem'l Hosp.*, 346 F. App'x 627, 629 (2d Cir. 2009) (citing *Sybalski v. Indep. Grp. Home Living Program, Inc.,* 546 F.3d 255, 257 (2d Cir. 2008)).

**\*5** Here, Defendants ostensibly are private actors. However, in the interest of reading Plaintiff's Amended Complaint "liberally and interpreted to raise the strongest arguments that [it can] suggest," *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013), the Court considers whether Defendants' alleged activities establish "such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be treated as that of the State itself.' " *Tancredi v. Metropolitan Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir. 2003) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 296 (2001)).

Plaintiff does not allege facts plausibly suggesting that the state exercised coercive power over Defendants. Therefore, the Court considers the joint-activity and public-function tests.

"The touchstone of joint action is often a 'plan, prearrangement, conspiracy, custom, or policy' shared by the private actor and the [state].' " *Forbes v. City of New York*, 05-CV-7331, 2008 WL 3539936, at \*5 (S.D.N.Y. Aug. 12, 2008) (quoting *Ginsberg v. Healey Car & Truck Leasing, Inc.*, 189 F.3d 268, 272 (2d Cir. 1999)). "A private actor can only be a willful participant in joint activity with the State or its agents if the two share some common goal to violate the plaintiff's [constitutional] rights." *Betts v. Shearman*, 751 F.3d 78, 85 (2d Cir. 2014) (internal citations omitted). Here, Plaintiff fails to allege facts plausibly suggesting the existence of a conspiracy or a "prearrangement" between Defendants and the state. As a result, I find that Plaintiff fails to allege facts plausibly suggesting joint action. *See Brignardello v. Las Vegas Metro Police Dep't,* 06-CV-0855, 2006 WL 3308428, at \*2-3 (D. Nev. Nov. 13, 2006) (finding that the complaint "failed to set forth any facts showing that [the third-party insurance administrators] conspired with [the Las Vegas Metro Police Department] to deprive [the plaintiff] of his constitutional rights" and thus, failed to allege " 'joint action with state actors to violate' his constitutional rights.").

Under the public-function test, "a private entity may be considered a state actor when it exercises a function 'traditionally exclusively reserved to the State.' " *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1926 (2019). "The [Supreme] Court has stressed that 'very few' functions fall into that category." *Manhattan Cmty. Access Corp.*, 139 S. Ct. at 1929 (quoting *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 158 (1978)). Public functions may include running elections and operating a company town but not running sports associations and leagues, administering insurance payments, operating nursing homes, providing special education, representing indigent criminal defendants, resolving private disputes, or supplying electricity. *Id.*

Here, Plaintiff fails to allege facts plausibly suggesting that Defendants perform a public function. Neither the provision of medical services nor the administration of insurance payments in connection with state workers' compensation system are functions traditionally and exclusively exercised by the government. *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 529 U.S. 40, 55-57 (1999) (holding that private companies' administration of insurance payments in connection with state

workers' compensation system was not state action); *DuBois v. Bedford-Flatbush Chiropractic, P.C.*, 409 F. Supp. 3d 62, 69-70 (E.D.N.Y. Aug. 29, 2019) (finding that "[n]either the provision of chiropractic services nor the issuance of medical reports pursuant to FECA is a function traditionally and exclusively exercised by government."); *Peterec-Tolino v. Ace Am. Ins. Co.*, 20-CV-5354, 2020 WL 5211045, at *4-5 (S.D.N.Y. Aug. 28, 2020) (holding that independent medical examiners and a private insurance company are not state actors for claims pursuant to 42 U.S.C. § 1983).

**\*6** Therefore, I find that drawing all reasonable inferences and construing the Amended Complaint liberally, it fails to allege facts plausibly suggesting that Defendants are state actors for purposes of liability pursuant to 42 U.S.C. § 1983. As a result, I recommend that Plaintiff's claims pursuant to 42 U.S.C. § 1983, be dismissed for failure to state a claim.

In the alternative, I recommend that to the extent that Plaintiff asserts a claim pursuant to the equal protection clause, that claim be dismissed for failure to state a claim.

Under the Equal Protection Clause, a state and its instrumentalities may not deny "any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV. At its core, equal protection prohibits the government from treating similarly situated persons differently. *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985); *Sound Aircraft Services, Inc. v. Town of East Hampton*, 192 F.3d 329, 335 (2d Cir. 1999). Vague or nonspecific allegations are insufficient to make out an equal protection claim.

In order to claim that the conduct of Defendants violate Plaintiff's equal protection rights, he must allege that:

> (1) ... compared with others similarly situated, [he] was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure [him].

*Zahra v. Town of Southold*, 48 F.3d 674, 683 (2d Cir. 1995) (quoting *FSK Drug Corp. v. Perales*, 960 F.2d 6, 10 (2d Cir. 1992)).

Plaintiff appears to assert an equal protection claim under the "class of one" theory. *Neilson v. D'Angelis*, 409 F.3d 100, 104 (2d Cir. 2005), *overruled on other grounds by Appel v. Spiridon*, 531 F.3d 138, 139-40 (2d Cir. 2008). Under this theory, a plaintiff must show that he was "intentionally treated differently from other similarly-situated individuals without any rational basis." *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006). Additionally, "an extremely high degree of similarity between" Plaintiff and the person with whom he compares himself must be alleged. *Clubside, Inc.*, 468 F.3d at 159 (citing *Neilson*, 409 F.3d at 104).

The Amended Complaint fails to allege facts plausibly suggesting that Plaintiff was treated differently from other similarly-situated individuals without any rational basis. As a result, I recommend that, in the alternative, Plaintiff's equal protection claim against Defendants be dismissed for failure to state a claim.

### B. Claims Pursuant to the ADA

To the extent that Plaintiff intended to assert claims pursuant to the ADA, I recommend that those claims be dismissed for failure to state a claim upon which relief may be granted.

The Amended Complaint includes no allegations of discrimination based on Plaintiff's disability. (*See generally* Dkt. No. 5.) In addition, construing the Amended Complaint liberally, as the Court must, Plaintiff failed to allege facts plausibly suggesting claims pursuant to Title II, Title III, or Title V of the ADA. [4]

[4] Based on the facts alleged, Plaintiff could not proceed with a claim under Title I of the ADA, which addresses employment discrimination, because he has neither alleged that he was employed by Defendants, nor alleged that he exhausted administrative remedies by filing a charge with the Equal Employment Opportunity Commission before pursuing litigation in federal court. 42 U.S.C. § 12117; *see Mary Jo C. v. New York State Local Retirement Sys.*, 707 F.3d 144, 169 (2d Cir. 2013) (quoting *Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S.

356, 360, n.1 (2001)) (" 'Title I of the ADA expressly deals with th[e] subject' of employment discrimination."). Moreover, Title IV of the ADA does not appear to be applicable to Plaintiff's claims because Title IV prohibits disability discrimination in telecommunications. *Genco v. Sargent & Collins LLP*, 18-CV-0107, 2018 WL 3827742, at *3, n.5 (W.D.N.Y. June 4, 2018).

### 1. Title II of the ADA

**\*7** Title II of the ADA "proscribes discrimination against the disabled in access to public services." *Harris v. Mills*, 572 F.3d 66, 73 (2d Cir. 2009) (citing *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 84-85 (2d Cir. 2004), *corrected*, 511 F.3d 238 (2d Cir. 2004)). The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To plead a violation of Title II of the ADA, a plaintiff must allege "(1) that [he] is a qualified individual with a disability; (2) that [he] was excluded from participation in a public entity's services, programs, or activities or was otherwise discriminated against by a public entity; and (3) that such exclusion or discrimination was due to [his] disability." *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009) (quoting *Hargrave v. Vermont*, 340 F.3d 27, 34-35 (2d Cir. 2003)) (internal quotation marks omitted).

A "qualified individual" is

> an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

42 U.S.C. § 12131(2). A qualified individual can base a discrimination claim on any of "three available theories: (1)

intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation." *Tsombanidis v. West Haven Fire Dep't*, 352 F.3d 565, 573 (2d Cir. 2003).

The public entities defined in the ADA are state or local governments and their instrumentalities. 42 U.S.C. § 12131(1). Private entities are not subject to the provisions of Title II even if they receive government funding. *Wilshire v. L&M Dev. Partners*, 20-CV7998, 2022 WL 67067, at *3 (S.D.N.Y. Mar. 22, 2022) (citing *Wiltz v. N.Y. Univ.*, 19-CV-3406, 2019 WL 8437456, at *7 (S.D.N.Y. Dec. 23, 2019), *report-recommendation adopted by*, 2020 WL 614658 (S.D.N.Y. Feb. 10, 2020) (collecting cases on private entities receiving government funding not being subject to Title II of the ADA)).

Here, the Amended Compliant is devoid of factual allegations plausibly suggesting that Defendants are public entities. As set forth above in Part IV.A. of this Order and Report-Recommendation, the Amended Complaint fails to allege facts plausibly suggesting that Defendants are state actors. In addition, the Amended Complaint fails allege facts plausibly suggesting that Plaintiff was unable to access programs due to his disability, how his disability prevented him from accessing those programs, or what accommodations he sought and was denied by Defendants. (*See generally* Dkt. No. 5.)

Moreover, "[w]hen a private individual seeks damages under Title II of the ADA, the Second Circuit requires the plaintiff to 'establish that the Title II violation was motivated by either discriminatory animus or ill will due to disability.' " *Day v. Warren*, 06-CV-0155, 2008 WL 474261, at *4 (D. Conn. Feb. 7, 2008) (quoting *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 111 (2d Cir. 2001)). The Amended Complaint fail to allege facts plausibly suggesting discriminatory animus or ill will towards Plaintiff's alleged disability or disabilities. (*See generally* Dkt. No. 5.)

As a result, I recommend that Plaintiff's ADA claims under Title II be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim upon which relief may be granted. *See Hill v. LaClair*, 20-CV-0441, 2020 WL 2404771, at *8 (N.D.N.Y. May 11, 2020) (Hurd, J.) (dismissing ADA Title II claims "pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted."). [5]

5
In the alternative, to the extent that Plaintiff attempts to assert ADA Title II claims against Defendants Bolger, Caulkins, Breite, and Barnes in their individual capacities, I recommend that those claims be dismissed because "individuals cannot be held liable under the ADA." *Netti v. Ayers*, 17-CV-0976, 2017 WL 7542494, at *18 (N.D.N.Y. Oct. 5, 2017) (Baxter, M.J.) (citing *Baross v. Greenlawn*, 16-CV-4805, 2017 WL 2124424, at *4 (E.D.N.Y. May 15, 2017)), *report and recommendation adopted by* 2018 WL 813509 (N.D.N.Y. Feb. 9, 2018) (Suddaby, C.J.); *accord Rosenfield v. New York State Div. of Veterans' Affairs*, 18-CV-1299, 2019 WL 4621962, at *10 (N.D.N.Y. Sept. 24, 2019) (Suddaby, C.J.); *see Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001) (holding that Title II of the ADA does not provide for suits against individuals); *Fox v. State Univ. of N.Y.*, 497 F. Supp. 2d 446, 449 (E.D.N.Y. 2007) ("[T]here is no individual liability under Title I or Title II of the ADA, or the ADEA."); *Sutherland v. New York State Dep't of Law*, 96-CV-6935, 1999 WL 314186, at *7 (S.D.N.Y. May 19, 1999) ("Individual defendants may not be held personally liable for alleged violations of the ADA.").

## 2. Title III of the ADA

**\*8** Title III of the ADA, which provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). Doctors' offices and hospitals are considered "public accommodations" for the purposes of the ADA. 42 U.S.C. § 12181(7)(F) (defining "public accommodation" to include "a ... professional office of a health care provider [and] hospital").

Discrimination on the basis of disability in public accommodations involves, among other things, "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services." *Camarillo v. Carrols Corp.*, 518 F.3d 153, 156

(2d Cir. 2008) (citing 42 U.S.C. § 12182(b)(2)(A)(iii)); *see also Krist v. Kolombos Rest. Inc.*, 688 F.3d 89, 94 (2d Cir. 2012) (quoting 42 U.S.C. § 12182(b)(2)(A)(ii) ("The Act defines discrimination to include ... 'a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods [and] services ... to individuals with disabilities, unless ... such modifications would fundamentally alter the nature of such goods [and] services.' ")).

The Amended Complaint does not allege facts plausibly suggesting that Defendants' actions constituted discrimination under Title III of the ADA or resulted in the discriminatory provision of services to Plaintiff. Although the Amended Complaint appears to allege that: (1) Defendant NCAComp denied Plaintiff's claims in an effort to save money, (2) Defendant Caulkins rendered inadequate medical care, (3) Defendant Bolger knew of Defendant Caulkins' improper medical care and inappropriately approved Plaintiff's prescription change, (4) Defendant Breite's independent medical report included inaccurate information, and (5) Defendant Barnes knew of Defendant Caulkins' improper medical care, it does not allege that Defendants took these actions for the purpose of discriminating against Plaintiff because of an alleged disability.

As a result, I recommend that Plaintiff's disability discrimination pursuant to Title III of the ADA be dismissed for failure to state a claim.

In the alternative, I recommend that Plaintiff's Title III claim be dismissed because Plaintiff seeks only monetary damages, and the sole available remedy under Title III of the ADA is injunctive relief. 42 U.S.C. § 12188(a)(1). "Monetary relief ... is not available to private individuals under Title III of the ADA." *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 86 (2d Cir. 2004); *see also Krist*, 688 F.3d at 94 (holding that Title III of the ADA "authorizes private actions only for injunctive relief, not monetary damages"). "Since [P]laintiff seeks only monetary relief with respect to [his] ADA claims", the Amended Complaint "fails to state a plausible claim for relief under Title III of the ADA." *Sandler v. Benden*, 15-CV-1193, 2016 WL 9944017, at *16 (E.D.N.Y. Aug. 19, 2016), *aff'd*, 2017 WL 5256812 (2d Cir. Nov. 13, 2017).

Here, Plaintiff has not requested injunctive relief and thus has failed to state a claim upon which relief may be granted. *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 478 (1990)

(*quoting Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983)). As a result, I recommend that, to the extent that Plaintiff intended to assert claims pursuant to Title III of the ADA, those claims be dismissed.

### 3. Title V of the ADA

**\*9** 42 U.S.C. § 12203(a) provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." For an ADA retaliation claim, a plaintiff must plead the following: "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse ... action; and (4) a causal connection between the protected activity and the adverse ... action." *Perez v. City of New York*, 843 F. App'x 406, 407 (2d Cir. 2021) (quoting *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010)).

"Protected activity is action taken to protest or oppose statutorily prohibited discrimination." *Shannon v. Credit Agricole Sec. (USA), Inc.*, 17-CV-0667, 2021 WL 1063183, at \*9 (S.D.N.Y. Mar. 19, 2021) (quoting *Natofsky v. City of New York*, 921 F.3d 337, 354 (2d Cir. 2019)). "Protected activities include requests for reasonable accommodations." *Wells v. Achievement Network*, 18-CV-6588, 2021 WL 810220, at \*11 (S.D.N.Y. Mar. 2, 2021) (citing *Weixel v. Bd. of Educ. of City of N.Y.*, 287 F.3d 138, 148 (2d Cir. 2002)).

The Amended Complaint fails to allege facts plausibly suggesting that Plaintiff engaged in any protected activity. Instead, Plaintiff appears to allege that he filed a medical malpractice lawsuit against Defendant Caulkins in February 2019. (Dkt. No. 5 at 7-8.) This is insufficient to allege that Plaintiff "has opposed any act or practice made unlawful by" the ADA. *See Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000) ("The term 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination."); *Weinstein v. Miller*, 21-CV-4543, 2021 WL 3038370, at \*7 (S.D.N.Y. July 15, 2021) (dismissing the plaintiff's complaint where she failed to allege facts "suggesting that she made [a] complaint of disability discrimination or that any Defendant discriminated or retaliated against her because of any such complaint."); *Smith v. City of New York*, 15-CV-4493, 2016 WL 4574924, at \*10 (S.D.N.Y. Sept. 1, 2016) (finding that the plaintiff's

"objection to being subjected to the disrobement policy does not constitute a protected activity because [the plaintiff] cannot show an objectively reasonable basis for believing that the policy violates the ADA.").

Moreover, Plaintiff has not alleged any adverse actions that would be sufficient to state a claim of retaliation. "Actions are materially adverse if they are harmful to the point that they could well dissuade a reasonable [person] from making or supporting a charge of discrimination [or retaliation]." *Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010). It is well established that complaints about medical treatment are generally insufficient to state a claim under the ADA. *See United States v. Univ. Hosp.*, 729 F.2d 144, 156-60 (2d Cir. 1984); *see also Burger v. Bloomberg*, 418 F.3d 882, 883 (8th Cir. 2005) ("[A] lawsuit under the Rehab[ilitation] Act or the Americans with Disabilities Act (ADA) cannot be based on medical treatment decisions.") (citing cases). Here, the undersigned simply will not second-guess Defendant Caulkins' alleged decision to change Plaintiff's prescription quantity. *See Smith*, 2016 WL 4574924, at \*11 (finding that the plaintiff failed to allege a claim of retaliation pursuant to the ADA based on allegations that the plaintiff disagreed with the decisions made by the defendant hospital about the plaintiff's care).

**\*10** As a result, I recommend that, to the extent Plaintiff intended to assert claims pursuant to Title V of the ADA, those claims be dismissed for failure to state a claim upon which relief may be granted.

In the alternative, I recommend that Plaintiff's claim be dismissed because Title V "does not provide for punitive or compensatory damages under the ADA." *Jones v. Volunteers of Am. Greater New York*, 20-CV-5581, 2022 WL 768681, at \*6 n.8 (S.D.N.Y. Mar. 14, 2022) (citing *Spiegel v. Schulmann*, 604 F.3d 72, 79 (2d Cir. 2010); *Alvarado v. Cajun Operating Co.*, 588 F.3d 1261, 1269-70 (9th Cir. 2009) (holding "punitive and compensatory damages are not available for ADA retaliation claims."); *Kramer v. Banc of America Securities, LLC*, 355 F.3d 961 (7th Cir. 2004), *cert. denied*, 542 U.S. 932 (2004) (holding that a plaintiff can only recover equitable relief for a retaliation claim under the ADA); *Shipman v. New York State Office of Persons with Developmental Disabilities*, 11-CV-2780, 2012 WL 897790, at \*9 (S.D.N.Y. Mar. 12, 2012) (even in the retaliation context, "individuals cannot be held liable for money damages under the ADA in either their personal or official capacities."), *report and recommendation adopted* 2012 WL 3704837, at \*3

(S.D.N.Y. Mar. 26, 2012) (money damages unavailable under the ADA)).

### C. State Law Claims

Having found that all of Plaintiff's federal claims are subject to dismissal, I recommend that, to the extent that Plaintiff has asserted any state law claims, the Court decline to exercise jurisdiction over those claims. *See* 28 U.S.C. § 1367(c)(3) (providing that a district court "may decline to exercise supplemental jurisdiction over [pendent state law claims] if ... the district court has dismissed all claims over which it has original jurisdiction"); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."); *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 53 (2d Cir. 1986) (citing *Kavit v. A.L. Stamm & Co.*, 491 F.2d 1176, 1180 (1974)) (holding that "federal courts, absent exceptional circumstances, should abstain from exercising pendent jurisdiction when federal claims in a case can be disposed of by summary judgment").

In the alternative, I recommend that Plaintiff's state law claims be dismissed for failure to state a claim.

#### 1. Intentional Infliction of Emotional Distress ("IIED")

New York has adopted the Restatement (Second) formulation of IIED. *Howell v. N.Y. Post Co., Inc.*, 81 N.Y.2d 115 (N.Y. 1993). "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress." Restatement (Second) of Torts § 46(1) (1965). This broad definition, is "both a virtue and a vice." *Howell*, 81 N.Y.2d at 122. "The tort is as limitless as the human capacity for cruelty. The price for this flexibility in redressing utterly reprehensible behavior, however, is a tort that, by its terms, may overlap other areas of the law, with potential liability for conduct that is otherwise lawful." *Id.* Therefore, IIED "may be invoked only as a last resort, to provide relief in those circumstances where traditional theories of recovery do not." *Salmon v. Blesser*, 802 F.3d 249, 256 (2d Cir. 2015) (internal citations omitted).

**\*11** Under New York law, then, a claim for IIED requires a showing of: "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." *Howell*, 81 N.Y.2d at 121.

Under New York law, although "[t]he standard of outrageous conduct is strict, rigorous and difficult to satisfy ..., that is not the case when there is a deliberate and malicious campaign of harassment or intimidation." *Scollar v. City of New York*, 74 N.Y.S.3d 173, 178 (N.Y. App. Div. 1st Dep't 2018) (internal quotations omitted). To be sure, "it is manifestly neither practical nor desirable for the law to provide[ ] a remedy against any and all activity which an individual might find annoying." *Nader v. Gen. Motors Corp.*, 25 N.Y.2d 560, 569 (N.Y. 1970). At the same time, "where severe mental pain or anguish is inflicted through a deliberate and malicious campaign of harassment or intimidation," IIED provides a remedy. *Nader*, 25 N.Y.2d at 569. "In other words, under New York law, the proper inquiry is not merely whether each individual act might be outrageous. Rather, the question is whether those actions—under the totality of the circumstances—amounted to a deliberate and malicious campaign." *Rich v. Fox News Network, LLC*, 939 F.3d 112, 123 (2d Cir. 2019).

The Amended Complaint fails to allege facts plausibly suggesting that Defendants engaged in extreme and outrageous conduct. As a result, in the alternative, I recommend that Plaintiff's claim for IIED be dismissed for failure to state a claim upon which relief may be granted.

#### 2. Hippocratic Oath

"[V]iolating the Hippocratic oath does not state a claim upon which relief can be granted." *See Moore v. St. John's Hosp.*, 15-CV-4177, 2016 WL 1735769, at \*3 (C.D. Ill. Mar. 23, 2016); *accord Brady v. Halawa Corr. Facility Med. Unit Staff*, 05-CV0144, 2006 WL 2520607 (D. Hawaii Aug. 29, 2006); *see also Rose v. Borsos*, 17-CV-0204, 2018 WL 3967673, at \*12 (E.D. Tenn. Aug. 17, 2018) (dismissing the plaintiff's claim for violation of the Hippocratic Oath because "there are no federal ... civil causes of action for violations of professional ethics.").

As a result, I recommend that Plaintiff's claim be dismissed for failure to state a claim. [6]

6  Even if the Court construed Plaintiff's violation of the Hippocratic Oath claim as a medical malpractice claim, a medical malpractice claim is pursuant to New York law. *See Buchanan v. Hesse*, 21-CV-0649, 2022 WL 829163, at *1 (Mar. 21, 2022) (concluding that a medical malpractice claim is governed by New York law); *Lindenbaum v. Northwell Health, Inc.*, 21-CV-1525, 2022 WL 541644, at *7 (E.D.N.Y. Feb. 23, 2022) (opting to exercise supplemental jurisdiction over the plaintiff's "New York State law claims for medical malpractice" because the plaintiff's "Section 1983 claim will proceed."). As set forth above, I recommend that because Plaintiff's federal claims are subject to dismissal, the Court decline to exercise supplemental jurisdiction over any state law claims. The Court also notes that Plaintiff appears to allege that he has brought an action sounding in medical malpractice claim against Defendant Caulkins in New York State Court. As a result, any medical malpractice claim here may be duplicative.

### 3. Exclusive Remedy

**\*12** "In New York, recovery for accidental injuries arising out of and in the course of employment, including injuries caused by an employer's negligence, is governed by the Workers' Compensation Law." *Arroyo v. WestLB Admin., Inc.*, 54 F. Supp. 2d 224, 232 (S.D.N.Y. 1999), *aff'd*, 213 F.3d 625 (2d Cir. 2000) (citing *O'Brien v. King World Prods., Inc.*, 669 F. Supp. 639, 641 (S.D.N.Y. 1987); *Persaud v. S. Axelrod Co.*, 95-CV-7849, 1996 WL 11197, at *5 (S.D.N.Y. Jan. 10, 1996)). To the extent that a plaintiff may recover for his injuries under the Workers' Compensation Law, this law becomes the plaintiff's exclusive remedy against his employer. *See* N.Y. Work. Comp. Law § 11. Exceptions to the exclusive remedy provision of the Workers' Compensation law are limited to circumstances in which the employer failed to secure workers' compensation insurance or intentionally injured the employee. *See Garibaldi v. Anixter, Inc.*, 492 F. Supp. 2d 290, 292 (W.D.N.Y. 2007) (citing *Hill v. Delta Int'l Mach. Corp.*, 386 F. Supp. 2d 427, 432 (S.D.N.Y. 2005)).

Thus, the exclusive remedy provisions of New York State's Workers' Compensation Law, provide employers an affirmative defense in claims seeking damages for accidental injuries arising out of and in the course of employment. *See Hnatko v. Langston Corp.*, 10-CV-0991, 2012 WL 1574751, at *2 (N.D.N.Y. May 3, 2012) (Mordue, J.) (granting the third-party defendant employer's motion to dismiss where it produced evidence that it had procured a policy of workers compensation and that the plaintiff received benefits pursuant to the policy as a result of the injuries he sustained); *Roche v. T.G. Realty, Inc.*, 266 A.D.2d 367, 367 (N.Y. App. Div. 2d Dep't 1999) (finding that the trial court erred in striking the defendant's affirmative defense based upon the exclusive remedy provisions of the Workers' Compensation Law). Therefore, the exclusive remedy provisions do not provide a private cause of action for Plaintiff to seek damages.

As a result, I recommend that, to the extent Plaintiff sought to assert a claim pursuant to the exclusive remedy provisions, such claim be dismissed for failure to state a claim upon which relief may be granted.

### 4. Workers' Compensation Law

Here, Plaintiff alleges that Defendant NCAComp violated New York Workers' Compensation Law by denying him a gym membership. (Dkt. No. 5 at 13.) However, Plaintiff has already litigated the issue of his gym membership in state court. (Dkt. No. 5 at 8); *Brennan v. Vil. of Johnson City*, 192 A.D.3d 1287 (N.Y. App. Div. 3d Dep't 2021). The New York Appellate Division Third Department held that Plaintiff "successfully obtained authorization for a one-year gym membership, reimbursement for monies already paid for that membership and the right to reimbursement for future amounts paid for that gym membership." *Brennan*, 192 A.D. 3d at 1289. Therefore, the Appellate Division found that it lacked jurisdiction to entertain Plaintiff's appeal because Plaintiff obtained the relief he sought and was thus, not "aggrieved by the Board's September 2019 decision such that he may invoke this Court's jurisdiction." *Id.* at 1288.

As a result, I recommend that, to the extent that Plaintiff seeks review of the New York State Workers' Compensation Board's decision regarding his gym membership, such claim be dismissed because he has obtained the relief he sought.[7]

7  In addition, Plaintiff's claim may be subject to dismissal based on the *Rooker-Feldman* doctrine, which directs that except for the Supreme Court, federal courts are not authorized to exercise

appellate jurisdiction over state-court judgments. *McKithen v. Brown*, 481 F.3d 89, 96 (2d Cir. 2007).

## V. OPPORTUNITY TO AMEND

**\*13** Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at \*1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).[8]

[8]  *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

In this case, it is not clear whether better pleading would permit Plaintiff to assert cognizable causes of action pursuant to 42 U.S.C. § 1983, the ADA, and New York State law for intentional infliction of emotional distress and violation of the Workers' Compensation provisions. Out of deference to Plaintiff's *pro se* status, I recommend that Plaintiff be granted leave to amend the Complaint with respect to these claims.

However, with respect to Plaintiff's claims for violation of the Hippocratic oath and the exclusive remedy, I recommend that those causes of action be dismissed without leave to replead

because the problems with those claims are substantive and a better pleading will not cure the deficiencies.

If Plaintiff chooses to avail himself of an opportunity to amend, such amended pleading must set forth a short and plain statement of the facts on which he relies to support any legal claims asserted. Fed. R. Civ. P. 8(a). In addition, the amended complaint must include allegations reflecting how the individual named as Defendant is involved in the allegedly unlawful activity. Finally, Plaintiff is informed that any such amended complaint will replace the existing Amended Complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." (internal quotation marks omitted)).

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's application to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED**; and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITH LEAVE TO REPLEAD** Plaintiff's Amended Complaint (Dkt. No. 5) to the extent that it asserts claims pursuant to 42 U.S.C. § 1983, the ADA, and New York State law for intentional infliction of emotional distress and violation of the Workers' Compensation provisions, for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B); and it is further respectfully

**\*14 RECOMMENDED** that the Court **DISMISS WITHOUT LEAVE TO REPLEAD** Plaintiff's Amended Complaint (Dkt. No. 5) to the extent that it asserts claims pursuant to the Hippocratic Oath and New York State Workers' Compensation Law exclusive remedy, for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B); and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this order, report, and recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules.[9]

[9]  The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance

with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[10] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.,* 892 F.2d 15 (2d Cir. 1989)).

[10]     If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

**All Citations**

Slip Copy, 2022 WL 4290660

---

2022 WL 3097843
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Kevin Joseph Gabriel BRENNAN, Plaintiff,

v.

NCACOMP, INC.; Joleen M. Bolger (Snowdon),
Manager of NCAComp, Inc.; Dr. Anne M. Caulkins,
Site Supervisor of Our Lady of Lourdes Mem'l
Hosp. and Wellness Ctr.; Dr. Ira Breite, Indep. Med.
Examiner; and Rene Barnes (Picirrili), Manager of
New York State Workers Comp. Bd., Defendants.

3:22-CV-0127 (GTS/ML)
|
Signed August 4, 2022

**Attorneys and Law Firms**

KEVIN JOSEPH GABRIEL BRENNAN, Plaintiff, Pro Se,
319 Exchange Avenue, Townhouse #20, Endicott, New York
13760.

**DECISION and ORDER**

GLENN T. SUDDABY, Chief United States District Judge

 **\*1** Currently before the Court, in this *pro se* civil rights
action filed by Kevin Joseph Gabriel Brennan ("Plaintiff")
against NCAComp, Inc., and the four above-captioned
individuals (together "Defendants"), are (1) United States
Magistrate Judge Miroslav Lovric's Report-Recommendation
recommending that certain of Plaintiff's claims be dismissed
with prejudice at this time (without prior leave to amend) and
that the remainder of Plaintiff's claims be dismissed with prior
leave to amend, and (2) Plaintiff's Objection to the Report-
Recommendation. (Dkt. Nos. 6, 8.) For the reasons set forth
below, the Report-Recommendation is accepted and adopted
in its entirety.

**I. RELEVANT BACKGROUND**

 **A. Magistrate Judge Lovric's Report-**
 **Recommendation**
Generally, in his Report-Recommendation, Magistrate Judge
Lovric made the following six findings of fact and
conclusions of law: (1) to the extent Plaintiff's Amended

Complaint asserts any claims under 42 U.S.C. § 1983, those
claims should be *sua sponte* dismissed, with prior leave to
amend, for failure to state a claim upon which relief can
be granted, because (a) the Amended Complaint fails to
allege facts plausibly suggesting that any Defendant was a
state actor, and (b) in the alternative, any claims asserted
under the Fourteenth Amendment's Equal Protection Clause
are unsupported by factual allegations plausibly suggesting
that Plaintiff was intentionally treated differently from other
similarly situated individuals without any rational basis; (2)
to the extent Plaintiff's Amended Complaint asserts any
claims under the Americans with Disabilities Act ("ADA"),
those claims should be *sua sponte* dismissed, with prior
leave to amend, for failure to state a claim upon which
relief can be granted, because (a) the Amended Complaint
fails to allege facts plausibly suggesting that any Defendant
was a public entity for purposes of Title II of the ADA,
that Plaintiff was unable to access programs due to his
disability, how his disability prevented him from accessing
those programs, what accommodations he sought and was
denied by that Defendant, or that any such Title II violation
was motivated by either discriminatory animus or ill will due
to disability, (b) the Amended Complaint fails to allege facts
plausibly suggesting that Defendants' actions constituted
discrimination, or resulted in the discriminatory provision
of services to Plaintiff, under Title III of the ADA, and
the Amended Complaint fails to request the only available
relief under Title III, namely, injunctive relief, and (c) the
Amended Complaint fails to allege facts plausibly suggesting
that Plaintiff engaged in any protected activity, or experienced
any adverse action, under Title V of the ADA, and (again)
the Amended Complaint fails to request the only available
relief under Title V, namely, injunctive relief; (3) to the
extent Plaintiff's Amended Complaint asserts a claim for
the intentional infliction of emotional distress under New
York State law, that claim should be *sua sponte* dismissed,
with prior leave to amend, for failure to state a claim upon
which relief can be granted, because it does not allege facts
plausibly suggesting that Defendants' conduct was "extreme"
or "outrageous"; and (4) to the extent Plaintiff's Amended
Complaint asserts any claims under the Hippocratic Oath,
those claims should be *sua sponte* dismissed at this time,
without prior leave to amend, for failure to state a claim upon
which relief can be granted, because violating the Hippocratic
Oath does not give rise to a cause of action; (5) to the
extent Plaintiff's Amended Complaint asserts any claims for
accidental injuries arising out of and in the course of his
employment, those claims should be *sua sponte* dismissed
at this time, without prior leave to amend, for failure to

state a claim upon which relief can be granted, because the exclusive-remedy provision of the New York Workers' Compensation Law deprives Plaintiff of a private cause of action for such accidental injuries; and (6) to the extent that Plaintiff's Amended Complaint asserts a claim for the denial of a prescribed gym membership under the New York Workers' Compensation Law, those claims should be *sua sponte* dismissed, with prior leave to amend, for failure to state a claim upon which relief can be granted, because he has already obtained the relief sought in New York State court. (Dkt. No. 6, Part IV.)

### B. Plaintiff's Objection to the Report-Recommendation

**\*2**  Generally, in his Objection, Plaintiff asserts the following three arguments: (1) Plaintiff's retaliation claim against Defendant Caulkins should not be dismissed, because he has alleged facts plausibly suggesting that (a) he engaged in protected activity under the ADA by somehow causing the termination of her "co supervisor," and (b) he experienced adverse action when Defendant Caulkins prescribed a stronger non-steroidal anti-inflammatory drug to treat his ulcerative colitis condition than necessary (and failed to complete the Worker's Compensation form required for Plaintiff's disability application); (2) Plaintiff claims under 42 U.S.C. § 1983 should not be dismissed, because he has alleged facts plausibly suggesting that Independent Medical Examiners who are employed by New York State (like Defendant Breite) are state actors; and (3) Plaintiff's intentional-infliction-of-emotional-distress claim against Defendant Barnes should not be dismissed, because he has alleged facts plausibly suggesting that Defendant Barnes' conduct was extreme and outrageous. (*See generally* Dkt. No. 8.)

### II. STANDARD OF REVIEW

When a *specific* objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to a *de novo* review. Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1)(C). To be "specific," the objection must, with particularity, "identify [1] the portions of the proposed findings, recommendations, or report to which it has an objection and [2] the basis for the objection." N.D.N.Y. L.R. 72.1(c). [1]  When performing such a *de novo* review, "[t]he judge may ... receive further evidence...." 28 U.S.C. § 636(b)(1). However, a district court will ordinarily refuse to consider evidentiary material that could have been, but was not, presented to the magistrate

judge in the first instance. [2]  Similarly, a district court will ordinarily refuse to consider argument that could have been, but was not, presented to the magistrate judge in the first instance. *See Zhao v. State Univ. of N.Y.*, 04-CV-0210, 2011 WL 3610717, at \*1 (E.D.N.Y. Aug. 15, 2011) ("[I]t is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not.") (internal quotation marks and citation omitted); *Hubbard v. Kelley*, 752 F. Supp.2d 311, 312-13 (W.D.N.Y. 2009) ("In this circuit, it is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not.") (internal quotation marks omitted).

[1]    *See also Mario v. P&C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) ("Although Mario filed objections to the magistrate's report and recommendation, the statement with respect to his Title VII claim was not specific enough to preserve this claim for review. The only reference made to the Title VII claim was one sentence on the last page of his objections, where he stated that it was error to deny his motion on the Title VII claim '[f]or the reasons set forth in Plaintiff's Memorandum of Law in Support of Motion for Partial Summary Judgment.' This bare statement, devoid of any reference to specific findings or recommendations to which he objected and why, and unsupported by legal authority, was not sufficient to preserve the Title VII claim.").

[2]    *See Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137-38 (2d Cir. 1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters*, 894 F.2d 36, 40, n.3 (2d Cir. 1990) (finding that district court did not abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff "offered no justification for not offering the testimony at the hearing before the magistrate"); *cf. U. S. v. Raddatz*, 447 U.S. 667, 676, n.3 (1980) ("We conclude that to construe § 636(b)(1) to require the district court

Case 5:22-cv-00811-LEK-TWD    Document 3    Filed 10/17/22    Page 28 of 102

to conduct a second hearing whenever either party objected to the magistrate's credibility findings would largely frustrate the plain objective of Congress to alleviate the increasing congestion of litigation in the district courts."); Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition ("The term 'de novo' does not indicate that a secondary evidentiary hearing is required.").

When only a *general* objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear error* review. Fed. R. Civ. P. 72(b)(2),(3); Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition; *see also Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *2-3 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.) [collecting cases], *aff'd without opinion*, 175 F.3d 1007 (2d Cir. 1999). Similarly, when an objection merely reiterates the *same arguments* made by the objecting party in its original papers submitted to the magistrate judge, the Court subjects that portion of the report-recommendation challenged by those arguments to only a *clear error* review.[3] Finally, when *no* objection is made to a portion of a report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear error* review. Fed. R. Civ. P. 72(b), Advisory Committee Notes: 1983 Addition. When performing such a "clear error" review, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Id.*[4]

---

[3]     *See Mario*, 313 F.3d at 766 ("Merely referring the court to previously filed papers or arguments does not constitute an adequate objection under either Fed. R. Civ. P. 72(b) or Local Civil Rule 72.3(a)(3)."); *Camardo v. Gen. Motors Hourly-Rate Emp. Pension Plan*, 806 F. Supp. 380, 382 (W.D.N.Y. 1992) (explaining that court need not consider objections that merely constitute a "rehashing" of the same arguments and positions taken in original papers submitted to the magistrate judge); *accord, Praileau v. Cnty. of Schenectady*, 09-CV-0924, 2010 WL 3761902, at *1, n.1 (N.D.N.Y. Sept. 20, 2010) (McAvoy, J.); *Hickman ex rel. M.A.H. v. Astrue*, 07-CV-1077, 2010 WL 2985968, at *3 & n.3 (N.D.N.Y. July 27, 2010) (Mordue, C.J.); *Almonte v. N.Y.S. Div. of Parole*, 04-CV-0484, 2006 WL 149049, at *4 (N.D.N.Y. Jan. 18, 2006) (Sharpe, J.).

[4]     *See also Batista v. Walker*, 94-CV-2826, 1995 WL 453299, at *1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am permitted to adopt those sections of [a magistrate judge's] report to which no specific objection is made, so long as those sections are not facially erroneous.") (internal quotation marks and citations omitted).

**\*3** After conducting the appropriate review, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

## III. ANALYSIS

After carefully reviewing the relevant papers herein, including Magistrate Judge Lovric's thorough Report-Recommendation, the Court can find no error in those parts of the Report-Recommendation to which Plaintiff specifically objected, and no clear error in the remaining parts of the Report-Recommendation: Magistrate Judge Lovric employed the proper standards, accurately recited the facts, and reasonably applied the law to those facts. As a result, the Report-Recommendation is accepted and adopted in its entirety for the reasons stated therein. To those reasons, the Court would add only that Plaintiff's Objections are not persuasive, because they are unsupported by either case law or the factual allegations of his Amended Complaint.

**ACCORDINGLY**, it is

**ORDERED** that Magistrate Judge Lovric's Report-Recommendation (Dkt. No. 6) is **ACCEPTED** and **ADOPTED** in its entirety; and it is further

**ORDERED** that the following claims in Plaintiff's Amended Complaint (Dkt. No. 5) are *sua sponte* **DISMISSED with prejudice** (and without prior leave to amend):

(1) Plaintiff's claim pursuant to the Hippocratic Oath; and

(2) Plaintiff's claims for accidental injuries arising out of and in the course of his employment under the New York Workers' Compensation Law; and it is further

**ORDERED** that the following claims in Plaintiff's Amended Complaint (Dkt. No. 5) **shall be DISMISSED with prejudice** and without further Order of the Court if, **within thirty (30) days** of the issuance of this Decision and Order,

Plaintiff does not file a Second Amended Complaint curing the above-described defects in those claims:

(1) Plaintiff's claims under 42 U.S.C. § 1983;

(2) Plaintiff's claims under the Americans with Disabilities Act;

(3) Plaintiff's claim for intentional infliction of emotional distress under New York State common law; and

(4) Plaintiff's claim for the denial of a prescribed gym membership under the New York Workers' Compensation Law; and it is further

**ORDERED** that, should Plaintiff file a Second Amended Complaint in this action, it shall be automatically referred to Magistrate Judge Lovric for review of its pleading sufficiency pursuant to 28 U.S.C. § 1915(e).

**All Citations**

Slip Copy, 2022 WL 3097843

---

**End of Document**

© 2022 Thomson Reuters. No claim to original U.S. Government Works.

 © 2022 Thomson Reuters. No claim to original U.S. Government Works.

2022 WL 2304169
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Lorenzo WALKER, Plaintiff,

v.

Michael FLYNN, Owner, Defendant.

5:22-CV-0400 (GLS/ML)

|

Signed 06/27/2022

**Attorneys and Law Firms**

LORENZO WALKER, Plaintiff, Pro Se, 502 Bryant Avenue, Syracuse, New York 13204.

## ORDER and REPORT-RECOMMENDATION

MIROSLAV LOVRIC, United States Magistrate Judge

**\*1** The Clerk has sent this *pro se* Complaint together with an application to proceed *in forma pauperis* and motion to appoint counsel filed by Lorenzo Walker ("Plaintiff") to the Court for review. (Dkt. Nos. 1, 2, 3.) For the reasons discussed below, I deny Plaintiff's *in forma pauperis* application (Dkt. No. 2), deny Plaintiff's motion to appoint counsel (Dkt. No. 3), and recommend that Plaintiff's Complaint (Dkt. No. 1) be dismissed without prejudice and without leave to amend.

## I. BACKGROUND

Plaintiff's Complaint consists of four form complaints, which purport to assert actions arising under (1) 42 U.S.C. § 1983; (2) Title VII of the Civil Rights Act, as amended; (3) the Americans with Disabilities Act; and (4) *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). (*See generally* Dkt. No. 1.) Construed as liberally [1] as possible, Plaintiff alleges that on February 14, 2015, The Roofing Guys—which is owned by Defendant Michael Flynn ("Defendant")—was hired to replace the roof on Plaintiff's home. (*Id.*) Plaintiff alleges that the work done by The Roofing Guys was deficient in the following three respects: (1) after completion of the work, tar remained on the side of Plaintiff's house, (2) the sheetrock inside Plaintiff's second bedroom got wet, and (3) a gutter was installed in the wrong location, which has caused Plaintiff's basement to get wet. (*Id.*) Plaintiff alleges that "they" [2] came back and painted

over the tar but that work was also deficient and resulted in further damage to his property. (*Id.*)

[1]
> The court must interpret *pro se* complaints to raise the strongest arguments they suggest. *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

[2]
> Although it is unclear from the face of the Complaint, the Court presumes that Plaintiff intended to convey that The Roofing Guys' employees completed the painting work.

Plaintiff alleges that he is a veteran, 70 years old, owns his home, and has one leg. (*Id.*) Plaintiff alleges that Defendant's conduct was discriminatory with respect to Plaintiff's race or color and national origin. (*Id.*)

Plaintiff alleges that he "went to Home Quater" to get help with home repairs and that an individual named Curtis Harris told Plaintiff that Plaintiff needed to let "them" [3] do the work or lose out. (*Id.* at 7.)

[3]
> Again, it is unclear who Plaintiff is referring to, but the Court presumes that Plaintiff meant that Mr. Harris informed Plaintiff that The Roofing Guys were required to do the work.

As relief, Plaintiff is seeking monetary damages of an unspecified amount. (*Id.*)

Plaintiff also filed an application for leave to proceed *in forma pauperis*. (Dkt. No. 2.)

## II. PLAINTIFF'S APPLICATION TO PROCEED *IN FORMA PAUPERIS*

When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $402, must ordinarily be paid. 28 U.S.C. § 1914(a). A court is authorized, however, to grant IFP status if it determines that the plaintiff is unable to pay the required fee. 28 U.S.C. § 1915(a)(1). [4] Pursuant to 28 U.S.C. § 1915, where a plaintiff seeks leave to proceed IFP, the court must determine whether the plaintiff has demonstrated sufficient economic need to proceed without prepaying the required filing fee. 28 U.S.C. § 1915(a)(1).

4      The language of that section is ambiguous because it suggests an intent to limit availability of IFP status to prison inmates. *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). The courts have construed that section, however, as making IFP status available to any litigant who can meet the governing financial criteria. *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *see also Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

**\*2** The decision of whether to grant an application to proceed IFP rests within the sound discretion of the court. *Anderson v. Coughlin*, 700 F.2d 37, 42 (2d Cir. 1983). The court must be satisfied "that the person is unable to pay such fees or give security therefor" prior to granting IFP status. 28 U.S.C. § 1915(a)(1). To make this threshold showing, a plaintiff must demonstrate "that paying such fees would constitute a serious hardship on the plaintiff, not that such payment would render plaintiff destitute." *Fiebelkorn v. United States*, 77 Fed. Cl. 59, 62 (Fed. Cl. 2007) (citing *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948)); *see also Potnick v. E. State Hosp.*, 701 F.2d 243, 244 (2d Cir. 1983) ("Section 1915[a] does not require a litigant to demonstrate absolute destitution[.]"); *accord, Lee v. McDonald's Corp.*, 231 F.3d 456, 459 (8th Cir. 2000). As the Second Circuit has noted, "no party need be made to choose between abandoning a potential meritorious claim or foregoing the necessities of life." *Potnick*, 701 F.2d at 244 (citing *Adkins*, 335 U.S. at 339).

In support of an IFP application, 28 U.S.C. § 1915 requires that a plaintiff submit an affidavit reflecting his assets. 28 U.S.C. § 1915(a)(1).

Here, Plaintiff's IFP application states that his gross pay or wages are $1,345.00, but does not indicate over what time period he receives that income. (Dkt. No. 2 at ¶ 2.) In addition, Plaintiff alleges in the Complaint that he owns his home (Dkt. No. 1 at 4) and indicates in his IFP application that his home is valued at approximately $69,000.00. (Dkt. No. 2 at ¶ 5.) However, Plaintiff also indicates in his IFP application that his regular monthly expenses include $720.00 in rent. (*Id.* at ¶ 6.) It is unclear whether Plaintiff maintains two properties —one that he owns and one that he rents, or whether Plaintiff inaccurately designated his monthly housing costs as "rent" despite owning the property.

In addition, Plaintiff's IFP application was incomplete in the following two respects: (1) Plaintiff failed to indicate the source of income for the $1,345.00 in gross pay or wages that he earns, and (2) with respect to question 8, which asks Plaintiff to identify any debts or financial obligations, Plaintiff states "House Noite 720 → B.A." (Dkt. No. 2 at 2.)

In this instance, due to Plaintiff's incomplete IFP application, I am unable to conclude that he possesses insufficient funds to pay the $402.00 filing fee to commence an action without "foregoing the necessities of life." *Potnick*, 701 F.2d at 244 (citing *Adkins*, 335 U.S. 339). Accordingly, I deny Plaintiff's motion to proceed in this case IFP. To the extent that Plaintiff may wish to renew his request to proceed IFP, and given the Court's unanswered questions about his financial situation, any request to proceed without the prepayment of fees must include a fully completed *in forma pauperis* application (AO240).

## III. RELEVANT LEGAL STANDARDS

### A. Legal Standard Governing Initial Review of a Complaint

Ordinarily, the finding that Plaintiff does not qualify for IFP status would end the Court's discussion, and Plaintiff, in light of his *pro se* status, would likely be afforded an opportunity to either prepay the full filing fee, or submit a new, completed, and certified application for IFP. Because, however, as is discussed more completely below, I find that Plaintiff's Complaint fails to state a claim upon which relief may be granted, 28 U.S.C. § 1915 requires that the court dismiss the action "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid[.]" 28 U.S.C. § 1915(e).

Section 1915(e) directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). In deciding whether a complaint states a colorable claim, a court must extend a certain measure of deference in favor of *pro se* litigants, *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and extreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and the parties had an opportunity to

address the sufficiency of plaintiff's allegations, *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).

**\*3** The Court, however, also has an overarching obligation to determine that a claim is not legally frivolous before permitting a *pro se* plaintiff's complaint to proceed. *See, e.g., Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (holding that a district court may *sua sponte* dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee). "Legal frivolity ... occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint." *Aguilar v. United States*, 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at *2 (D. Conn. Nov. 8, 1999) (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998)); *see also Neitzke v. Williams*, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory ... or factual contentions lack an arguable basis."); *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory for purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").

When reviewing a complaint under section 1915(e), the court is guided by applicable requirements of the Federal Rules of Civil Procedure. More specifically, Rule 8 of the Federal Rules of Civil Procedure provides that a pleading must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief ... requires the ... court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown– that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citation and punctuation omitted).

"In reviewing a complaint ... the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted).

However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

### B. Legal Standard Governing Subject Matter Jurisdiction

Subject matter jurisdiction can never be waived or forfeited. *ACCD Global Agric., Inc. v. Perry*, 12-CV-6286, 2013 WL 840706, at *1 (S.D.N.Y. March 1, 2013) (quoting *Dumann Realty, LLC v. Faust*, 09-CV-7651, 2013 WL 30672, at *1 (S.D.N.Y. Jan. 3, 2013)). Federal courts are mandated to examine their own jurisdiction *sua sponte* at every stage of the litigation. *ACCD Global Agric., Inc.*, 2013 WL 840706, at *1; *see In re Tronox, Inc.*, 855 F.3d 84, 85 (2d Cir. 2017) (federal courts have an independent obligation to consider the presence or absence of subject matter jurisdiction *sua sponte*).

A federal court exercises limited jurisdiction pursuant to Article III of the Constitution. It has subject matter jurisdiction over claims in which: (1) there is a 'federal question' in that a colorable claim arises under the 'Constitution, laws or treaties of the United States,' 28 U.S.C. § 1331; and/or if (2) there is complete "diversity of citizenship" between each plaintiff and all defendants and a minimum of $75,000 in controversy, 28 U.S.C. § 1332.

**\*4** *Gonzalez v. Ocwen Home Loan Servicing*, 74 F. Supp. 3d 504, 511-12 (D. Conn. 2015) (quoting *Da Silva v. Kinsho Int'l Corp.*, 229 F.3d 358, 363 (2d Cir. 2000) (delineating two categories of subject matter jurisdiction) (footnote omitted)), *reconsideration denied*, 14-CV-0053, 2015 WL 2124365 (D. Conn. May 6, 2015).

The existence of a federal question is governed by the "well-pleaded complaint" rule, which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. 28 U.S.C. § 1331. A well-pleaded complaint presents a federal question where it "establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on a resolution of a substantial question of federal law." *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 9 (1983).

### IV. ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Complaint with this principle in mind, I recommend that all causes of action be dismissed.

Although Plaintiff completes his Complaint on form complaints for violations of (1) 42 U.S.C. § 1983; (2) the Americans with Disabilities Act; (3) Title VII of the Civil Rights Act, as amended; and (4) *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), Plaintiff fails to state a claim upon which relief may be granted pursuant to any of those legal bases.

### A. 42 U.S.C. § 1983

A claim for relief under 42 U.S.C. § 1983 must allege facts showing that the defendant acted under color of state "statute, ordinance, regulation, custom or usage." 42 U.S.C. § 1983. Thus, to state a claim under § 1983, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or a "state actor." *West v. Atkins*, 487 U.S. 42, 48-49 (1988). Generally, private parties are not state actors, and are not liable under § 1983. *Sykes*, 723 F.3d at 406 (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)); *see also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) ("[T]he United States Constitution regulates only the Government, not private parties....") (internal quotation marks and citations omitted). "Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action.' " *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 941 F.2d 1292, 1295-96 (2d Cir. 1991) (citing *Blum v. Yartsky*, 457 U.S. 991, 1002 (1982)). A private defendant may be held liable only as "a willing participant in joint activity with the State or its agents." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970) (quoting *United States v. Price*, 383 U.S. 787, 794 (1966)). Claims under § 1983 can be brought against private entities by "showing that a person acting under color of state law ... collaborated with a private person ... to deprive the plaintiff of a constitutional right." *Fries v. Barns*, 618 F.2d 988, 990 (2d Cir. 1980) (citing *Adickes*, 398 U.S. at 144).

**\*5** Here, the Complaint fails to allege facts plausibly suggesting that Defendant was a "state actor" or was "collaborating" with state actors.[5] (*See generally* Dkt. No. 1.)

5    The Court also notes that the statute of limitations for a § 1983 action accruing in New York is three years. *Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009). Although the statute of limitations is an affirmative defense, where it is clear from the face of the complaint that a claim is barred by the applicable statute of limitations, the claim is subject to dismissal for failure to state a claim on 28 U.S.C. § 1915(e)(2)(B) review. *See Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) (holding that a complaint can be dismissed on initial review based on a defense that appears on the face of the complaint). The conduct that Plaintiff's Complaint concerns appears to have occurred in 2015, more than three years before the commencement of this action. As a result, any claim pursuant to 42 U.S.C. § 1983 is barred by the statute of limitations.

### B. Title VII

Title VII makes it unlawful for an employer to "discriminate against any individual with respect to his ... terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42. U.S.C. § 2000e-2(a). A plaintiff asserting a claim under Title VII may establish a prima facie case by showing that (1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) "the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *See Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004). The last factor may be satisfied "through direct evidence of intent to discriminate, or by indirectly showing circumstances giving rise to an inference of discrimination." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015) (citations omitted).

The Complaint fails to allege facts plausibly suggesting that Plaintiff is or was employed by Defendant. (Dkt. No. 1.) As a result, Plaintiff fails to state a claim upon which relief may be granted pursuant to Title VII. *Jones v. Thomas*, 20-CV-5581, 2020 WL 5077026, at \*4 (S.D.N.Y. Aug. 27, 2020) (dismissing for failure to state a claim, the plaintiff's claims pursuant to Title VII where the plaintiff did not allege that he is or was an employee of any of the defendants); *Basora-Jacobs v. Palevsky*, 20-CV-1675, 2020 WL 3868710,

at *2 (E.D.N.Y. July 10, 2020) (dismissing the plaintiff's Title VII claims because "[t]he complaint does not list Plaintiff's employer as a defendant in the case caption.").

Moreover, individuals may bring Title VII claims in federal court only after filing a timely charge with the EEOC and receiving an EEOC right-to-sue letter. 42 U.S.C. § 2000e-5(e), (f); *see Legnani v. Alitalia v. Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001) ("Under ... Title VII ..., a claimant may bring suit in federal court only if she has filed a timely complaint with the EEOC and obtained a right-to-sue letter."). Plaintiff left blank the portion of the form-complaint where he was to indicate that he "filed charges with the New York State Division on Human Rights, the New York City Commission on Human Rights or Equal Employment Opportunity Commission regarding the alleged discriminatory acts." (Dkt. No. 1 at 8.) Plaintiff also left blank the portion of the form-complaint where he was to indicate the date that he received "the Equal Employment Opportunity Commission['s] issued ... Notice-of-Right-to-Sue letter." (Dkt. No. 1 at 8.) "Further, a right-to-sue letter is not attached to Plaintiff's Complaint. Accordingly, Plaintiff's Title VII ... claims must be dismissed on the basis that the right-to-sue letter is a precondition to bringing [the] claims in federal court." *Johnson v. Xylem Inc.*, 19-CV-0130, 2020 WL 1963125, at *2 (W.D.N.Y. Apr. 16, 2020) (citing *Constantine v. U-Haul Int'l, Inc.*, 15-CV-1204, 2015 WL 7272211, at *2 (N.D.N.Y. Nov. 16, 2015) (D'Agostino, J.) (dismissing the plaintiff's Title VII claim where the plaintiff failed to demonstrate that she received an EEOC right-to-sue letter); *Parker v. Mack*, 09-CV-1049A, 2010 WL 11507368, at *3 (W.D.N.Y. Jan. 4, 2010) (holding that the plaintiff's Title VII claims were subject to dismissal where the plaintiff did not submit a copy of his EEOC right-to-sue letter)).

**\*6** As a result, I recommend that Plaintiff's claims pursuant to Title VII be dismissed for failure to state a claim upon which relief may be granted.

### C. Americans With Disabilities Act

"[T]he ADA's statute of limitations is three years." *De La Rosa v. Lewis Foods of 42nd Street, LLC*, 124 F. Supp. 3d 290, 299, n.14 (S.D.N.Y. 2015). For the reasons set forth *supra*, in note 5 of this Order and Report Recommendation, I recommend that Plaintiff's claims pursuant to the ADA be dismissed as time barred.

In the alternative, I find that Plaintiff has failed to allege facts plausibly suggesting a claim for relief pursuant to the ADA.

Based on the facts alleged, Plaintiff could not proceed with a claim under Title I of the ADA, which addresses employment discrimination, because he has neither alleged that he was employed by Defendant, nor alleged that he exhausted administrative remedies by filing a charge with the Equal Employment Opportunity Commission before pursuing litigation in federal court. 42 U.S.C. § 12117; *see Mary Jo C. v. New York State Local Retirement Sys.*, 707 F.3d 144, 169 (2d Cir. 2013) (quoting *Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 360, n.1 (2001)) (" 'Title I of the ADA expressly deals with th[e] subject' of employment discrimination.").

Title II of the ADA "proscribes discrimination against the disabled in access to public services." *Harris v. Mills,* 572 F.3d 66, 73 (2d Cir. 2009) (citing *Powell v. Nat'l Bd. of Med. Exam'rs,* 364 F.3d 79, 84-85 (2d Cir. 2004), *corrected,* 511 F.3d 238 (2d Cir. 2004)). To plead a violation of Title II of the ADA, a plaintiff must allege "(1) that [he] is a qualified individual with a disability; (2) that [he] was excluded from participation in a public entity's services, programs, or activities or was otherwise discriminated against by a public entity; and (3) that such exclusion or discrimination was due to [his] disability." *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009) (quoting *Hargrave v. Vermont*, 340 F.3d 27, 34-35 (2d Cir. 2003)) (internal quotation marks omitted).

Here, the Compliant is devoid of factual allegations plausibly suggesting that Plaintiff was unable to access programs due to his disability, how his disability prevented him from accessing those programs, or what accommodations he sought and was denied by Defendants. (*See generally* Dkt. 1.)

Further, "individuals cannot be held liable under the ADA." *Netti v. Ayers*, 17-CV-0976, 2017 WL 7542494, at *18 (N.D.N.Y. Oct. 5, 2017) (Baxter, M.J.) (citing *Baross v. Greenlawn*, 16-CV-4805, 2017 WL 2124424, at *4 (E.D.N.Y. May 15, 2017)), *report and recommendation adopted by* 2018 WL 813509 (N.D.N.Y. Feb. 9, 2018) (Suddaby, C.J.); *accord Rosenfeld v. New York State Div. of Veterans' Affairs*, 18-CV-1299, 2019 WL 4621962, at *10 (N.D.N.Y. Sept. 24, 2019) (Suddaby, C.J.); *see Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001) (holding that Title II of the ADA does not provide for suits against individuals); *Fox v. State Univ. of N.Y.*, 497 F. Supp. 2d 446, 449 (E.D.N.Y. 2007) ("[T]here is no individual liability under Title I or Title II of the ADA, or the ADEA."); *Sutherland v. New York State Dep't of Law*, 96-CV-6935, 1999 WL 314186,

at *7 (S.D.N.Y. May 19, 1999) ("Individual defendants may not be held personally liable for alleged violations of the ADA."). Thus, Plaintiff has failed to state a claim upon which relief may be granted pursuant to Title II of the ADA against Defendant, who is an individual (not an entity). [6]

[6]     Moreover, "[w]hen a private individual seeks damages under Title II of the ADA, the Second Circuit requires the plaintiff to 'establish that the Title II violation was motivated by either discriminatory animus or ill will due to disability.'" *Day v. Warren*, 06-CV-0155, 2008 WL 474261, at *4 (D. Conn. Feb. 7, 2008) (quoting *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 111 (2d Cir. 2001)). The Complaint fails to allege facts plausibly suggesting discriminatory animus or ill will towards Plaintiff's alleged disability or disabilities. (*See generally* Dkt. No. 1.)

**\*7** With respect to Title III of the ADA, the only relief available to private litigants is injunctive relief, and here, Plaintiff seeks only monetary damages. *Bowen v. Rubin*, 385 F. Supp. 2d 168, 181 (E.D.N.Y. 2005) (citing 42 U.S.C. § 12188(a)(1); *Disabled in Action of Metro. New York v. Trump Int'l Hotel and Tower*, 01-CV-5518, 2003 WL 1751785, at *6 (S.D.N.Y. Apr. 2, 2003)).

Further, "[t]o state a claim under Title III [of the ADA], [a plaintiff] must allege (1) that [he] is disabled within the meaning of the ADA; (2) that defendants own, lease, or operate a place of public accommodation; and (3) that defendants discriminated against [him] by denying [him] a full and equal opportunity to enjoy the services defendants provide." *Camarillo v. Carrols Corp.*, 518 F.3d 153, 156 (2d Cir. 2008). The Complaint fails to allege facts plausibly suggesting that Defendant discriminated against Plaintiff by denying him a full and equal opportunity to enjoy the services that Defendant provides. (*See generally* Dkt. No. 1.)

Moreover, Title IV of the ADA does not appear to be applicable to Plaintiff's claims because Title IV prohibits disability discrimination in telecommunications. *Genco v. Sargent & Collins LLP*, 18-CV-0107, 2018 WL 3827742, at *3, n.5 (W.D.N.Y. June 4, 2018).

Finally, Title V of the ADA, sometimes referred to as the "retaliation provision," also does not appear applicable because Plaintiff does not allege that he engaged in activity protected by the ADA, that Defendant was aware of that

activity, or that Defendant took any adverse action against Plaintiff causally related to that protected activity. *Chiesa v. New York State Dep't of Labor*, 638 F. Supp. 2d 316, 323 (N.D.N.Y. 2009) (Hurd, J.); *see also Constantine v. Merola*, 20-CV-1012, 2020 WL 8450544, at *5 (N.D.N.Y. Nov. 6, 2020)) (Lovric, M.J.) (recommending dismissal of the plaintiff's ADA Title V claims where the complaint failed to allege that the plaintiff "engaged in any protected activity, that any [d]efendant knew that [p]laintiff was involved in the protected activity, or that any adverse decision or course of action taken by [d]efendants was causally connected to that protected activity."), *report and recommendation adopted by* 2021 WL 392487 (N.D.N.Y. Feb. 4, 2021) (Hurd, J.).

As a result, to the extent that Plaintiff's Complaint is construed as alleging a claim pursuant to the ADA, I recommend that it be dismissed for failure to state a claim upon which relief may be granted.

### D. *Bivens* Claim

With respect to Plaintiff's claim pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), I recommend that it be dismissed as untimely. "The statute of limitations for *Bivens* actions arising in New York is three years." *Tapia-Ortiz v. Doe*, 171 F.3d 150, 152 (2d Cir. 1999).

In the alternative, I recommend that Plaintiff's *Bivens* claim be dismissed for failure to state a claim upon which relief may be granted. To state a *Bivens* claim, a plaintiff must show that "(1) a defendant acted under color of federal law (2) to deprive plaintiff of a constitutional right." *Tavarez v. Reno*, 54 F.3d 109, 110 (2d Cir. 1995). "While a private individual ordinarily may not be held liable under *Bivens*, she may be found to have acted 'under color of law' when she is a 'willful participant in joint activity' with the federal government or its agents." *Ross v. O'Donnell*, 13-CV-1250, 2014 WL 3735667, at *3 (N.D.N.Y. July 29, 2014) (Kahn, J.) (quoting *United States v. Price*, 383 U.S. 787, 794 (1966)). "To demonstrate that a private party was acting under color of federal law, a plaintiff must establish that [the] defendant's actions were commanded or encouraged by the federal government, or that the defendants were so intertwined with the government as to become painted with color of [federal] action." *Strother v. Harte*, 171 F. Supp. 2d 203, 206 (S.D.N.Y. 2001).

**\*8** Here, the Complaint is devoid of factual allegations plausibly suggesting that Defendant—a private actor—was commanded or encouraged by the federal government or that

his actions were so intertwined with the government as to become painted with color of federal action. (*See generally* Dkt. No. 1.)

### E. Other Claims

Even applying special solicitude, I find that the Complaint may allege facts plausibly suggesting state law claims such as breach of contract. However, a state law claim for breach of contract does not raise a federal question for purposes of subject matter jurisdiction. *See Adames v. Taju*, 80 F. Supp. 3d 465, 468 (E.D.N.Y. 2015) ("The Court may not exercise federal-question jurisdiction over the Complaint as currently stated. Despite a liberal reading of the Complaint, Plaintiff's claim regarding breach of contract is based in state law. There is nothing on the face of Plaintiff's Complaint to suggest that Defendant violated any federal statute, or that any question involving the Constitution, laws, or treaties of the United States is implicated by his claim.").

The other conceivable ground for jurisdiction would be diversity of citizenship, which gives federal district courts jurisdiction over suits where the plaintiff and the defendant are of diverse citizenship and the amount in controversy exceeds $75,000. *Adames*, 80 F. Supp. 3d at 468. Here, there does not appear to be diversity jurisdiction between Plaintiff and Defendant, both of whom are citizens of New York. (Dkt. No. 1 at 1.) Moreover, the Complaint fails to allege that the amount in controversy is at least $75,000. As a result, the Court lacks subject matter jurisdiction to consider any state law claims that Plaintiff may have sought to allege.

As a result, I recommend that Plaintiff's Complaint be dismissed in its entirety pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim upon which relief may be granted and because the Court lacks subject matter jurisdiction.

### V. OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding*

*L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.) [7]

[7]     *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

**\*9** In this case, I find that granting leave to amend is unlikely to be productive because there appears no basis for Plaintiff to raise his claims against Defendant in federal court. As a result, the Court "should not allow [P]laintiff [an opportunity] to amend, notwithstanding a dismissal without prejudice. Because lack of subject matter jurisdiction is a substantive defect, the court recommends dismissal without leave to amend." *Guillory v. Crouse Hosp.*, 21-CV-1177, 2021 WL 5605260, at *3 (N.D.N.Y. Nov. 2, 2021) (Baxter, M.J.) (citing *Deul v. Dalton*, 11-CV-0637, 2012 WL 235523, at *8 n.19 (N.D.N.Y. Jan. 25, 2012) (Suddaby, J.)), *report and recommendation adopted by*, 2021 WL 5585926 (N.D.N.Y. Nov. 30, 2021) (Hurd, J.).

### VI. PLAINTIFF'S MOTION TO APPOINT COUNSEL

As an initial matter, "[a] party has no constitutionally guaranteed right to the assistance of counsel in a civil case." *Leftridge v. Connecticut State Trooper Officer No. 1283*, 640 F.3d 62, 68 (2d Cir. 2011) (citations omitted). Courts cannot utilize a bright-line test in determining whether counsel should be appointed on behalf of an indigent party. *Hendricks v. Coughlin*, 114 F.3d 390, 392-93 (2d Cir. 1997). Instead, a number of factors must be carefully considered by the court in ruling upon such a motion. As a threshold matter, the court should ascertain whether the indigent's claims seem likely to be of substance. A motion for appointment of counsel may

be properly denied if the court concludes that the plaintiff's "chances of success are highly dubious." *Leftridge*, 640 F.3d at 69. If the court finds that the claims have substance, the court should then consider:

> [T]he indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in th[e] case why appointment of counsel would be more likely to lead to a just determination.

*Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1341 (2d Cir. 1994) (quoting *Hodge v. Police Officers*, 802 F.2d 58, 61-62 (2d Cir. 1986)). This is not to say that all, or indeed any, of these factors are controlling in a particular case. Rather, each case must be decided on its own facts. *Velasquez v. O'Keefe*, 899 F. Supp. 972, 974 (N.D.N.Y. 1995) (McAvoy, C.J.) (citing *Hodge*, 802 F.2d at 61).

In the present matter, the Court has recommended dismissal of the action. As such, the Court cannot find that Plaintiff's claims are likely to be of substance. Plaintiff's motion (Dkt. No. 3) is therefore denied.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's application to proceed *in forma pauperis* (Dkt. No. 2) is **DENIED WITHOUT PREJUDICE**; and it is further [8]

[8]   If Plaintiff wishes to proceed with this action, he must either (i) pay the $402.00 filing fee, or (ii) submit a renewed IFP application detailing his current financial condition, within thirty (30) days from the date of the filing of Court's Decision and Order. Failure to comply with this directive will result in the issuance of a report and recommendation to the assigned district judge that the action be dismissed.

**ORDERED** that the Clerk of the Court shall provide Plaintiff with a blank *in forma pauperis* application (AO 240); and it is further

**ORDERED** that Plaintiff's motion for appointment of counsel (Dkt. No. 3) is **DENIED**; and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITHOUT PREJUDICE and WITHOUT LEAVE TO AMEND** Plaintiff's Complaint (Dkt. No. 1) pursuant to 28 U.S.C. 1915(e)(2)(B) for failure to state a claim upon which relief may be granted and because the Court lacks subject matter jurisdiction; and it is further

**\*10 ORDERED** that the Clerk of the Court shall file a copy of this order, report, and recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules.[9]

[9]   The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[10] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

[10]   If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

**All Citations**

Slip Copy, 2022 WL 2304169

**End of Document**

© 2022 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Blue Flag – Appeal Notification

Appeal Filed by WALKER v. FLYNN, 2nd Cir., August 25, 2022

2022 WL 2789355
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Lorenzo WALKER, Plaintiff,

v.

Michael FLYNN, Defendant.

5:22-cv-400 (GLS/ML)
|
Signed July 15, 2022

**Attorneys and Law Firms**

FOR THE PLAINTIFF: Lorenzo Walker, Pro Se, 502 Bryant Avenue, Syracuse, NY 13204.

## **ORDER**

Gary L. Sharpe, Senior District Judge

**\*1** The above-captioned matter comes to this court following an Order and Report-Recommendation (R&R) by Magistrate Judge Miroslav Lovric, duly filed June 27, 2022. (Dkt. No. 5.) Following fourteen days from the service thereof, the Clerk has sent the file, including any and all objections filed by the parties herein.

No objections having been filed, and the court having reviewed the R&R for clear error, it is hereby

**ORDERED** that the Order and Report-Recommendation (Dkt. No. 5) is **ADOPTED** in its entirety; and it is further

**ORDERED** that plaintiff's complaint (Dkt. No. 1) is **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) and because the court lacks subject matter jurisdiction; and it is further

**ORDERED** that the Clerk is directed to close this case; and it is further

**ORDERED** that the Clerk provide a copy of this Order to plaintiff in accordance with the Local Rules of Practice.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2022 WL 2789355

---

**End of Document**                    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

2015 WL 418153
Only the Westlaw citation is currently available.
United States District Court, D. Connecticut.

Courtney ALSTON, Plaintiff,

v.

Greg JARRELL, Defendant.

No. 3:14CV132 (DJS).
|
Signed Jan. 30, 2015.

**Attorneys and Law Firms**

Courtney Alston, Hartford, CT, pro se.

Greg Jarrell, Hartford, CT, pro se.

*RULING ON MOTION TO DISMISS*

DOMINIC J. SQUATRITO, District Judge.

**\*1** In his Amended Complaint, the plaintiff Courtney Alston ("Alston") alleges violations of the Fair Housing Act, the Americans with Disabilities Act, and various Connecticut state statutes by the defendant Greg Jarrell ("Jarrell"). [1] Now pending before the Court is a motion to dismiss filed by Jarrell. For the reasons stated below, the defendant Jarrell's motion to dismiss (doc. # 47) is granted.

[1]     The plaintiff also names Jarreall–Estate, LLC as a defendant. There are no factual allegations in the Amended Complaint specific to the entity Jarreall–Estate, LLC separate and apart from the individual Greg Jarrell, however, and the plaintiff repeatedly refers to Greg Jarrell as "the defendant." For purposes of this Ruling, the Court refers to Greg Jarrell as the defendant.

## I. PROCEDURAL HISTORY

Alston filed his original Complaint on January 31, 2014. On that same day he filed a motion for leave to proceed *in forma pauperis.* On February 6, 2014, United States Magistrate Judge Margolis issued a Ruling on Plaintiff's Motion for Leave to Proceed in Forma Pauperis. (Doc. # 8). In her Ruling, Judge Margolis indicated that "while

plaintiff alleges jurisdiction under the Fair Housing Act, the substance of his claim is a challenge to a default judgment in a housing case brought by the defendant against plaintiff, eviction proceedings, and discrimination against plaintiff in small claims court." (*Id.* at 2) (internal quotation marks and alterations omitted). Judge Margolis advised Alston that to the extent his federal action sought review of the state housing court and small claims court decisions, such review was precluded by the *Rooker–Feldman* doctrine. [2] Alston was given the opportunity to amend his complaint and he filed an Amended Complaint on February 19, 2014. (Doc. # 12). Jarrell filed his motion to dismiss on July 8, 2014.

[2]     The *Rooker–Feldman* doctrine "divests federal courts of jurisdiction to consider suits which seek to overturn state court judgments." *Fernandez v. Turetsky,* No. 12–cv–4092 (SLT)(MDG), 2014 U.S. Dist. LEXIS 157817, at \*10 (E.D.N.Y. Nov. 7, 2014).

## II. FACTS

The plaintiff is pursuing his action on a pro se basis and the facts set forth in the Amended Complaint are presented in a somewhat disjointed fashion. Nonetheless, the Court believes it has an adequate understanding of Alston's factual allegations. The Court is also guided by the principle that for purposes of determining a motion to dismiss it must "accept[ ] all factual allegations in the [amended] complaint as true, and draw[ ] all reasonable inferences in the plaintiff's favor." *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir.2002).

At all times pertinent to this action, the defendant Jarrell was the owner of a single-family home located at 57 Litchfield Street, Hartford, Connecticut ("57 Litchfield Street") that he used as a source of rental income. Maggie Alston Claud, who is the mother of both the plaintiff and the defendant, had previously transferred ownership of 57 Litchfield Street from herself to Jarrell by means of a quitclaim deed. Jarrell had difficulty renting the property because he would not allow tenants to raise the heat above 65 degrees regardless of weather conditions, and the home's fireplace was not usable. Jarrell had neglected the upkeep of 57 Litchfield Street and it was at risk of foreclosure.

In October 2011 Alston and Claud advised Jarrell to transfer ownership of 57 Litchfield Street to Alston and Jarrell agreed

that he would transfer ownership of the property to Alston. Claud informed Alston that he would need to pay Jarrell $200.00 per week until the deed transferring ownership of the property from Jarrell to Alston was processed. Alston, his wife, and their minor child subsequently moved into the house at 57 Litchfield Street. [3] No party has provided the Court with a written lease concerning the rental of 57 Litchfield Street by Alston, but it does appear that the parties agreed to a weekly rental payment of $200.00.

[3]    It is not clear from the parties' filings exactly when Alston and his family moved into the house at 57 Litchfield Street.

**\*2** In January 2013 Alston and Jarrell had an argument about whether Jarrell had properly serviced Claud's Jaguar automobile. On January 5, 2013, Jarrell became enraged when Claud stated that in the future she would rely exclusively on Alston for the selection and servicing of her cars. Jarrell, who was in his own car at the time, sped away quickly, and, in doing so, struck Alston with his car. On January 6, 2013, and again on January 8, 2013, Jarrell contacted Alston's probation officer and made false accusations against Alston.

In early January 2013 Claud directed Alston to contact Cecil Alston ("Cecil"), an uncle who provided heating services and repairs, and ask him to check the furnace at 57 Litchfield Street. At that time there was little or no heat in the house. Cecil told Alston that he would not service the furnace at 57 Litchfield Street because of an unpaid balance owed to Cecil by Jarrell for work performed on other property owned by Jarrell. Claud then agreed to pay Cecil cash on delivery for the cost ($170.00) of servicing the furnace at 57 Lichfield Street. On or about January 11, 2013, Cecil proceeded to service and repair the furnace at 57 Litchfield Street and informed Claud that the furnace had not been serviced in years. A copy of Cecil's invoice, which indicated that the bill had been paid in full by the tenant, was sent to Jarrell.

On January 12, 2013, Jarrell sent a written communication to Alston and his family advising them that the work performed on the furnace by Cecil was unauthorized by Jarrell and constituted a breach of the "lease." He also stated that "any further incidents will lead to the Eviction Process." (Doc. # 1–1, at 23).

At some point Alston informed Jarrell that the February 2013 rent payment would be late. On February 21, 2013, Jarrell signed a receipt reflecting a payment to him by Alston's wife

of $1,150.00. That same receipt also indicates an outstanding balance due of $1,200.00 (*Id.* at 34). On February 22, 2013, Jarrell executed a Notice to Quit informing Alston and his family that they were required to quit occupancy of 57 Litchfield Street by March 10, 2013, because of non-payment of rent and a breach of the lease. The Notice to Quit also advised Alston that if he and his family did not move out of 57 Litchfield Street by March 10, 2013, an eviction action might be started against them.

On March 18, 2013, Jarrell filed a summary process action against Alston, his wife, and their minor child. The stated reason for the action was non-payment of rent. By March 30, 2013, Alston and his family had moved out of 57 Litchfield Street and into a new residence. According to Alston, Jarrell advised Claud that because Alston and his family had moved out of 57 Litchfield Street, the Housing Court matter was now settled and there was no need for Alston to appear in the Housing Court. On April 11, 2013, the Housing Court sent notice of a scheduled hearing to all parties to the summary process action. Alston and his family, relying on the information provided by Claud, did not appear at the scheduled hearing. Alston further alleges he was advised by the Housing Court's clerk's office that "if the tenants were already moved out of the property, there was nothing to do, the matter was closed." (Doc. # 12, at 11). The Housing Court subsequently granted motions for default for failure to appear filed by Jarrell and on May 10, 2013, entered judgment in his favor in the amount of $3,300.00 for non-payment of rent.

**\*3** On June 21, 2013, Jarrell filed an action in small claims court seeking execution of the judgment that had previously been granted by the Housing Court. Although Alston's wife and minor child were named as defendants in the small claims action, Alston himself was not. Following a hearing, judgment entered in favor of Jarrell on January 15, 2014. The court ordered monthly payments to Jarrell in the amount of $100.00 starting on February 14, 2014. (Doc. # 1–2, at 33). Alston obviously takes issue with the judgment of the small claims court. As characterized by him, the "[s]mall claims court clerks' office and or [a] certain Magistrate appears to be incompetent or forgot how to be fair and reasonable when performing their Duties." (Doc. # 12, at 11).

### III. DISCUSSION

#### A. Standard

As noted by Judge Margolis in her Ruling on Plaintiff's Motion for Leave to Proceed in Forma Pauperis, 28 U.S.C. § 1915 provides that "the court shall dismiss the case at any time if the court determines that ... the action ... fails to state a claim on which relief may be granted...." 28 U.S.C. § 1915(e)(2)(B)(ii). "A complaint must be dismissed if it does not plead 'enough facts to state a claim for relief that is plausible on its face.' " *Brown v. Daikin America Inc.,* 756 F.3d 219, 225 (2d Cir.2014) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). For purposes of determining facial plausibility, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitations of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

### B. Facial Plausibility of Amended Complaint

In his Amended Complaint Alston alleges violations of the Fair Housing Act. The Fair Housing Act prohibits, among other things, discrimination in the terms, conditions, or privileges of the rental of housing, "*because of* ... familial status," or "*because of* a handicap" of a person residing in the rental housing. 42 U.S.C. §§ 3604(a), 3604(f) (emphasis added). The Amended Complaint alleges that Alston and his family were subject to harsh conditions while they were renting the house located at 57 Litchfield Street, e.g., not being allowed to raise the temperature above 65 degrees. The Amended Complaint does not, however, plead factual content that allows the Court to draw the reasonable inference that Alston and his family were discriminated against in the terms, conditions, or privileges of rental *because of* either familial status or a handicap. Indeed, the Amended Complaint indicates that all tenants who rented the house located at 57 Litchfield Street were subjected to these harsh conditions, regardless of familial status or handicap: "The Defendant had extreme difficulty renting the 57 Litchfield Street property because the defendant would not allow tenants to turn up the heat over 65 degrees, no matter how cold the weather would be...." (Doc. # 12, at 1). "The contractor [Cecil Alston] stated the furnace has not been serviced since he put it in 5 years ago and was in a dangerous condition." (*Id.* at 8).

**\*4** The Amended Complaint also alleges specific retaliatory acts taken by Jarrell against Alston, e.g., contacting Alston's probation officer to make false accusations against him. Even if it were assumed that these acts could constitute terms, conditions, or privileges of rental, the Amended Complaint does not plead factual content that allows the Court to draw the reasonable inference that these retaliatory acts were taken because of either familial status or a handicap. The factual context of these acts, as set out in the Amended Complaint, makes it clear that they relate to an ongoing family dispute involving the plaintiff, the defendant, and their mother.

While the facts alleged in the Amended Complaint might state a plausible claim that Jarrell was a bad landlord, or even a bad brother, they do not state a plausible claim for relief under the Fair Housing Act. Since the Amended Complaint "fails to state a [Fair Housing Act] claim on which relief may be granted," the Fair Housing Act claims must be dismissed. 28 U.S.C. § 1915(e)(2)(B)(ii).

The Amended Complaint also alleges violations of the Americans with Disabilities Act ("ADA") in connection with the rental of the house located at 57 Litchfield Street. The ADA prohibits, among other things, discrimination on the basis of disability in public accommodations. Pursuant to 42 U.S.C. § 12181(7)(A), the term "public accommodation" includes "an inn, hotel, motel, or other place of lodging...." "However, the legislative history of the ADA clarifies that 'other place of lodging' does not include residential facilities." *Independent Housing Services of San Francisco v. Fillmore Center Associates,* 840 F.Supp. 1328, 1344 n .14 (N.D.Cal.1993). "Because [the plaintiff] is alleging discrimination in connection with a place of residence, he fails to state a claim that is subject to the ADA under the public accommodation provision of that act." *Reid v. Zackenbaum,* No. 05–CV–1569 (FB), 2005 U.S. Dist. LEXIS 17177, at *12–13 (E.D.N.Y. Aug. 17, 2005).

Even if the rental of 57 Litchfield Street were subject to the ADA, the Amended Complaint would fail to state a plausible claim for relief under the ADA for the same reasons that it fails to state a plausible claim for relief under the Fair Housing Act, i.e., the Amended Complaint does not plead factual content that allows the Court to draw the reasonable inference that Alston and his family were discriminated against in connection with the rental of 57 Litchfield Street on the basis of a disability. *See Drazen v. Town of Stratford,* No. 09cv896 (WWE), 2013 U.S. Dist. LEXIS 47908, at *12 (D. Conn. April 2, 2013), *vacated in part,* 2013 U.S. Dist. LEXIS 113870 (D.Conn. Aug. 13, 2013) ("Courts apply parallel analysis to FHA and ADA claims, with the exception

that the FHA applies only to a 'dwelling.' "). Since the Amended Complaint "fails to state a claim [under the ADA] on which relief may be granted," the ADA claims must also be dismissed. 28 U.S.C. § 1915(e)(2)(B)(ii).

**\*5** The Amended Complaint also raises claims under various Connecticut statutes. Because the Court has determined that all of the federal claims must be dismissed, however, this case will be dismissed in its entirety. *See Weissbrod v. Housing Part of the Civil Court of the City of New York,* 293 F.Supp.2d 349, 355 (S.D .N.Y.2003) (internal quotation marks omitted) ("because all of the claims over which this Court potentially might have had original jurisdiction are subject to dismissal, the Court should decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims"). In dismissing Alston's state law claims along with his federal claims, the Court expresses no view as to the merits of the state law claims. Alston may wish to pursue any state law claim he believes he has in state court.

## CONCLUSION

For the reasons stated above, the defendant Jarrell's motion to dismiss (**doc. # 47**) is **GRANTED.** The Clerk is directed to close this case.

**SO ORDERED.**

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 418153

---

**End of Document**

© 2022 Thomson Reuters. No claim to original U.S. Government Works.

2005 WL 1993394
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Enrique REID, Plaintiff,

v.

Jeffrey ZACKENBAUM, Defendant.

No. 05-CV-1569 FB.
|
Aug. 17, 2005.

**Attorneys and Law Firms**

Enrique Reid, pro se, Brooklyn, NY, for Plaintiff.

### *MEMORANDUM AND ORDER*

BLOCK, District Judge.

 **\*1** Plaintiff Enrique Reid ("Reid") brings this *pro se* action against his former landlord, defendant Jeffrey Zackenbaum ("Zackenbaum"), alleging that Zackenbaum violated his rights by locking Reid out of his apartment and discarding Reid's medicines and other personal property. The Court grants Reid's request to proceed *in forma pauperis* and reviews the sufficiency of his complaint *sua sponte,* pursuant to 28 U.S.C. § 1915(e)(2)(B). Although Reid's complaint does not allege any cognizable federal claim, he is granted leave to amend his complaint within 30 days of the filing of this Memorandum and Order to afford him the opportunity to do so.

### I.

The Court gleans the following facts and circumstances from a liberal reading of Reid's complaint. *See McEachin v. McGuinnis,* 357 F.3d 197, 200 (2d Cir.2004) ("when [a] plaintiff proceeds *pro se,* ... a court is obliged to construe his pleadings liberally"). For some time until February 20, 2005, Reid lived in an apartment building owned by Zackenbaum at 200 Irving Avenue, Brooklyn. On February 20, 2005, thinking he would be admitted to a hospital later that day, Reid signed a document which Zackenbaum or his employees said was "just a move-out form." Complaint at ¶ 4. Reid, who alleges that he is legally blind and dying of AIDS, apparently could

not or did not read the document. While the exact nature and legal significance of the document is therefore not alleged in the complaint, the injunctive relief requested by Reid suggests that this document was an agreement terminating Reid's lease.

Shortly after signing this document, Reid learned that he would not be admitted to the hospital after all. He made prompt efforts to rescind the February 20 agreement. On February 21, 2005, Reid verbally informed Zackenbaum that he would not be moving. The next day, Reid sent Zackenbaum a notarized letter to that effect by certified mail. Despite being so notified, Zackenbaum locked Reid out of the apartment. Zackenbaum also discarded medicines and other personal property that Reid had left in the apartment.

On February 25, 2005, Reid went to "court" to attempt to regain access to the apartment. Reid's complaint does not identify the "court," although the fact that Reid seeks to recover "court cost[s]" incurred in "Landlord Tenant Civil Court Applet [sic] Court and Federal Court," *id.* at ¶ 5, suggests that Reid pursued this action in the Landlord-Tenant Division of the Housing Part of the Civil Court of the City of New York and, perhaps, appealed to the Supreme Court, Appellate Term. The complaint also does not indicate the outcome of these legal proceedings. The complaint implies that the court, referring to papers filed by Zackenbaum in an earlier action, errantly believed that Reid owed $2,000 in rent and denied him relief. *Id.* at ¶ 4. However, the *ad damnum* clause of the complaint, which requests that this Court "enforce a judgment," *id.* at ¶ 5, suggests that Reid obtained a judgment in his favor.

 **\*2** On March 17, 2005, Reid commenced this action. Although the caption of the complaint names only Zackenbaum as a defendant, allegations in the body of the complaint provide addresses for both Zackenbaum and his attorney, Benjamin Epstein. *Id.* at ¶ 2. The complaint alleges that "Defendant and Attorney for Defendant Violated the Federal American Disability Act ... and may also have violated the civil law of Enrique Reid 42 USC 1331." *Id.* at ¶ 3. Reid seeks monetary damages to compensate for the "mental anguish" caused by the lockout and the "pain [and] suffering" resulting from exacerbation of Reid's physical ailments. *Id.* at ¶¶ 4-5. Reid also seeks "to enforce a judgment ... that [he] retain ... apartment 1B or other vacant apartment at 200 Irving Avenue ... or that [he] be grant[ed] financial restitution ... sufficient for a new apartment and medicines as well as personal property." *Id.* at ¶ 5. Finally, Reid seeks injunctive relief: an order requiring Zackenbaum

(1) to read aloud to a tenant the provisions of any document he asks the tenant to sign, and (2) to grant a tenant five days to move his or her property from his or her apartment after signing "an agreement." *Id.*

## II.

### A. Standard of Review

Under 28 U.S.C. § 1915(e)(2)(B), a district court must dismiss a case if the court determines that the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." An action is frivolous as a matter of law when, *inter alia,* it is based on an "indisputably meritless legal theory"that is, when it "lacks an arguable basis in law ..., or [when] a dispositive defense clearly exists on the face of the complaint." *Livingston v. Adirondack Beverage Co.,* 141 F .3d 434, 437 (2d Cir.1998). "[A] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema,* 534 U.S. 506, 514 (2002) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984)). However, if a liberal reading of the complaint "gives any indication that a valid claim might be stated," the Court must grant leave to amend the complaint. *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000); *Gomez v. USAA Fed. Sav. Bank,* 171 F.3d 794, 795 (2d Cir.1999). *See also Frazier v. Coughlin,* 850 F.2d 129, 130 (2d Cir.1988) ("A *pro se* plaintiff who brings a civil rights action should be 'fairly freely' afforded an opportunity to amend his complaint") (citing *Satchell v. Dilworth,* 745 F.2d 781, 785 (2d Cir.1984)).

### B. Claims Arguably Indicated

Reid's complaint implies that Reid is seeking to establish federal question jurisdiction under 28 U.S.C. § 1331, which grants district courts jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." Reid attempts to identify specific federal statutes, alleging that Zackenbaum and his attorney violated "the Federal American Disability Act" and may have violated "the civil law of Enrique Reid 42 USC 1331." Complaint at ¶ 3. The Court will construe Reid's complaint as suggesting violations of the Fair Housing Amendments Act, 42 U.S.C. § 3601 *et seq.* (the "FHAA"), the public accommodations and public services provisions of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* (the "ADA"), section 504 of the Rehabilitation Services Administration Act, 29 U.S.C. §

794 (the "Rehabilitation Act"), and the Civil Rights Act of 1871, 42 U.S.C. § 1983 (" § 1983").

### 1. FHAA Claims

**\*3** The FHAA provides, in relevant part, that it is unlawful to "discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of ... that buyer or renter." 42 U.S.C. § 3604(f)(1). The FHAA applies to the sale and rental of any property "designed or intended for occupancy as a residence by one or more families." 42 U.S.C. § 3602(b). A plaintiff seeking recovery under the FHAA can establish discrimination under three theories: (1) disparate treatment; (2) disparate impact; (3) failure to make a reasonable accommodation. *See Tsombanidis v. West Haven Fire Dept.,* 352 F.3d 565, 573 (2d Cir.2003). Reid fails to state a claim under the disparate impact or reasonable accommodation theories; however, a liberal reading of his complaint suggests that he may be able to state a claim of disparate treatment.

To establish disparate impact, the plaintiff must show "(1) the occurrence of certain outwardly neutral practices, and (2) a significantly adverse or disproportionate impact on persons of a particular type produced by the defendant's facially neutral acts or practices." *Tsombanidis,* 352 F.3d at 575. The basis for a successful disparate impact claim involves a comparison between those groups who are adversely affected by a practice because of their disability, and those unaffected by it. *See id.* Construing Reid's complaint liberally, the Court will assume that the facially neutral act alleged by Reid is Zackenbaum's practice of not reading documents to tenants. Reid's complaint does not allege, nor is there any indication in the complaint, that there are other blind or disabled tenants and that this practice produces a significantly adverse or disproportionate impact on such tenants; rather, at most he alleges that it produced an adverse impact on him.

Reid also does not state a claim under the FHAA by alleging a failure to make reasonable accommodations. "To prevail on a reasonable accommodation claim, plaintiffs must first provide the [defendant] an opportunity to accommodate them through the entity's established procedures used to adjust the neutral policy in question ." *Tsombanidis,* 352 F.3d at 578. The complaint does not suggest that Reid asked for any accommodations, such as requesting that Zackenbaum read the document to him, provide him with a braille version, or give him time to find someone else to read the document, and that Zackenbaum then refused to accommodate him.

To show disparate treatment, a plaintiff must demonstrate that "discriminatory purpose was a motivating factor" in defendant's action. *See Village of Arlington Heights v. Metropolitan Housing Dev. Corp.,* 429 U.S. 252, 270 (1977). A complaint alleging discrimination must contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." *Swierkiewicz,* 534 U.S. at 512 (citing Fed. Rule Civ. Proc. 8(a)(2)) (internal quotations omitted). To withstand dismissal, however, a complaint alleging discrimination cannot rest on conclusory allegations of discrimination, but must contain "facts supporting the grounds upon which [the] claim of ... discrimination rests." *Straker v. Metropolitan Transit Authority,* 333 F.Supp.2d 91, 102 (E.D.N.Y.2004).

**\*4** Reid's complaint is barren of any allegation of discrimination because of his disability; rather, Reid asserts only that he has a disability, and that he was wronged in a housing matter when Zackenbaum took advantage of his disability. The actions recited in the complaint, reprehensible as they may be, do not allege discrimination prohibited by the FHAA. *See Garcia v. S.U.N.Y. Health Sciences Center,* 280 F.3d 98, 112-13 (2d Cir.2001) (affirming dismissal of complaint under the ADA where plaintiff's allegations were "devoid of any contention that [defendants] were motivated by irrational discriminatory animus or ill will based on his alleged learning disability" and plaintiff alleged "simply that [defendant] denied him the accommodations he sought"); *Wiexel v. Board of Education,* 287 F.3d 138, 146-47 (2d Cir.2002) (stating that a *pro se* plaintiff's complaint is sufficient to withstand dismissal under the ADA and Rehabilitation Act "if it alleges that ... [plaintiff] has been denied [a] benefit *by reason of* her disability") (emphasis added). Although there may be cases where discrimination can be inferred from the facts of a complaint where the pleading does not explicitly allege discrimination on the basis of a disability, none of the facts in Reid's complaint, nor the relief sought, suggest that Zackenbaum's termination of the lease was motivated by discriminatory ill will.

Nonetheless, the nature of the allegations are such that the Court will grant Reid leave to amend his complaint to allege, if he can do so in good faith, the necessary element of discriminatory motivation to support a claim of disparate treatment, which would require him to set forth facts sufficient to give notice of the grounds upon which the claim of discrimination is based. *See Straker,* 333 F.Supp.2d at 102.

**2. ADA Claims**

Reid fails to state a claim under the public accommodation provision of the ADA; however, because his complaint suggests that he may be able to state a claim under the public services provision of the ADA, the Court grants Reid leave to amend in regard to that claim.

To state a claim for discrimination under the ADA, a plaintiff must allege (1) that he is a "qualified individual" with a disability; (2) that the defendant is subject to the ADA; and (3) that the plaintiff was "denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, *by reason of* [his] disability." *See Henrietta D. v. Bloomberg,* 331 F.3d 261, 288 (2d Cir.2003) (emphasis added). The public accommodation provision of the ADA prohibits discrimination against any individual on the basis of disability "by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182. "Public accommodation" includes "an inn, hotel, motel or other place of lodging, except for an establishment located within a building that contains not more than five rooms for rent or hire and that is actually occupied by the proprietor of the establishment as the residence of such proprietor." 42 U.S.C. § 12181. A residential facility, such as an apartment, is not a public accommodation under the ADA. *See Independent Housing Services of San Francisco v. Fillmore Center Assocs.* 840 F.Supp. 1328 (N.D.Cal.1993); *see also* Daniel Finkelstein and Lucas A. Ferrara, N.Y. Practice, *Landlord and Tenant Practice in New York,* § 5:61. Because Reid is alleging discrimination in connection with a place of residence, he fails to state a claim that is subject to the ADA under the public accommodation provision of that act.

**\*5** However, the public services provision of the ADA separately "provides disabled individuals redress for discrimination by a 'public entity.' " *Gentile v. Town of Huntington,* 288 F.Supp.2d 316, 322 (E.D.N.Y.2003) (quoting *Hallett v. N.Y.S. Dep't of Correctional Services,* 109 F.Supp.2d 190, 199 (S.D.N.Y.2000)); *see also* 42 U.S.C. § 12132 ("no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."). A "public entity" under the ADA includes, *inter alia,* "any department, agency, special purpose district, or other instrumentality of a State or States or local government," 42 U.S.C. § 12131, and a suit brought against an individual acting in his or her official capacity will be considered a suit against a "public entity." *Henrietta D.,* 331 F.3d at 272.

Reid's complaint does not allege whether he resided in public housing, and whether his landlord's actions were taken in his official capacity on behalf of the New York City Housing Authority ("NYCHA"), which is a public entity under the ADA. Reid's ADA claim is also deficient because, as with his potential FHAA claim, it does not contain allegations which suggest that Reid's landlord discriminated against him "by reason of" of his disability. Because there is nothing in Reid's complaint to suggest that he was *not* residing in housing administered by NYCHA, such that an ADA claim would be foreclosed, and because Reid may be able to allege in good faith that Zackenbaum was acting on behalf of NYCHA and terminated Reid's lease because he was disabled, the Court grants Reid leave to amend.

**3. Rehabilitation Act Claims**

Reid should also be allowed the opportunity to amend his complaint to properly allege a claim under the Rehabilitation Act. The Rehabilitation Act prohibits discrimination on the basis of handicap in programs receiving federal financial assistance, *see* 42 U.S.C. § 794, which includes discrimination in Section 8 housing programs. *See* 24 C.F.R. § 8.1 *et seq.* In order to state a claim for discrimination under the Rehabilitation Act, a plaintiff must further allege that a defendant's action was taken "solely by reason of [plaintiff's] handicap." *Doe v. New York University,* 666 F.2d 761, 777 (2d Cir.1981).

Reid's complaint does not explain whether he lived in housing subsidized by Section 8 vouchers prior to the termination of his lease; if this were the case, the Rehabilitation Act could provide the basis for a federal claim if, once again, Reid alleges that his landlord discriminated against him because of his handicap. Accordingly, the Court grants Reid leave to amend this claim to allege, if it is the case, that his housing was subject to the Rehabilitation Act, and to include good faith allegations of the requisite discriminatory motivation on the part of Zackenbaum.

**4. Section 1983 Claim**

 **\*6**  Finally, Reid may be able to state a claim under § 1983 of the Civil Rights Act. To state such a claim, a plaintiff must establish that he was "deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law."

*American Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 49-50 (1999). The requirement that the alleged act be committed "under color of state law," *see American Mfrs. Mut. Ins. Co.,* 526 U.S. at 49-50, excludes from the reach of § 1983 "merely private conduct, no matter how discriminatory or wrongful." *Blum v. Yaretsky,* 457 U.S. 991, 1002 (1982); *Shelley v. Kraemer,* 334 U.S. 1, 13 (1948). "If a defendant's conduct satisfies the state action requirement under the Fourteenth Amendment, then that conduct also constitutes action 'under color of' state law for purposes of § 1983." *Tancredi v. Metropolitan Life Ins. Co.,* 378 F.3d 220, 229 (2d Cir.2004). In order for Zackenbaum to be considered a state actor, Reid would have to allege in good faith that Zackenbaum was acting on behalf of a state housing agency or engaged in joint activity with a state agency at the time he terminated Reid's lease. *See, e.g., West v. Atkins,* 487 U.S. 42, 49-50 (1988) (noting that state employment is generally sufficient to render a defendant a state actor); *Ginsberg v. Healy Car & Truck Leasing, Inc.,* 189 F.3d 268, 271 (2d Cir.1999) (stating that private parties who are engaged in joint activity with the state or its agents will also be found to be acting "under color" of state law for purposes of § 1983) (quoting *United States v. Price,* 383 U.S. 787, 794 (1966)).

Nothing in the complaint suggests that Zackenbaum is a state actor; conversely, because the complaint contains almost no information about Zackenbaum, there is nothing to suggest that he is *not* a state actor. Given his *pro se* status, Reid is granted leave to amend his complaint to allege in good faith whether Zackenbaum was a state actor, and to include sufficient facts to give notice of the basis for such allegation.

**CONCLUSION**

The Court grants Reid leave to file an amended complaint in accordance with this decision within 30 days of the filing of this Memorandum and Order. If he fails to do so, or if the amended complaint does not cure the defects in the original complaint, this action will be subject to dismissal.

**SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2005 WL 1993394

2005 WL 1993394

---

**End of Document**                                   © 2022 Thomson Reuters. No claim to original U.S. Government Works.

Genco v. Sargent & Collins LLP, Not Reported in Fed. Supp. (2018)

2018 WL 3827742

2018 WL 3827742
Only the Westlaw citation is currently available.
United States District Court, W.D. New York.

Benedict R. GENCO, Plaintiff,
v.
SARGENT & COLLINS LLP, Defendant.

18-CV-0107-LJV-MJR
|
Signed 06/01/2018
|
Filed 06/04/2018

**Attorneys and Law Firms**

Benedict R. Genco, N. Tonwanda, NY, pro se.

Richard G. Collins, Sargent & Collins, LLP, Williamsville, NY, for Defendant.

REPORT AND RECOMMENDATION

HONORABLE MICHAEL J. ROEMER, United States Magistrate Judge

## INTRODUCTION

*1  This case has been referred to the undersigned pursuant to Section 636(b)(1) of Title 28 of the United States Code, by the Honorable Lawrence J. Vilardo, for hearing and reporting on dispositive motions for consideration by the District Court. Before the Court is defendant's motion to dismiss plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Dkt. No. 3). For the following reasons, it is recommended that defendant's motion to dismiss be granted and the complaint dismissed with prejudice.

## RELEVANT FACTS AND BACKGROUND

Plaintiff Benedict Genco ("plaintiff" or "Genco"), who is proceeding *pro se*, filed the instant complaint against the law firm of Sargent & Collins, LLP ("Sargent & Collins" or "defendant") on January 22, 2018. (Dkt. No. 1). The allegations in plaintiff's complaint are, in large part, difficult to follow or fully understand. In light of plaintiff's *pro se* status, the Court has attempted to discern

the causes of action asserted. Plaintiff's claims appear to be premised upon Sargent & Collins' legal representation of his employer, Starpoint Central School District ("Starpoint"), in or around January of 2017. (*Id.*). Plaintiff contends that, on account of his various disabilities, Starpoint placed him on administrative leave pursuant to Section 72 of the New York State Civil Service Law and forced him to undergo a fitness for duty medical examination. (*Id.*). He claims that by serving as legal counsel to Starpoint during this time, Sargent & Collins also discriminated and retaliated against him on the basis of his disabilities. [1] (*Id.*). Plaintiff alleges that Sargent & Collins contacted the doctor who performed the examination, that they engaged in the "unauthorized disclosure" of his medical records, and that they "assisted" Starpoint in placing him on unpaid leave. (*Id.*). Plaintiff indicates that the nature of his suit against Sargent & Collins is "disability discrimination, retaliation, providing unauthorized medical records and failure to accommodate." Genco's complaint further alleges that: (1) Starpoint failed to accommodate his disability with respect to boiler training; (2) his fitness for duty examination was improper because the doctor who performed the examination was not a physician; [2] and (3) the fitness for duty examination as well as his placement on administrative leave violated the New York State Civil Service Law and the New York State Education Law. (*Id.*).

[1]       Genco has filed a separate suit in this Court against Starpoint alleging employment discrimination, retaliation and failure to accommodate in violation of the Americans with Disabilities Act. (*See Genco v. Starpoint Central School District*, Case No. 1:17-CV-01168). Starpoint moved to dismiss plaintiff's *pro se* complaint. Today, the Court issued a Report recommending that Starpoint's motion to dismiss plaintiff's complaint be denied. (Case No. 1:17-CV-01168, Dkt. No. 26). Plaintiff further filed suit, also on a *pro se* basis, against the law firm of Webster Szanyi LLP. (*See Genco v. Webster Szanyi, LLP*, Case No. 1:18-CV-00093). Webster Szanyi, who is representing Starpoint in the course of plaintiff's employment discrimination lawsuit, moved to dismiss the complaint. Today, this Court issued a Report recommending that the complaint against Webster Szanyi be dismissed with prejudice. (*Id.* at Dkt. No. 18). It is also noted that plaintiff filed a previous employment discrimination lawsuit against Starpoint, in this

Genco v. Sargent & Collins LLP, Not Reported in Fed. Supp. (2018)

2018 WL 3827742

Case 5:22-cv-00811-LEK-TWD Document 3 Filed 10/17/22 Page 50 of 102

Court, in March of 2013. In February of 2015, the Honorable William M. Skretny granted summary judgment in favor of Starpoint. *See Genco v. Starpoint Central School District*, 1:13-CV-301, 2015 WL 540217 (WDNY Feb. 10, 2015).

2      The complaint states that Michael P. Santa Maria, Ph.D. performed plaintiff's medical examination. (Dkt. No. 1). Defendant's response papers indicate that Dr. Santa Maria is a board-certified neuropsychologist and that he performed a neuropsychological evaluation and independent medical examination of plaintiff. (Dkt. No. 5).

**\*2** On February 20, 2018, Sargent & Collins filed the instant motion to dismiss the complaint on the basis that plaintiff fails to assert any viable claims for relief. (Dkt. Nos. 3-5). Plaintiff filed responses in opposition to the motion to dismiss. [3] (Dkt. Nos. 8, 10). The responses allege, for the first time, that Sargent & Collins committed the criminal offense of "offering a false instrument for filing" and that their motion to dismiss his complaint was untimely. Defendant filed a reply in further support of the motion to dismiss on March 29, 2017. (Dkt. No. 9). On April 16, 2018, this Court heard oral argument as to defendant's motion to dismiss. [4]

3      The allegations and arguments in plaintiff's responses, like those in his complaint, lack clarity or coherence. His disjointed narrative sets forth a litany of grievances against Starpoint, Sargent & Collins, and Dr. Santa Maria. He attaches various documents including letters from Sargent & Collins and Starpoint relative to his leave and fitness for duty examination, Dr. Santa Maria's report from his neuropsychological evaluation and independent medical examination, a "transcript" of the medical examination that plaintiff transcribed himself, HIPAA releases provided to Dr. Santa Maria, plaintiff's individualized education plan from when he was enrolled in the Starpoint School District, internet research regarding Dr. Santa Maria's practice and areas of specialty, a decision in a prior federal lawsuit filed by plaintiff against Starpoint, and information regarding the elements of the crime of filing a false instrument. As best the Court can ascertain, plaintiff's chief complaint against defendant is that by providing legal representation to Starpoint when plaintiff was

placed on administrative leave, Sargent & Collins discriminated against him.

4      Also at that time, this Court heard oral argument as to the motion to dismiss and a request for a filing injunction on behalf of Starpoint in *Genco v. Starpoint Central School District*, and oral argument as to the motion to dismiss in *Genco v. Webster Szanyi LLP*.

## DISCUSSION

A defendant may move to dismiss a complaint on the ground that the complaint fails to state a claim on which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). In order to state a claim on which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). In reviewing a complaint in the context of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept as true all factual allegations and draw all reasonable inferences from those allegations in favor of the plaintiff. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). Specifically, a complaint must plead "enough facts to state a claim to relief that is plausible on its face", *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must "allow[ ]the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The Supreme Court has further instructed that "[d]etermining whether a complaint states a plausible claim for relief ... requires the ... court to draw on its judicial experience and common sense ... [w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Bell Atl. Corp.*, 550 U.S. at 679.

**\*3** Additionally, the court must be mindful when an individual is proceeding *pro se*. "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) ("[T]he submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest."). However, even a *pro se* complaint will be dismissed if it does not contain "sufficient

factual matter, accepted as true, 'to state a claim to relief that is plausible on its face'." *Ashcroft*, 556 U.S. at 678; *quoting Bell Atl. Corp.*, 550 U.S. at 570.

In reviewing Genco's complaint and response to the motion to dismiss, the Court has accepted as true all factual allegations, drawn all inferences in plaintiff's favor, and held plaintiff's *pro se* pleadings to a less stringent standard than those drafted by an attorney. Moreover, the Court has attempted to interpret Genco's lengthy, disjointed and confusing allegations and arguments in a manner consistent with a claim or claims upon which relief may be granted. However, the Court concludes that plaintiff has not stated a claim for relief that is plausible on its face.

Genco alleges that his placement on administrative leave and the requirement that he undergo a fitness for duty examination amounted to disability discrimination by Starpoint, his employer. He contends that Sargent & Collins also discriminated and retaliated against him based upon his disabilities by providing legal representation to Starpoint at the time these actions were taken. Indeed, plaintiff cannot maintain a cause of action against Sargent & Collins pursuant to the Americans with Disabilities Act ("ADA"). Title I of the ADA prohibits employers from discriminating against a qualified individual with a disability in regard to any aspect of employment. 42 U.S.C. § 12112(a) ("no covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to ... the hiring, advancement, or discharge of employees ... and other terms, conditions, and privileges of employment."). Genco admits in his complaint that he is not a current or former employee of Sargent & Collins. Therefore, he cannot sue defendant for disability discrimination pursuant to Title I of the ADA. [5] *See Curry v. Town of Islip*, 13-CV-3597, 2017 U.S. Dist. LEXIS 203382, *10 (EDNY Dec. 8, 2017) (*sua sponte* recommendation that plaintiff's ADA claim be dismissed because she was not an employee or a former employee of defendant); *Lauria v. Donahue*, 438 F. Supp. 2d 131, 140 (EDNY 2006) (because plaintiff "was neither an employee, nor former employee of [the company], her claim under the ADA was dismissed."); *Morgenthal v. AT&T*, 97-CIV-6443, 1999 U.S. Dist. LEXIS 4294, at *4 (S.D.N.Y. 1999) (holding that because the plaintiff was not an employee of the defendant he could not be considered a "qualified individual" under the ADA).

[5]    Likewise, the facts of this lawsuit have nothing to do with the other four titles of the ADA,

which prohibit disability discrimination in: (1) access to public services, programs and activities provided by public entities (Title II); (2) access to public accommodations, such as hotels and theaters, provided by private entities (Title III); and (3) telecommunications (Title IV). *See* 42 U.S.C. §§ 12101-12213.

Plaintiff also seems to claim that in providing legal representation to Starpoint and communicating with the doctor who performed the fitness for duty examination, Sargent & Collins "assisted" Starpoint in placing plaintiff on unpaid leave. His complaint further alleges, albeit in a vague and confusing manner, that Starpoint failed to accommodate his disability with respect to a boiler training. However, it is unclear exactly how Sargent & Collins was involved in the alleged failure to accommodate. For the reasons just stated, to the extent that plaintiff is claiming that he suffered adverse employment actions on account of his disabilities during his tenure at Starpoint, his cause of action rests with his employer and not his employer's legal counsel. [6]

[6]    Similarly, plaintiff has failed to establish any viable claim for relief against Sargent & Collins based upon his allegations that the doctor who performed the fitness for duty examination was not a physician and that the examination was not performed in accordance with the New York State Civil Service Law or New York State Education Law. Plaintiff acknowledges in his complaint that Starpoint, his employer, placed him on administrative leave and sent him for a medical examination. No cause of action exists against Sargent & Collins for their role in facilitating the medical examination or communicating Starpoint's position to plaintiff or others. *See Hills v. Praxair, Inc.*, 11-CV-678, 2012 U.S. Dist. LEXIS 74125 (WDNY May 29, 2012) (dismissing plaintiff's complaint against the attorneys who represented his employer in defense of plaintiff's EEOC charge because, *inter alia*, statements made in quasi-judicial proceedings, such as arguments submitted in response in an EEOC charge or while representing a client at a hearing, are protected by absolute privilege).

**\*4** Further, even if plaintiff were able to bring a claim against Sargent & Collins under the ADA, Genco's conclusory allegations of discrimination fail to explain how benign actions taken by the law firm in course of representing a client, such as writing letters on behalf of their client or facilitating

Genco v. Sargent & Collins LLP, Not Reported in Fed. Supp. (2018)

2018 WL 3827742

Case 5:22-cv-00811-LEK-TWD   Document 3   Filed 10/17/22   Page 52 of 102

an independent medical examination and communicating the results, are in any way discriminatory or otherwise connected to plaintiff's disabilities. *See Iqbal*, 556 U.S. at 678 (Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully harmed-me accusation ... [n]or does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.") (internal citations and quotations omitted); *Reyes v. Fairfield Props.*, 661 F. Supp.2d 249, 268-269 (EDNY 2009) (conclusory statements that defendants retaliated and discriminated against plaintiff based upon race "do not establish plausibility on [their] face and are insufficient to satisfy even the liberal pleading standards under *Rule 8(a)* and *Iqbal*.").

Genco's allegations that Sargent & Collins was involved in the "unauthorized disclosure" of his medical information also fail to state a claim under federal law. Even if the Court were to construe these vague allegations as a claim under the Health Insurance Portability and Accountability Act ("HIPAA"), no such cause of action exists here. Sargent & Collins is not a health care provider and HIPAA does not provide private rights of action to individuals. *See Mathie v. Lawrence Womack*, 14-CV-6577, 2015 U.S. Dist. LEXIS 11266 (EDNY Jan. 29, 2015) (there is no private right of action under HIPAA and HIPAA enforcement actions are "in the exclusive purview of the Department of Health and Human Services"); *Hunt v. Conry, Simberg, Gannon, Drevans, Abel, Lurvey, Morrow & Schefer, P.A.*, 13-CV-1493, 2013 U.S. Dist. LEXIS 187052 (NDNY Dec. 11, 2013) (dismissing plaintiff's claim that law firm defendant disclosed medical information about plaintiff during the law suit because "the law firm is certainly not a health care provider, and plaintiff has no private right of action under HIPAA.").

Finally, to the extent plaintiff is attempting to assert causes of action based upon allegations that Sargent & Collins filed an untimely motion to dismiss or offered "a false instrument for filing", his claims lack even an arguable basis in law or fact. Offering a false instrument for filing is a violation of Section 175.35 of the New York State Penal Law, for which there is no private right of action. Furthermore, the record is bereft of evidence that defendant filed any document containing false or fraudulent information. Likewise, no cause of action exists for the untimely filing of a motion to dismiss a complaint nor is the instant motion to dismiss untimely. Genco served the summons and complaint on defendant on January 30, 2018. (Dkt. No. 2). Rule 12 of the Federal Rules of Civil Procedure indicates that a party has twenty-one days to answer or move to dismiss a complaint. *See* Fed. R. Civ. P 12(a). Rule 5 of

the Federal Rules of Civil Procedure provides that service is "complete upon mailing." *See* Fed. R. Civ. P. 5(b)(2)(C). Defendant filed the motion and mailed a copy to plaintiff on February 20, 2018, which is twenty-one days after the motion to dismiss was served.

For these reasons, the Court finds that plaintiff has not alleged a claim for relief that is plausible on its face and recommends that the complaint be dismissed. The Court now turns to whether the complaint should be dismissed with or without prejudice. The Second Circuit has advised that "[a] *pro se* complaint should not be dismissed without the Court's granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (internal citations omitted). However, leave to replead may be denied where it is apparent that no amendments would cure the deficiencies of the pleading and an attempt to replead would be futile. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("The problem with [plaintiff's] cause[ ] of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied."). *See also Hayden v. Cnty. of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999) ("[W]here the plaintiff is unable to demonstrate that he would be able to amend his complaint in a manner which would survive dismissal, opportunity to replead is rightfully denied."). Here, the Court cannot identify any allegations in plaintiff's complaint that, even if properly pled, would constitute a viable claim under the law. The deficiencies are substantive in nature and cannot be remedied by amendment or repleading. Therefore, it is recommended that plaintiff's complaint against Sargent & Collins be dismissed with prejudice.

## CONCLUSION

**\*5** For the foregoing reasons, it is recommended that Sargent & Collins, LLP's motion to dismiss the complaint be granted and the complaint dismissed with prejudice. (Dkt. No. 3).

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby **ORDERED** that this Report, Recommendation and Order be filed with the Clerk of Court.

Unless otherwise ordered by Judge Vilardo, any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this Report and Recommendation in accordance with the above statute, Rules

72(b), 6(a), and 6(d) of the Federal Rules of Civil Procedure, and W.D.N.Y. L. R. Civ. P. 72. Any requests for an extension of this deadline must be made to Judge Vilardo.

***Failure to file objections, or to request an extension of time to file objections, within fourteen days of service of this Report and Recommendation WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.*** *See* *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989).

The District Court will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the Magistrate Judge in the first instance. *See* Paterson–Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 990-91 (1st Cir. 1988).

*Finally, the parties are reminded that, pursuant to W.D.N.Y. L.R.Civ.P. 72(b), written objections "shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority."* ***Failure to comply with these provisions may result in the District Court's refusal to consider the objection.***

**SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2018 WL 3827742

---

**End of Document**

© 2022 Thomson Reuters. No claim to original U.S. Government Works.

 © 2022 Thomson Reuters. No claim to original U.S. Government Works.

2020 WL 8450544

Only the Westlaw citation is currently available.

United States District Court, N.D. New York.

Sarah CONSTANTINE; and

NYS Deaf Community, Plaintiffs,

v.

Frank J. MEROLA, Rensselaer County Clerk;

NYS Department of Motor Vehicles; and 5

Unnamed Persons Employed by DMV, Defendants.

1:20-CV-1012 (DNH/ML)

|

Signed 11/06/2020

**Attorneys and Law Firms**

SARAH CONSTANTINE, Plaintiff, Pro Se, 10102 Waters View Circle, Cohoes, New York 12047.

### ORDER and REPORT-RECOMMENDATION

MIROSLAV LOVRIC, United States Magistrate Judge

**\*1** The Clerk has sent this *pro se* complaint (Dkt. No. 1) together with an application to proceed *in forma pauperis* (Dkt. No. 2), filed by Sarah Constantine ("Plaintiff")[1] to the Court for review. For the reasons discussed below, I (1) grant Plaintiff's *in forma pauperis* application (Dkt. No. 2) and (2) recommend that Plaintiff's Complaint (Dkt. No. 1) be accepted in part for filing and dismissed in part.

[1]  Plaintiff, who is not an attorney, cannot represent other plaintiffs. Although parties have a statutory right to "plead and conduct their own cases," 28 U.S.C. § 1654, unlicensed laypersons may not "represent anyone else other than themselves." *Lattanzio v. COMTA*, 481 F.3d 137, 139 (2d Cir. 2007) (internal quotation marks omitted); *see also Guest v. Hansen*, 603 F.3d 15, 20 (2d Cir. 2010) ("A person who has not been admitted to the practice of law may not represent anybody other than himself."). The Complaint names two plaintiffs— Sarah Constantine and the NYS Deaf Community. (Dkt. No. 1 at 1.) However, the Complaint and IFP application are only signed by Plaintiff. (Dkt. No. 1 at 4; Dkt. No. 2 at 2.) Plaintiff cannot

represent anyone other than herself. Accordingly, I reviewed this action with Sarah Constantine as the sole plaintiff. *See Yerushalayim v. Liecthung*, 19-CV-4101, 2019 WL 3817125, at \*2 (E.D.N.Y. Aug. 13, 2019) (reviewing the action as brought by sole plaintiff, Ben-Siyon Ish Yerushalayim, because he was the only signatory on the complaint and IFP application and, as an unlicensed layperson, was incapable of representing the other named plaintiffs).

## I. BACKGROUND

Construed as liberally[2] as possible, Plaintiff's Complaint alleges that her civil rights were violated by Defendants Frank J. Merola, Rensselaer County Clerk, NYS Department of Motor Vehicles (the "DMV"), and five unnamed persons employed by the DMV (collectively "Defendants").[3] (*See generally* Dkt. No. 1.) The Complaint is a form-complaint pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* (*Id.*) Plaintiff alleges that she is "a [d]eaf [w]oman and [m]ute" and that she "was discriminated against [b]ecause [she is] [d]eaf and [b]ecause of [w]here [she] live[s]." (*Id.* at 2.) More specifically, Plaintiff alleges that on or about August 27, 2020 at 1:30 p.m., she was at the DMV office in Troy, New York, when a female DMV employee yelled at her, Plaintiff inquired whether she was being denied service, and another female DMV employee escorted Plaintiff elsewhere and told Plaintiff to "get the hell out of her building." (*Id.*) Plaintiff alleges that she explained to the DMV employees that she was deaf. (*Id.*) Plaintiff also alleges that she was discriminated against because she "was living in a different city." (*Id.*) Plaintiff asserts the following three claims pursuant to the ADA: (1) a claim of denial of participation in a public service or program, (2) a claim of failure to make alterations to accommodate a disability, and (3) a claim of retaliation. (*Id.*) As relief, Plaintiff requests that an interpreter be provided any time a deaf person goes to the DMV and that the DMV not discriminate against anyone for being deaf or because of where they live. (*Id.*) Plaintiff also seeks damages in the amount of $100,000.00. (*Id.*)

[2]  The court must interpret *pro se* complaints to raise the strongest arguments they suggest. *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

WESTLAW   © 2022 Thomson Reuters. No claim to original U.S. Government Works.

3      Defendant Merola and the five unnamed persons
       employed by the DMV are collectively referred to
       as "individual Defendants."

**\*2**  For a more complete statement of Plaintiff's claims, refer
to the Complaint. (Dkt. No. 1.)

Plaintiff also filed an application for leave to proceed *in forma
pauperis.* (Dkt. No. 2.)

## II. PLAINTIFF'S APPLICATION TO PROCEED *IN
FORMA PAUPERIS*

When a civil action is commenced in a federal district
court, the statutory filing fee, currently set at $400, must
ordinarily be paid. 28 U.S.C. § 1914(a). A court is authorized,
however, to permit a litigant to proceed *in forma pauperis*
status if a party "is unable to pay" the standard fee for
commencing an action. 28 U.S.C. § 1915(a)(1). [4]  After
reviewing Plaintiff's amended *in forma pauperis* application
(Dkt. No. 2), the Court finds that Plaintiff meets this standard.
Therefore, Plaintiff's application to proceed *in forma pauperis*
is granted. [5]

4      The language of that section is ambiguous because
       it suggests an intent to limit availability of IFP
       status to prison inmates. *See* 28 U.S.C. § 1915(a)
       (1) (authorizing the commencement of an action
       without prepayment of fees "by a person who
       submits an affidavit that includes a statement of all
       assets such prisoner possesses"). The courts have
       construed that section, however, as making IFP
       status available to any litigant who can meet the
       governing financial criteria. *Hayes v. United States,*
       71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *Fridman v.
       City of N.Y.,* 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y.
       2002).

5      Plaintiff is reminded that, although the application
       to proceed *in forma pauperis* has been granted, she
       will still be required to pay fees that she may incur
       in this action, including copying and/or witness
       fees.

## III. LEGAL STANDARD FOR INITIAL REVIEW OF
THE COMPLAINT

"Notwithstanding any filing fee, or any portion thereof, that
may have been paid, the court shall dismiss the case at any
time if the court determines that ... the action ... (i) is frivolous

or malicious; (ii) fails to state a claim on which relief may be
granted; or (iii) seeks monetary relief against a defendant who
is immune from such relief." 28 U.S.C. § 1915(e)(2).

In order to state a claim upon which relief can be granted,
a complaint must contain, *inter alia*, "a short and plain
statement of the claim showing that the pleader is entitled
to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a
plaintiff "show" that he or she is entitled to relief means that
a complaint "must contain sufficient factual matter, accepted
as true, to 'state a claim to relief that is *plausible* on its
face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (emphasis
added) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570
(2007)). "Determining whether a complaint states a plausible
claim for relief ... requires the ... court to draw on its judicial
experience and common sense.... [W]here the well-pleaded
facts do not permit the court to infer more than the mere
possibility of misconduct, the complaint has alleged–but it has
not shown–that the pleader is entitled to relief." *Iqbal,* 556
U.S. at 679 (internal citation and punctuation omitted).

"In reviewing a complaint ... the court must accept the
material facts alleged in the complaint as true and construe all
reasonable inferences in the plaintiff's favor." *Hernandez v.
Coughlin,* 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted).
However, "the tenet that a court must accept as true all of the
allegations contained in a complaint is inapplicable to legal
conclusions. Threadbare recitals of the elements of a cause
of action, supported by mere conclusory statements, do not
suffice." *Iqbal,* 556 U.S. at 678.

**\*3**  Courts are "obligated to construe a pro se complaint
liberally." *Harris v. Mills,* 572 F.3d 66, 72 (2d Cir. 2009); *see
also Nance v. Kelly,* 912 F.2d 605, 606 (2d Cir. 1990) (per
curiam) (reading the plaintiff's *pro se* complaint "broadly, as
we must" and holding that the complaint sufficiently raised a
cognizable claim). "[E]xtreme caution should be exercised in
ordering sua sponte dismissal of a pro se complaint before the
adverse party has been served and [the] parties ... have had an
opportunity to respond." *Anderson v. Coughlin,* 700 F.2d 37,
41 (2d Cir. 1983).

The Court, however, also has an overarching obligation
to determine that a claim is not legally frivolous before
permitting a *pro se* plaintiff's complaint to proceed. *See, e.g.,
Fitzgerald v. First East Seventh St. Tenants Corp.,* 221 F.3d
362, 363 (2d Cir. 2000) (holding that a district court may
*sua sponte* dismiss a frivolous complaint, notwithstanding
the fact that the plaintiff paid the statutory filing fee).

"Legal frivolity ... occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint." *Aguilar v. United States*, 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at *2 (D. Conn. Nov. 8, 1999) (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998)); *see also Neitzke v. Williams*, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory ... or factual contentions lack an arguable basis."); *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory for purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").

## IV. ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Complaint with this principle in mind, I recommend that Plaintiff's Complaint (Dkt. No. 1) be (1) accepted for filing with respect to the claims pursuant to Title II of the ADA against the DMV and individual Defendants in their official capacities, (2) dismissed without prejudice and with leave to amend with respect to the claims pursuant to Title V of the ADA against the DMV, and (3) dismissed with prejudice and without leave to amend with respect to the claims pursuant to (a) Title II of the ADA against the individual Defendants in their individual capacities, and (b) Title V of the ADA against the individual Defendants in their official and individual capacities.

### A. Discrimination

Plaintiff's discrimination claims appear to be pursuant to Title II of the ADA, which covers disability discrimination in public services, programs, and activities. [6] *Maioriello v. New York State Office for People with Developmental Disabilities*, 14-CV-0214, 2015 WL 5749879, at *12 (N.D.N.Y. Sept. 30, 2015) (Suddaby, C.J.) (citing *Tennessee v. Lane*, 541 U.S. 509, 533-34 (2004)).

[6]    The Court notes that, to the extent Plaintiff's claims are based on a violation of Title III of the ADA, those claims should be dismissed because "Title III expressly does not apply to public entities, including local governments." *Bloom v. Bexar Cnty.*, 130 F.3d 722, 726 (5th Cir. 1997); *see*

*Morales v. New York*, 22 F. Supp. 3d 256, 267 (S.D.N.Y. 2014) (stating that "[a] claim under Title III of [the ADA] can only be asserted against a private entity engaged in the provision of public accommodations, such as an inn, hotel or private school ... Title III is not applicable to public entities.") (collecting cases). Because the DMV is a public entity, Plaintiff cannot assert a Title III claim against it. *See Maioriello*, 2015 WL 5749879, at *16 (dismissing Title V claims based on a violation of Title III against New York because Title III does not apply to public entities).

**\*4** "To establish a violation of Title II, plaintiff must show that: (1) he or she is a qualified individual with a disability; (2) the defendants are subject to the ADA; and (3) the plaintiff was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of plaintiff's disabilities." *Doherty v. Bice*, 18-CV-10898, 2020 WL 5548790, at *6 (S.D.N.Y. Sept. 16, 2020) (citing *Shomo v. City of New York*, 579 F.3d 176, 185 (2d Cir. 2009)). "A qualified individual can base a discrimination claim on any of three available theories: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation." *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009).

However, "individuals cannot be held liable under the ADA." *Netti v. Ayers*, 17-CV-0976, 2017 WL 7542494, at *18 (N.D.N.Y. Oct. 5, 2017) (Baxter, M.J.) (citing *Baross v. Greenlawn*, 16-CV-4805, 2017 WL 2124424, at *4 (E.D.N.Y. May 15, 2017)), *report and recommendation adopted by* 2018 WL 813509 (N.D.N.Y. Feb. 9, 2018) (Suddaby, C.J.); *accord Rosenfield v. New York State Div. of Veterans' Affairs*, 18-CV-1299, 2019 WL 4621962, at *10 (N.D.N.Y. Sept. 24, 2019) (Suddaby, C.J.); *see Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001) (holding that Title II of the ADA does not provide for suits against individuals); *Fox v. State Univ. of N.Y.*, 497 F. Supp. 2d 446, 449 (E.D.N.Y. 2007) ("[T]here is no individual liability under Title I or Title II of the ADA, or the ADEA."); *Sutherland v. New York State Dep't of Law*, 96-CV-6935, 1999 WL 314186, at *7 (S.D.N.Y. May 19, 1999) ("Individual defendants may not be held personally liable for alleged violations of the ADA.").

To the extent that Plaintiff sued individual Defendants in their individual capacities under the ADA, I recommend that those claims be dismissed with prejudice. *See Doherty*, 2020 WL

5548790, at *10 (quoting *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001)) (dismissing with prejudice claims against the defendants in their individual capacities pursuant to Title II of the ADA because that statute does not "provid[e] for individual capacity suits against state officials.").

Out of an abundance of caution, and mindful of the Second Circuit's instruction that a *pro se* plaintiff's pleadings must be liberally construed, *see, e.g., Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), I find that a response is required to Plaintiff's Title II ADA claim against the DMV and individual Defendants in their official capacities. [7] *See Doherty*, 2020 WL 5548790, at *10 (citing *Goonewardena v. New York*, 475 F. Supp. 2d 310, 327 (S.D.N.Y. 2007)) (holding that the plaintiff's "ADA claim may proceed against [the d]efendants in their official capacities.")

[7]     The law in this Circuit is not settled with respect to whether Plaintiff may seek monetary damages against state actors for violations of Title II. "For some time in this Circuit, a plaintiff seeking monetary damages against a [state agency] to remedy an alleged Title II violation was required to show 'not only that there was a violation, but that such violation was motivated either by discriminatory animus or ill will stemming from plaintiff's disability.' " *Doherty*, 2020 WL 5548790, at *8 (quoting *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 89 (2d Cir. 2004); citing *Garcia*, 280 F.3d at 112). However, "[t]he Supreme Court's opinion in *United States v. Georgia*, 546 U.S. 151 (2006), 'has call[ed] *Garcia*'s validity into question' and suggested that ADA claims for damages may proceed under expanded circumstances." *Doherty*, 2020 WL 5548790, at *8 (quoting *Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178, 194 (2d Cir. 2015)). "The Second Circuit in *Dean* left open the question of whether Congress validly abrogated state sovereign immunity under Title II of the ADA." *Id.* (citing *Dean*, 804 F.3d at 193-95 ("We express no position as to the question of whether Congress has validly abrogated sovereign immunity in the context of discrimination in access to public education on the basis of disability.")). The Second Circuit instructed district courts to apply the tripartite test articulated in *Georgia*, when

considering whether Congress abrogated states' sovereign immunity under Title II. *Dean*, 804 F.2d at 195. Therefore, Courts are to consider

> on a claim-by-claim basis, (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct has violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.

*Dean*, 804 F.3d at 194 (quoting *Georgia*, 546 U.S. at 159). Given the deference given to *pro se* pleadings, the procedural posture of the case, and the " 'growing fracture' among courts in this Circuit as to how to determine valid abrogation of state sovereign immunity when no Fourteenth Amendment violation is alleged," *Rosen v. Pallito*, 13-CV-0277, 2017 WL 6513663, at *3 (D. Vt. Dec. 19, 2017), I recommend that the Court defer consideration of the *Georgia* factors until such time as the parties deem it appropriate to bring them before the Court. *Compare Doherty*, 2020 WL 5548790, at *8-9 (conducting the *Georgia* analysis on a motion to dismiss and holding that "Plaintiff's ADA claims for monetary damages shall ... not be dismissed on the ground of sovereign immunity."), *Saunders v. Ryan*, 17-CV-0765, 2018 WL 4275987, at *6 (N.D.N.Y. Sept. 7, 2018) (Kahn, J.) (holding that "[w]ithout more substantive briefing on the issue [of the plaintiff's ADA claims for monetary damages based on the doctrine of sovereign immunity], the Court will not decide such a thorny question."), *Kearney v. Adams*, 15-CV-0824, 2018 WL 3121618, at *10-11 (N.D.N.Y. Feb. 8, 2018) (Hummel, M.J.) (on a motion for summary judgment, noting the divergent approaches adopted by district courts in the Circuit tasked with determining whether Eleventh Amendment immunity applies to Title II ADA claims, but ultimately holding that "because ... the plaintiff's ADA claim [should be] dismissed, the sovereign immunity inquiry must end."), *report and recommendation adopted by* 2018 WL 1470579 (N.D.N.Y. Mar. 26, 2018) (Sharpe, J.), *and Quezada v. Fischer*, 13-CV-0885, 2017 WL 9509993, at *36 (N.D.N.Y. Aug. 31, 2017) (Dancks, M.J.) (on a motion for summary judgment finding that because "no reasonable

jury would find Plaintiff's substantive due process rights under the Fourteenth Amendment violated under *Georgia*" the plaintiff's "hearing impairment claim under the ADA" should be "barred under the Eleventh Amendment."), *report and recommendation adopted by* 2017 WL 4286304 (N.D.N.Y. Sept. 27, 2017) (D'Agostino, J.), *with LaPietra v. City of Albany Police Dep't*, 19-CV-1527, 2020 WL 5891888, at \*14 (N.D.N.Y. Oct. 5, 2020) (Dancks, M.J.) (citing *Keitt v. New York City*, 882 F. Supp. 2d 412, 455-57 (S.D.N.Y. 2011)) (holding that "[w]hile individuals may be sued under the ADA in their official capacities, a plaintiff must plead that the defendant 'was motivated by discriminatory animus or ill-will based on the plaintiff's disability.'"), *Manuel v. New York*, 18-CV-11820, 2020 WL 5775271, at \*3 (S.D.N.Y. Sept. 28, 2020) (dismissing the plaintiff's ADA claim for monetary damages on a motion to dismiss, based on the doctrine of sovereign immunity set forth in *Garcia* without mentioning *Georgia* or *Dean*), and *Rosenfield v. New York State Div. of Veterans' Affairs*, 18-CV-1299, 2019 WL 4621962, at \*8-9 (N.D.N.Y. Sept. 24, 2019) (Suddaby, C.J.) (same).

**B. Retaliation**

**\*5** "Title V of the ADA 'prohibits, *inter alia*, retaliation against any individual who has asserted rights under the ADA.'" *Currytto v. Doe*, 18-CV-1392, 2019 WL 2062432, at \*8 (D. Conn. May 9, 2019) (citing *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 159 (2d Cir. 1999)). "To state a retaliation claim under [the ADA], a plaintiff must establish that '(i) plaintiff was engaged in protected activity; (ii) the alleged retaliator knew that plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action.'" *Currytto*, 2019 WL 2062432, at \*8 (quoting *Weixel v. Bd. of Educ.*, 287 F.3d 139, 148 (2d Cir. 2002)).

The Complaint fails to allege that Plaintiff engaged in any protected activity, that any Defendant knew that Plaintiff was involved in the protected activity, or that any adverse decision or course of action taken by Defendants was causally connected to that protected activity. (Dkt. No. 1.)

Accordingly, I recommend dismissal of Plaintiff's ADA retaliation claim for failure to state a claim. [8]

[8] It is not clear whether states retain their sovereign immunity against retaliation claims brought under Title V of the ADA. *Compare Quadir v. New York State Dep't of Labor*, 39 F. Supp. 3d 528, 536-37 (S.D.N.Y. Aug. 19, 2014) (collecting cases) ("[S]tates retain their sovereign immunity against ... Title V retaliation claims—at least to the extent that those claims are predicated on ADA Title I discrimination claims"), *with Maioriello*, 2015 WL 5749879, at \*12 (holding that "insofar as Plaintiff can state a claim under Title II ... of the ADA, her Title V claim will not be barred by the Eleventh Amendment"). Plaintiff's retaliation claim appears to be based on her Title II claim —as opposed to a Title I claim (because she does not allege an employment relationship with Defendants)—and thus, would not be barred by Eleventh Amendment immunity.

In addition, "no claim under Title V may be maintained against an individual defendant, including [Defendant Merola or the five unnamed individuals employed by the DMV], whether acting in an official, or personal, capacity." *Dorsey v. Sullivan*, 10-CV-0744, 2013 WL 4776344, at \*9 (W.D.N.Y. Sept. 3, 2013) (citing *Warren v. Goord*, 99-CV-0296, 2006 WL 1582385, at \*17-20 (W.D.N.Y. May 26, 2006)) (holding "[t]he failure to so provide for a remedy [for retaliation] is consistent with the fact that nowhere within the ADA's statutory scheme is there any provision for a cause of action against an individual defendant, regardless of capacity, for any substantive violation of ADA Titles I, II or III [such that] construing Title V in light of the ADA's complete statutory scheme ... establishes that Title V similarly does not provide for a claim for retaliation against an individual defendant."), *aff'd*, 2008 WL 5077004 (2d Cir. 2008).

As a result, I recommend that claims against Defendants Merola and the five unnamed DMV employees be dismissed with prejudice.

**V. OPPORTUNITY TO AMEND**

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to

amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.). [9]

[9]    See also *Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

**\*6** In this case, I am unable to conclude with complete certainty that if permitted leave to amend the complaint, Plaintiff could not assert a plausible claim pursuant to Title V against the DMV. Accordingly, I recommend that leave to amend be granted with respect to that claim. However, with respect to the claims pursuant to (1) Title II of the ADA against Defendants Merola and the five unnamed DMV employees in their individual capacities, and (2) Title V against Defendants Merola and the five unnamed DMV employees in either their official or individual capacities, I conclude that granting leave to amend would not likely be productive and recommend that those claims be dismissed without leave to amend. *See Doherty*, 2020 WL 5548790, at *10 (quoting *Garcia*, 280 F.3d at 107) (dismissing with prejudice claims against the defendants in their individual capacities pursuant to Title II of the ADA); *Dorsey*, 2013 WL 4776344, at *9 (holding that "no claim under Title V may be maintained against an individual defendant ... whether acting in an official, or personal, capacity.").

If Plaintiff chooses to file an amended complaint, she should note that the law in this circuit clearly provides

that " 'complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.' " *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)); *accord Pourzancvakil v. Humphry*, 94-CV-1594, 1995 WL 316935, at *7 (N.D.N.Y. May 22, 1995) (Pooler, J.). Therefore, in any amended complaint, Plaintiff must clearly set forth facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. In addition, the revised pleading should allege facts demonstrating the specific involvement of any of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Finally, Plaintiff is informed that any such amended complaint will replace the existing Complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect.").

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's application to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED**; and it is further respectfully

**RECOMMENDED** that Plaintiff's Complaint (Dkt. No. 1) be accepted for filing with respect to Plaintiff's claims pursuant to Title II of the ADA against the DMV and Defendants Merola and the five unnamed employees of the DMV in their official capacities; and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITH LEAVE TO REPLEAD** Plaintiff's Complaint (Dkt. No. 1) to the extent that it asserts claims pursuant to Title V against the DMV, for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(B); and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITHOUT LEAVE TO REPLEAD** Plaintiff's Complaint (Dkt. No. 1) to the extent that it asserts claims pursuant to (1) Title II of the ADA against Defendants Merola and the five unnamed DMV employees in their individual capacities, and (2) Title

V against Defendants Merola and the five unnamed DMV employees in either their official or individual capacities, for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(B); and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITH LEAVE TO REPLEAD** any claims brought on behalf of "NYS Deaf Community" (Dkt. No. 1) because Plaintiff, who is not an attorney, cannot represent other plaintiffs; and it is further

**\*7 ORDERED** that the Clerk of the Court shall file a copy of this Order and Report-Recommendation on Plaintiff, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [10] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT**

**TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. 28 U.S.C. § 636(b) (1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

[10]     If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

**All Citations**

Slip Copy, 2020 WL 8450544

---

**End of Document**                   © 2022 Thomson Reuters. No claim to original U.S. Government Works.

**WESTLAW**   © 2022 Thomson Reuters. No claim to original U.S. Government Works.   7

2021 WL 392487
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Sarah CONSTANTINE, Plaintiff,

v.

NYS DEAF COMMUNITY et al., Defendants.

1:20-CV-1012
|
Signed 02/04/2021

**Attorneys and Law Firms**

Sarah Constantine, Plaintiff, Pro Se, 251 Old Post Road, Ballston Spa, NY 12020.

**DECISION and ORDER**

DAVID N. HURD, United States District Judge

**\*1** Pro se plaintiff Sarah Constantine ("plaintiff") filed this civil rights action alleging that defendants discriminated against her because she is deaf. On November 6, 2020, U.S. Magistrate Judge Miroslav Lovric advised by Report & Recommendation that plaintiff's complaint be accepted in part for filing and dismissed in part without leave to amend. Dkt. No. 4. After plaintiff filed with the Court a notice of change of address, Dkt. No. 5, plaintiff was given an additional period of time in which to lodge any objections to Judge Lovric's Report & Recommendation, Dkt. No. 6. Plaintiff has not filed an objection.

Upon review for clear error, the Report & Recommendation is accepted and adopted in all respects. *See* FED. R. CIV. P. 72(b).

Therefore, it is

ORDERED that

1. Plaintiff's complaint is ACCEPTED for filing with respect to Plaintiff's claims pursuant to Title II of the ADA against the DMV and defendants Merola and the five unnamed employees of the DMV in their official capacities;

2. Plaintiff's complaint is DISMISSED without leave to amend to the extent it asserts claims pursuant to Title V against the DMV for failure to state a claim under 28 U.S.C. § 1915(e)(1)(B)(ii);

3. Plaintiff's complaint is DISMISSED without leave to amend to the extent that it asserts claims under (1) Title II of the ADA against defendants Merola and the five unnamed DMV employees in their individual capacities; and (2) Title V of the ADA against defendants Merola and the five unnamed DMV employees in either their official or individual capacities, for failure to state a claim under 28 U.S.C. § 1915(e)(1)(B)(ii); and

4. Plaintiff's complaint is DISMISSED with leave to amend any claims brought on behalf of "NYS Deaf Community" because plaintiff, who is not an attorney, cannot represent other plaintiffs.

IT IS SO ORDERED.

**All Citations**

Slip Copy, 2021 WL 392487

---

**End of Document** © 2022 Thomson Reuters. No claim to original U.S. Government Works.

2014 WL 1099821
United States District Court,
S.D. New York.

Marilyn GERSHANOW, as Administrator of
the Estate of Cynthia Gershanow, Plaintiff,

v.

COUNTY OF ROCKLAND, Rockland Transit
Corp., Town of Clarkstown, Town of Ramapo,
and Lafontant St. Germain, Defendants.

No. 11–CV–8174 (CS).
|
Signed March 20, 2014.

**Attorneys and Law Firms**

Lawrence Bernard McCarron, Rogers McCarron & Habas,
P.C., Orangeburg, NY, for Plaintiff.

Kalliopi P. Kousis, Heather C. Ragone, Gallo Vittucci Klar
LLP, New York, NY, for County of Rockland, Rockland
Transit Corp. and Lafontant St. Germain.

Harold Y. MacCartney, MacCartney, MacCartney, Kerrigan
& MacCartney, Nyack, NY, for Town of Clarkstown.

Janice Gittelman, Town of Ramapo, Town Attorney, Suffern,
NY, for Town of Ramapo.

**OPINION & ORDER**

SEIBEL, District Judge.

 **\*1** Before the Court are the Motions for Summary Judgment
of Defendants County of Rockland ("Rockland County"),
Rockland Transit Corp. ("Rockland Transit"), Town of
Clarkstown ("Clarkstown"), Town of Ramapo ("Ramapo")
and Lafontant St. Germain ("Mr.St.Germain"). [1] (Docs.127,
136, 147.)

[1] Throughout this opinion, I will refer to Rockland
County, Rockland Transit and Mr. St. Germain
collectively as the "Rockland Defendants."

**I. Background**

The following facts are set forth based upon the parties' Local
Civil Rule 56.1 statements and supporting materials, and

are undisputed except as noted. I set forth only those facts
relevant to my decision.

Plaintiff's decedent, Cynthia Gershanow ("Ms.Gershanow"),
was a wheelchair-bound individual who suffered from
spinal muscular atrophy. (P's 56.1 Rockland Resp. ¶ 2; P's
Aff. Ex. 5 ("Gershanow 6/28/2011 Dep."), at 7.) [2] Due
to her disability, Ms. Gershanow required 24–hour care.
(Gershanow 6/28/2011 Dep. 12.) Ms. Gershanow lived in
an apartment complex for disabled individuals in Rockland
County, New York. (Id. at 6, 29.)

[2] "P's 56.1 Rockland Resp." refers to Plaintiff's
Response to County of Rockland's 56.1 Statement.
(Doc. 143–1.) "P's Aff." refers to Lawrence B.
McCarron's Affirmation in Opposition to Summary
Judgment. (Doc. 143–2.)

On October 28, 2010, Ms. Gershanow traveled with her
personal care aide, Raquel Andrade ("Ms.Andrade"), on
Rockland Transit buses to and from a grocery store near Ms.
Gershanow's apartment. (Id. at 19–20.) Rockland Transit was
under contract with Rockland County to provide bus service
on the routes Ms. Gershanow and Ms. Andrade traveled on
October 28, 2010. (P's 56.1 Rockland Resp. ¶ 6.) Mr. St.
Germain, a Rockland Transit employee, drove the bus Ms.
Gershanow and Ms. Andrade took on the return trip from the
grocery store. (Id. ¶ 7.)

The final portion of the return trip involved a westward turn
onto East Eckerson Road from West Clarkstown Road. (See
Ballard Aff. Ex. A ("E. Eckerson Rd. Map").) [3] The bus
then traveled west on East Eckerson Road, past Fayva Court.
(See id.) After passing Fayva Court, but before reaching
Mallory Road, Mr. St. Germain stopped the bus either at
or before reaching the designated bus stop on the northern
side of East Ramapo Road (the "Clarkstown bus stop"), to
allow Ms. Gershanow and Ms. Andrade to get off the bus.
(P's 56.1 Rockland Resp. ¶ 11.) The Clarkstown bus stop is
located in Clarkstown, New York. (See Clarkstown's Mem.
13–16.) [4] As discussed below, the parties dispute whether Mr.
St. Germain stopped the bus at the Clarkstown bus stop or
between Fayva Court and the Clarkstown bus stop.

[3] "Ballard Aff." refers to Affidavit of Wayne T.
Ballard. (Doc. 129.)

4　"Clarkstown's Mem." refers to Clarkstown's Memorandum of Law. (Doc. 130.)

Plaintiff contends that Mr. St. Germain let Ms. Gershanow and Ms. Andrade off his bus between Clarkstown's and the Clarkstown bus stop despite Ms. Gershanow's request for him to stop at the intersection of Fayva Court and East Eckerson Road. (P's 56.1 ¶ 3.)[5] Ms. Gershanow requested to depart the bus at Fayva Court, because Fayva Court had little traffic, (P's Aff. Ex. 7 ("Andrade Dep."), at 73), and a usable curb ramp, (P's Aff. Ex. 6 ("Gershanow 11/21/2012 Dep."), at 168–69), such that Ms. Gershanow could safely cross East Eckerson Road there, (P's 56.1 Ramapo Resp. ¶¶ 9–10).[6] In contrast, according to Plaintiff, individuals in wheelchairs could not use the curb ramp at the Clarkstown bus stop, (P's Aff. Ex. 15 ("Mangam Aff."), at ¶ 4), because the curb ramp was too steep, (Gershanow 11/21/2012 Dep. 63–65), and there was no crosswalk between the Clarkstown bus stop and the curb ramp directly across East Eckerson Road, (P's 56.1 ¶ 12). The intersection of Fayva Court and East Eckerson Road was not, however, a designated bus stop, so Mr. St. Germain refused Ms. Gershanow's request to be let off at Fayva Court. (See P's Aff. Ex. 10 ("St. Germain Dep."), at 72–73.)

5　"P's 56.1" refers to Plaintiff's Statement Pursuant to Rule 56.1. (Doc. 143–1.)

6　"P's 56.1 Ramapo Resp." refers to Plaintiff's Response to Town of Ramapo's Statement Pursuant to Rule 56.1. (Doc. 143–1.)

**\*2** In his deposition testimony, Mr. St. Germain claimed that he lowered the bus ramp so that it rested on the curb ramp directly in front of the Clarkstown bus stop. (Id. at 76–77.) Mr. St. Germain testified that after he lowered the bus ramp, he watched Ms. Gershanow maneuver down the bus ramp and onto the curb ramp, and then inside the bus shelter. (Id. at 85–86.) Plaintiff contends that Mr. St. Germain discharged Ms. Gershanow and Ms. Andrade in the white-striped portion of the roadway, to the east of the Clarkstown bus stop. (P's 56.1 Rockland Resp. ¶ 9; Andrade Dep. 75–76.) Plaintiff claims that aside from rotating her wheelchair 180 degrees, Ms. Gershanow did not move from the spot where she departed the bus. (P's 56.1 ¶ 6; Andrade Dep. 88.) After being on the road's surface for a few minutes, Ms. Gershanow was struck by a car, (see Andrade Dep. 86–90), and suffered severe injuries, (P's 56.1 ¶ 14).

Plaintiff presents evidence that prior to October 28, 2010, Ms. Gershanow and one of her neighbors, Barbara Mangam ("Ms. Mangam"), complained about their inability to use the Clarkstown bus stop to three individuals: Mike Gursky, Irwin Cohen and Mike Pendergrass. (See Mangam Aff. ¶¶ 7–9.) These individuals were employed by either Rockland County or Rockland Transit. (Id. ¶¶ 6–7.) Plaintiff points to no evidence as to these individuals' job titles or responsibilities. (See id.) Other than holding sensitivity trainings for bus drivers regarding their interactions with handicapped individuals, (see id.), it is unclear what steps, if any, Rockland County and Rockland Transit took to provide wheelchair-bound individuals access to the Clarkstown bus stop or to generally make it safe for wheelchair-bound individuals to depart buses on the northern side of East Eckerson Road. Ms. Gershanow and Ms. Mangam also stated that Rockland Transit bus drivers frequently dropped wheelchair-bound individuals off at Fayva Court, (see Gershanow 11/21/2012 Dep. 65; Mangam Aff. ¶¶ 5, 11), but there is testimony that this would have been contrary to Rockland Transit's protocol, (see P's Aff. Ex. 9 ("Gunning Dep."), at 37–40).

There is no evidence that Ramapo or Clarkstown knew about accessibility problems on either the northern (Clarkstown) or southern (Ramapo) side of East Eckerson Road. (See P's 56.1 Ramapo Resp. ¶¶ 14–15.) Defendants dispute whether the towns—i.e. Ramapo and Clarkstown—or Rockland County constructed the sidewalks, curb ramps and bus shelters abutting East Ramapo Road, as well as which entity is responsible for their maintenance.[7] (See Clarkstown's Mem. 13–16.)

7　　I merely note this dispute. I will leave resolution of this issue, which does not affect my decision and solely involves New York State law, to the New York courts if Plaintiff further pursues her negligence action.

Ms. Gershanow commenced this action on November 10, 2011. (See Complaint ("Compl."), (Doc. 1).) She filed an Amended Complaint on February 9, 2012, bringing a claim under Title II of the Americans with Disabilities Act (the "ADA") against all Defendants other than Mr. St. Germain, and negligence claims against all Defendants under New York State law. (See Amended Complaint ("AC"), (Doc. 14).) Plaintiff subsequently discontinued her negligence claim against Ramapo. (P's 56.1 Ramapo Resp. ¶ 19.) Defendants now seek summary judgment on all claims. (Docs. 127, 136, 147.) Ms. Gershanow died while the Motions for Summary Judgment were pending. (Doc. 155.) Her mother, Marilyn

2014 WL 1099821, 49 NDLR P 66

Gershanow, was substituted as Plaintiff on February 21, 2014. (Doc. 167.)

## II. *Legal Standard*

**\*3** Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "[T]he dispute about a material fact is 'genuine' ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law .... Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* On a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. The movant bears the initial burden of demonstrating "the absence of a genuine issue of material fact," and, if satisfied, the burden then shifts to the non-movant to present "evidence sufficient to satisfy every element of the claim." *Holcomb v. Iona Coll.,* 521 F.3d 130, 137 (2d Ci r.2008) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24 (1986)). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson,* 477 U.S. at 252. Moreover, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986), and he "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.,* 247 F.3d 423, 428 (2d Cir.2001) (internal quotation marks omitted).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by ... citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials .... " Fed.R.Civ.P. 56(c)(1). Where an affidavit is used to support or oppose the motion, it "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant ... is competent to testify on the matters stated." Fed.R.Civ.P. 56(c)(4); *see Major League Baseball Props., Inc. v. Salvino, Inc.,* 542 F.3d 290, 310 (2d Cir.2008). In the event that "a party fails ... to properly address another party's assertion of fact as required by Rule 56(c), the court may," among other things, "consider the fact

undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed.R.Civ.P. 56(e)(2), (3).

## III. *Analysis*

### A. *ADA Claims*

Title II of the ADA mandates that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132 (2012). To state a claim for injunctive relief under Title II, a plaintiff must demonstrate that (1) she is a qualified individual with a disability; (2) the defendant is subject to the A DA; and (3) plaintiff was denied the opportunity to participate in or benefit from the defendant's services, programs, or activities, or was otherwise discriminated against by the defendant, by reason of her disabilities. *Noel v. N.Y.C. Taxi & Limousine Comm'n,* 687 F.3d 63, 68 (2d Ci r.2012). To establish the third element, a plaintiff must show that she was denied meaningful access to the defendant's services, programs or activities. *See Henrietta D. v. Bloomberg,* 331 F.3d 261, 275 (2d Ci r.2003).

**\*4** Plaintiff claims that all Defendants, other than Mr. St. Germain, violated the A DA by failing to make the curb ramps, sidewalks and bus stops on the northern and southern sides of East Eckerson Road accessible to individuals confined to wheelchairs. (*See* AC ¶¶ 37–51.)

### 1. *Plaintiff's claim for injunctive relief under the A DA*

Article III permits federal courts to "render opinions only with respect to live cases and controversies." *Independence Party of Richmond Cnty. v. Graham,* 413 F.3d 252, 255 (2d Ci r.2005) (internal quotation marks omitted); *see also* U.S. Const. art. III, § 2, cl. 1. "Federal courts have no constitutional power to consider a moot case, which does not present a live controversy." *Nat'l Org. for Marriage, Inc. v. Waslsh,* 714 F.3d 682, 692 (2d Cir.2013). The death of a party seeking injunctive relief will moot a case if that death "makes it impossible for the court to grant any effectual relief whatever to a prevailing party." *Independence Party,* 413 F.3d at 255 (internal quotation marks omitted); *see ABN Amro Verzekeringen BV v. Geologistics Ams., Inc.,* 485 F.3d 85, 94 (2d Ci r.2007) (stating a case might be moot "[i]f, for

example, the plaintiff dies ... before his request for prospective injunctive relief is resolved").

Given that Ms. Gershanow has died, she cannot benefit from A DA-compl i ant sidewalks, curb ramps and bus stops, and the claims for declaratory and injunctive relief are therefore moot, *see Tandy v. City of Wichita,* 380 F.3d 1277, 1290 (10th Ci r.2004); *Kahn v. NYU Med. Ctr.,* No. 06–CV–13455, 2007 WL 2000072, at *5 (S.D.N.Y. July 10, 2007), which Plaintiff has acknowledged, (*see* P's Jan. 31, 2014 Letter, at 3). [8] Plaintiff's claims for declaratory and injunctive relief under the A DA are therefore dismissed. [9]

[8] "P's Jan. 31, 2014 Letter" refers to Plaintiff's letter to the Court, dated January 31, 2014. (Doc. 168.)

[9] To the extent Plaintiff asserts a claim under Title III, *see* AC ¶ 11 (referencing Title III); *id.* ¶ 42 (asserting violation of 42 U.S.C. § 12182, *i.e.,* Title III), that claim is also dismissed as moot. *See Krist v. Kolombos Rest. Inc.,* 688 F .3d 89, 94 (2d Cir.2012) (Title III "authorizes private actions only for injunctive relief, not monetary damages"). Plaintiff disclaims, however, that she asserts a violation of Title III. (*See* Plaintiff's Memorandum of Law in Opposition to Summary Judgment ("P's Mem."), (Doc. 143), at 19; P's Aff. ¶ 57.)

2. *Plaintiff's purported claim for money damages under the ADA*

Contrary to the position taken by each Defendant, at least initially, (*see* Rockland's Reply ¶ 36; Ramapo's Mem. 7; Clarkstown's Mem. 2–3), [10] it is clearly established in the Second Circuit that a private plaintiff can sue for money damages under Title II of the ADA. [11] *See Garcia v. S.U.N. Y. Health Scis. Ctr. of Brooklyn,* 280 F.3d 98, 115 (2d Ci r.2001). Unlike a claim for injunctive relief, a viable claim for money damages under the ADA would survive a plaintiff's death. *See De la Cruz v. Guilliani,* No. 00–CV–7102, 2002 W L 32830453, at * 10 (S.D.N.Y. Aug. 26, 2002). To prevail on a claim for money damages under Title II, a plaintiff must prove a policymaker's "deliberate indifference to the rights secured the disabled by those statutes," in addition to the other elements of a Title II claim. *KM ex rel. D.G. v. Hyde Park Cent. Sch. Dist.,* 381 F.Supp.2d 343, 358 (S.D.N.Y.2005) (internal quotation marks omitted); *see Loeffler v. Staten Island Univ. Hosp.,* 582 F.3d 268, 275 (2d Ci r.2009) (deliberate indifference "to the strong

likelihood [of] a violation" is required for money damages under the Rehabilitation Act). Deliberate indifference does not require personal animosity or ill will. *Loeffler,* 582 F.3d at 275. Rather, a plaintiff demonstrates deliberate indifference in the Title II context where an "official with authority to address the alleged discrimination and to institute corrective measures on Plaintiff's behalf had actual knowledge of ongoing discrimination against Plaintiff but failed to respond adequately." *Stamm v. N.Y.C. Transit Auth.,* No. 04–CV– 2163, 2013 W L 244793, at * 4 (E.D.N.Y. Jan. 22, 2013).

[10] "Rockland's Reply" refers to Rockland Defendants' Affirmation in Reply to Plaintiff's Opposition to Defendants' Motion for Summary Judgment and in further Support of Motion. (Doc. 142.) "Ramapo's Mem." refers to Defendant Town of Ramapo's Memorandum of Law in Support of Motion for Summary Judgment Dismissing the Complaint. (Doc. 149.) "Clarkstown's Mem." refers to Clarkstown's Memorandum of Law. (Doc. 130.)

[11] The parties' briefs were deficient in legal analysis, legal research and legal reasoning. (*See, e.g.,* Rockland's Memorandum of Law in Support of Motion for Summary Judgment ("Rockland's Mem."), (Doc. 138), at 20–21 (citing *Weddle v. Marriott Corp.,* No. 99–CV–6482, 2004 WL 1925495 (W.D.N.Y.Aug.30, 2004), a case in which the plaintiff did not assert an A DA claim and the Court did not discuss requirements for such a claim, to support a confusing argument about causation requirements under the A DA).) It is a disservice to the clients and the Court when briefing is so difficult to follow.

**\*5** The Amended Complaint, however, does not allege deliberate indifference, advert to any official on notice failing to respond adequately, (*see* AC ¶¶ 20–51), or even hint that Plaintiff is seeking money damages for the alleged A DA violations, (*see id.* ¶ 51, pp. 23–24). *See Beckman v. U.S. Postal Serv.,* 79 F.Supp.2d 394, 407 (S.D.N.Y.2000) ("Although a complaint need not correctly plead every legal theory supporting the claim, at the very least, plaintiff must set forth facts that will allow each party to tailor its discovery to prepare an appropriate defense.") (citations omitted). The only fair reading of the Amended Complaint is that Plaintiff is alleging simply the failure to comply with the ADA and is seeking only declaratory and injunctive relief. The Amended Complaint does not allege any facts that could lead to a

reasonable inference that an official knew about the condition of the curb ramps, sidewalks and bus stops, much less that any such official could have rectified the problems but instead was deliberately indifferent to them. Plaintiff does not even recite the formulaic elements of a claim for money damages under Title I I. *Cf. Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) ("[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (alteration, citations, and internal quotation marks omitted). Moreover, Plaintiff's prayer for relief, which carefully spells out Plaintiff's demand for a declaratory judgment, injunctive relief and attorney's fees under the A DA, and money damages and attorney's fees for Plaintiff's state law negligence claims, makes no demand for money damages under the ADA.[12] (*See* AC 23–24.) Simply put, the Amended Complaint did not state, or put Defendants on notice, that Plaintiff was alleging deliberate indifference or asserting a claim for money damages under the ADA.

[12]    Given the absence of factual allegations that could conceivably suggest deliberate indifference and the specificity of the relief sought, the catchall —asking for "[s]uch other relief as the Court deems just and proper, and/or is allowable under the [ADA]," (AC 24)—is insufficient to alert the reader that deliberate indifference is alleged or money damages are sought.

Plaintiff cannot defeat Defendants' Summary Judgment Motions by raising a new claim for money damages in her submissions opposing summary judgment. *See Beckman,* 79 F.Supp.2d at 407 ("Because a failure to assert a claim until the last minute will inevitably prejudice the defendant, courts in this District have consistently ruled that it is inappropriate to raise new claims for the first time in submissions in opposition to summary judgment.") (internal quotation marks omitted); *see also DBT Gmbh v. J.L. Mining Co.,* 544 F.Supp.2d 364, 376 n. 2 (S.D.N.Y.2008) (plaintiff could not, in its brief opposing summary judgment, assert claim for a category of damages of which the Complaint did not provide notice).[13] I, therefore, will not consider Plaintiff's purported claim for money damages in deciding Defendants' Summary Judgment Moti ons.[14]  *See Beckman,* 79 F.Supp.2d at 408 (collecting cases).

13    It is hard to read Plaintiff's brief as even arguing that she is entitled to money damages. Plaintiff's brief simply states that money damages are available under the ADA if the plaintiff shows "intentional discrimination." (*See* P's Mem. 20.) Plaintiff's brief does not point to any evidence indicating such intentional discrimination, nor does it expand on what constitutes such discrimination in the Title II context.

14    Even if I were to reach the merits of Plaintiff's purported claim for money damages, I would grant summary judgment to Ramapo and Clarkstown. First, as to Ramapo, there is no evidence Plaintiff was ever denied meaningful access to the sidewalk or bus stop due to her inability to use the curb ramp on the southern (Ramapo) side of East Eckerson Road. *See Henrietta D.,* 331 F.3d at 275 (Title II requires providing disabled individuals "meaningful access" to services, programs and activities). Second, Plaintiff has not argued or, scouring the record and drawing all inferences in Plaintiff's favor, presented any evidence that any official from either town knew of the alleged ADA violations, (*see* Gershanow 6/28/2011 Dep. 27–28 (Ms. Gershanow would notify County officials); Mangam Aff. ¶¶ 7, 9 (handicapped individual informed Rockland County and/or Rockland Transit officials)), thereby rendering it impossible for either town to have been deliberately indifferent. *See Loeffler,* 582 F.3d at 276 (deliberate indifference requires "actual knowledge"). As for the Rockland Defendants, Plaintiff names individuals who purportedly knew of handicapped persons' inability to use the Clarkstown bus stop, but points to no evidence, such as their positions with Rockland County or Rockland Transit, that these officials had authority to institute corrective measures. *See Stamm,* 2013 WL 244793, at *4 (dispute of fact regarding deliberate indifference existed where "a jury could reasonably conclude that at least one ... official with authority to address the alleged discrimination and to institute corrective measures on Plaintiff's behalf had actual knowledge of ongoing discrimination against Plaintiff but failed to respond adequately"). I will not further comment on the subject given the murky nature of this standard in the Title II context, the

2014 WL 1099821, 49 NDLR P 66

insufficiently developed record and the lack of briefing on this issue.

*B. Supplemental Jurisdiction*

After disposing of the federal ADA claims, there are no federal causes of action left to try. [15] The "traditional 'values of judicial economy, convenience, fairness, and comity' " weigh in favor of declining to exercise supplemental jurisdiction where all federal-law claims are eliminated before trial. *Kolari v. N.Y.-Presbyterian Hosp.,* 455 F.3d 118, 122 (2d Cir.2006) (quoting *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350 (1988)); *see also* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim ... if the district court has dismissed all claims over which it has original jurisdiction."). I have considered the *Cohill* factors, and conclude that this is the "usual case" in which they "point towards declining to exercise jurisdiction over the remaining state-law claims." *Cohill,* 484 U.S. at 350 n. 7. Accordingly, I decline to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims. [16]

[15]  Assuming that the amount in controversy satisfies the threshold set in 28 U.S.C. § 1332(a) and Plaintiff is a Florida citizen, (*see* Doc. 162–3), this Court would not possess diversity jurisdiction over the negligence claims, because at least Rockland County, Clarkstown and Ramapo are New York citizens for the purposes of diversity jurisdiction, *see Moor v. Cnty. of Alameda,* 411 U.S. 693, 717–18 (1973), and Ms. Gershanow was also a New York citizen, (*see* Gershanow 6/28/2011 Dep. 6, 29). *See* 28 U.S.C. § 1332(c)(2) (2012) ("[T]he legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent ...."); *Adler v. Adler,* 862 F.Supp. 70, 72 (S.D.N.Y.1994) ( "[T]he citizenship of a decedent, not the executor, is the only citizenship pertinent for diversity purposes by virtue of ... § 1332(c)(2).").

[16]  While I decline to exercise jurisdiction over Plaintiff's negligence claims, I note that some of the Rockland Defendants' arguments seem meritless. The Rockland Defendants assert that white zebra stripes on a roadway constitute, as a matter of law, a safety zone at which a common carrier can allow passengers to exit. This quite clearly is not so. A common carrier "owes a duty to an alighting

passenger to stop at a place where the passenger may safely disembark and leave the area." *Miller v. Fernan,* 73 N.Y .2d 844, 846 (1988). Whether a location is safe and whether a passenger can safely leave depend on the circumstances, including the plaintiff's physical limitations that are or should be apparent. *See Kasper v. Metro. Transp. Auth. Long Island Bus,* 935 N.Y.S.2d 645, 647 (App.Div.2011). As Ms. Gershanow was confined to a wheelchair, it does not appear that Rockland Transit would have satisfied its duty by leaving her on the shoulder of East Eckerson Road, regardless of what was painted on the roadway, if she could not use the curb ramp to access the sidewalk or safely cross the street at that location. Moreover, the cases the Rockland Defendants cite for their "white stripes as per se safety zone" proposition are inapposite to the duty of care owed by a common carrier to an alighting passenger. *See Smalls v. AJI Indus., Inc.,* 10 N.Y.3d 733, 734 (2008) (negligence claim brought by owner of automobile against owner of dumpster for placement of dumpster in roadway); *Chunhye Kang–Kim v. City of N.Y.,* 810 N.Y.S.2d 147, 147 (App.Div.2006) (negligence claim against New York City by pedestrian based on negligent design of traffic barriers). Likewise, the Rockland Defendants' Reply Affirmation states, "Plaintiff's opposition is premised almost solely on diametrically opposed facts that the Plaintiff was let *off the bus* [on] the roadway (*just past* Fayva Court) while also complaining that she *was not* let off the bus *on* the roadway (*at* Fayva Court) as was her desire." (Rockland's Reply ¶ 3(b) (emphasis in original).) Rather than being "diametrically opposed," Plaintiff's assertions make sense to this Court. Ms. Gershanow did not want to be let off on the roadway at the Clarkstown bus stop or at any point on East Eckerson Road past Fayva Court, because she would not be able to use the curb ramp at the bus stop, which would force her to ride her wheelchair against oncoming traffic to reach the accessible curb ramp at Fayva Court or cross East Eckerson Road at an unsafe location.

## IV. *Conclusion*

**\*6** For the foregoing reasons, Defendants' Motions are GRANTED. The federal ADA claim is dismissed with prejudice and the remaining claims are dismissed without

prejudice. The Clerk of Court is respectfully directed to terminate the pending motions, (Docs.127, 136, 147), and close the case.

**SO ORDERED.**

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 1099821, 49 NDLR P 66

---

**End of Document**                    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

2022 WL 768681
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Brandon C. JONES, Plaintiff,

v.

VOLUNTEERS OF AMERICA GREATER
NEW YORK, et al., Defendants.

1:20-cv-5581 (MKV)
|
Signed 03/14/2022

**Attorneys and Law Firms**

Brandon C. Jones, Brooklyn, NY, Pro Se.

Kristine Denning, Harwood Lloyd, Hackensack, NJ, for Defendants Jsin H. Thomas, Volunteers of America (Swartz Shelter) Corporation, Mr. Jonathan Tavarez, Volunteers of America Greater New York.

**OPINION AND ORDER GRANTING
DEFENDANTS' MOTION TO DISMISS**

MARY KAY VYSKOCIL, United States District Judge:

 **\*1** *Pro se* Plaintiff Brandon Jones alleges that he was denied rights guaranteed to him under the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* (the "ADA"), the Rehabilitation Act, 29 U.S.C. §§ 701 *et seq.,* and the Fair Housing Act, 42 U.S.C. §§ 3601 *et seq.* (the "FHA"), while living at a homeless shelter run by Defendant Volunteers of America Greater New York (the "VOA"). Plaintiff alleges that Defendants Lijin Thomas, Jonathan Tavarez, and Deborah Johnson, all employees of the VOA (collectively, "Defendants") discriminated against him on the basis of his disability. [1] Pending before the Court is the Defendants' Motion to Dismiss Plaintiff's Third Amended Complaint. [ECF No. 29]. For the reasons stated herein, the motion is granted.

[1]    Plaintiff's Third Amended Complaint inconsistently, and improperly, names the Defendants in this action. The Third Amended Complaint lists "Deborah Johnson" as "Defendant 3." Third Am. Compl. at 4. The caption on Plaintiff's form complaint does not list Deborah

Johnson as a defendant. Third Am. Compl. at 1. Plaintiff's appended "Factual Statement of Record" also does not mention Deborah Johnson as a defendant. *See* Third Am. Compl. at 10, 17. For the avoidance of doubt, however, the Court construes the Defendants in this case as the VOA, Lijin Thomas, Jonathan Tavarez, and Deborah Johnson. Defendants write that Plaintiff misspells certain individuals' names (Tavarez as Tavarez, and Lijin Thomas as Jisin Thomas). [ECF No. 29]. The Court uses the provided proper spelling of the Defendants' names where applicable.

**BACKGROUND**

**I. FACTUAL BACKGROUND**

On this motion, the Court is constrained to "accept all factual allegations in the complaint as true and draw all reasonable inferences in" Plaintiff's favor. *Cargo Partner AG v. Albatrans, Inc.*, 352 F.3d 41, 44 (2d Cir. 2003) (internal quotation marks, citation, and alterations omitted). The following facts are adapted from Plaintiff's Third Amended Complaint. [2]

[2]    Plaintiff, *pro se*, has attached a "Factual Statement of Record" to his Third Amended Complaint. [ECF No. 25]. The Court construes the attachment as part of his Third Amended Complaint. Because the document does not have internal pagination or numbered paragraphs, the Court will cite to the allegations as they appear at the ECF pagination of the entire document.

From February through July 2020, Plaintiff lived at the "Swartz Building," located on Randall's Island in New York City, at a Volunteers of America Greater New York shelter (the "VOA Shelter"). Third Am. Compl. at 5, 10, 13. During his intake at the facility, Plaintiff "filled out numerous packets of paperwork" which "formally disclosed" his disabilities and his required medicine. Third Am. Compl. at 10. According to Plaintiff, he has suffered from third-degree burns on both of his legs and feet, lymphedema, and chronic pain "since December 9th, 1992," and Vons Willebrand disease "since birth." Third Am. Compl. at 10. The burns increase his risk of infection. Third Amended Compl. at 10.

 **\*2** The day following intake, Plaintiff "woke up to uncapped needles in [his] blankets and sheets" and found the showers to be "filled with hazardous trash." Third Am. Compl. at 10.

Plaintiff was told to see Defendant Lijin Thomas "regarding the shower situation" and for any requests for "medical equipment." Third Am. Compl. at 10. A few days later, Plaintiff met with Thomas who told him that "no medical equipment was permitted" inside the shelter, and that cleaning supplies, like bleach, were also prohibited for resident use because they "could be used as a weapon." Third Am. Compl. at 11. Plaintiff left Thomas' office and looked for another person to assist him in his request for "medical equipment and cleaning supplies." Third Am. Compl. at 11. After speaking with another individual, he was directed back to Thomas who told him "I don't have time to talk to you." Third Am. Compl. at 11.

A few weeks later, Plaintiff was treated for an infection in his left foot at a hospital in Manhattan. Third Am. Compl. at 11. Plaintiff was given antibiotics, pain medicine, and a note "to receive cleaning supplies" for the shower area. Third Am. Compl. at 11. When Plaintiff took the note to Thomas she "declined to even look at" it. Third Am. Compl. at 11. The next day, Plaintiff "filed a formal grievance into the matter of cleaning supplies" with an individual who worked at the front desk of the shelter. Third Am. Compl. at 11. That individual "took [the] grievance" and said that someone "will look into the issue." Third Am. Compl. at 11. Plaintiff then asked if he could store his medicine in the refrigerator but he was told that he "was not permitted to use the refrigerator." Third Am. Compl. at 11. Plaintiff returned to Thomas who said that he "could not refrigerate anything—including medication." Third Am. Compl. at 11.

Plaintiff next renewed his requests for cleaning supplies and medical equipment with Defendant Jonathan Tavarez. Third Am. Compl. at 11. Tavarez informed Plaintiff that "Ms. Thomas told him [he] was not permitted cleaning supplies or medical equipment." Third Am. Compl. at 11. Plaintiff then called his probation officer who said that he had "nothing to do with the [VOA Shelter] and [Plaintiff has] to work it out with them." Third Am. Compl. at 11. [3]

[3]     The record is devoid of any information about why Mr. Jones might have a probation officer; although elsewhere in his operative complaint Mr. Jones later references a "white collar case." Third Am. Compl. at 13.

A month later, near the end of March 2020, Plaintiff returned to the hospital to be treated for a skin infection and sore on his left foot. Third Am. Compl. at 11. He was provided "bed-rest

passes" and "other letters for cleaning supplies and medical equipment," which were passed on to Tavarez. Third Am. Compl. at 11. Plaintiff did not receive cleaning supplies and medical equipment and was "not permitted to stay [in] bed." Instead he was told by "employees of the [VOA Shelter]" that he had to "leave the dorm area and stay out in front" in the "TV area." Third Am. Compl. at 11-12. The doors returning to the dorms were "purposely locked" which prevented Plaintiff from accessing his antibiotic and pain medicine. Third Am. Compl. at 12.

In April 2020, Plaintiff was treated for an infection in both feet, and asked for an "updated medical note concerning 'medical solution – not bleach.' " Third Am. Compl. at 12. He provided the note to Thomas who "once again refused to accept the note." Third Am. Compl. at 12. At some point during this period, Plaintiff was "referred to a lymphedema doctor" who "ordered a specialized pump to remove built up fluid from [Plaintiff's] disabled legs and feet." Third Am. Compl. at 12. The pump was sent to the VOA Shelter via Federal Express, but the shipment was rejected because shelter personnel told the driver they did not know who the recipient was. Third Am. Compl. at 12. Plaintiff attributes this rejection to the VOA Shelter's "two official representatives," Thomas and Tavarez. Third Am. Compl. at 12. Following the rejection, Plaintiff called the CEO of Volunteers of America, located in Virginia, after which he received a call from the "out-going President" of the New York office. Third Am. Compl. at 12. Plaintiff was told that the out-going president would "do [her] best to assist [him]" but that she was retiring and he could be assisted by her replacement. Third Am. Compl. at 12.

**\*3** In May 2020, Plaintiff returned to the hospital for infections, and received a note for cleaning supplies that stated: "Patient shall be provided with bleach solution to clean showers before and after every use – due to burns and frequent cellulitis & [MRSA] infections." Third Am. Compl. at 12. That note, and Plaintiff's request for medical equipment, was again rejected, apparently by Thomas and Tavarez. Third Am. Compl. at 12. Plaintiff then decided to contact "DHS, NYS Agencies and 311" and received a complaint number. Third Am. Compl. at 12. Plaintiff's situation did not change, but he states he "started having more issues with the Directors" of the VOA Shelter. Third Am. Compl. at 12. A month later, Plaintiff received a phone call and text from Deborah Johnson who said she would let the out-going president know about Plaintiff's requests. Third Am. Compl. at 12.

On July 9th, 2020, Plaintiff "filed a formal complaint with the New York State Division of Human Rights – Housing Complaint Unit," which he provided to a shelter employee who passed it along to Thomas and Tavarez. Third Am. Compl. at 13. That same day, Plaintiff was given an "infraction" by Tavarez "for having electronics, [including his] Bi-Pap Machine." Third Am. Compl. at 13. After receiving the infraction, Plaintiff received a call from his probation officer, who told him to report to the probation office the following day. Third Am. Compl. at 13. Plaintiff alleges that Thomas and Tavarez had contacted his probation officer, who, as a result of the infraction, threatened to take Plaintiff "before the judge in [his] white collar case for [a] probation violation." Third Am. Compl. at 13.

On July 17th, 2020, Plaintiff "decided enough was enough" and initiated this action by filing his *pro se* Complaint [ECF No. 2]. Third Am. Compl. at 13. A little over a week later, Plaintiff received a letter that within 48 hours he was being administratively transferred to a shelter in Brooklyn, New York. Third Am. Compl. at 13. Plaintiff has access to "cleaning supplies and specialized medical equipment," provided by the "nursing staff" at his new facility. Third Am. Compl. at 13.

## II. PROCEDURAL HISTORY

Plaintiff amended his complaint for the first time on July 30, 2020. [ECF No. 6]. On August 27, 2020, Judge Stein, then presiding over this case, ordered Plaintiff to further amend his complaint, identifying various pleading deficiencies that Plaintiff would have to remedy if he intended to pursue this action. [ECF No. 9] (the "August 27 Opinion"). Plaintiff then filed a second amended complaint on October 21, 2020 [ECF No. 11], and the Court thereafter ordered the United States Marshal Service to effect service on the Defendants. [ECF No. 13]. Defendants then timely moved to dismiss Plaintiff's second amended complaint. [ECF No. 21]. Pursuant to the Individual Practices of Judge Nathan (the second judge to preside over this case), Plaintiff had the opportunity to amend his complaint a third time. [ECF No. 22].

Plaintiff elected to amend his complaint, filing the operative Third Amended Complaint on February 19, 2021. [ECF No. 25]. Defendants thereafter renewed their motion to dismiss [ECF No. 29] ("Mem").[4] After a delay, Plaintiff filed a "Severe Objection of the Defense Counsel Motion for Dismissal," [ECF No. 46], which the Court construes as Plaintiff's opposition. ("Opp."). Defendants responded with

a reply letter in support of their motion. [ECF No. 29] ("Reply"). While the motion was pending, this case was reassigned to me.

[4]   Defendants' Motion to Dismiss attaches all related documents in a single PDF, including affidavits, exhibits, and a memorandum of law in support of dismissal. Because Defendants' Memorandum of Law includes internal pagination, the Court refers to it at the pagination provided rather than the ECF pagination. On this motion, the Court disregards any extraneous material submitted, and relies on the information provided in Plaintiff's pleadings, and items that the Court may take judicial notice of. *See Can v. Goodrich Pump & Engine Control Sys., Inc.*, 711 F. Supp. 2d 241, 246 (D. Conn. 2010) ("On a motion to dismiss under Rule 12(b) (6), judicial notice may be taken of other judicial documents that might provide the basis for issue preclusion.").

**\*4** Plaintiff's Third Amended Complaint seeks $800,000 for "pain & injuries & emotional stress and suffering," the termination of Thomas and Tavarez, a "certified letter of apology for defendants failure to comply w/ rule of law," and a "complete 'overhaul' of" the VOA Shelter's management and leadership. Third. Am. Compl. at 6.

## LEGAL STANDARD

Defendants move this Court pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff's Third Amended Complaint for failure to state a claim upon which relief can be granted. To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955). While a sufficiently pleaded complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, 127

S.Ct. 1955 (internal quotation marks, alterations, and citations omitted); *see also Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (noting that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" (citing *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955)). In determining whether a complaint states a plausible claim for relief, a district court must consider the context and "draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 662, 129 S.Ct. 1937.

Plaintiff represents himself in this action *pro se*. "It is well established that a court is ordinarily obligated to afford a special solicitude to *pro se* litigants." *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010). The Court therefore liberally construes Plaintiff's pleadings and motion papers to raise the strongest arguments they suggest. *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015). "At the same time, a *pro se* complaint must allege 'enough facts to state a claim to relief that is plausible on its face.' " *Id.* (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955).

### DISCUSSION

Defendants argue that Plaintiff's claims are barred under the doctrine of *res judicata*, are moot, and otherwise should be dismissed for failure to state a claim. *See generally* Mem. at 5. The Court addresses each argument in turn.

### I. PLAINTIFF'S ACTION IS NOT BARRED UNDER THE DOCTRINE OF RES JUDICATA

Plaintiff commenced a seemingly parallel action in New York Supreme Court on July 21, 2020, almost simultaneously with this federal action. *See* Compl., Index No. 100551/2020, *Brandon Jones v. Jisin Thomas, Jonathan Tavarez, and Volunteers of America Corp.* That case was ultimately dismissed. Defendants argue that Plaintiff's action is therefore barred under the doctrine of *res judicata*. Mem. at 13-17.

A court may grant dismissal under Federal Rule of Civil 12(b)(6) when a defendant raises claim preclusion as an affirmative defense and it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law. *Conopco, Inc. v. Roll Intern.*, 231 F.3d 82, 86 (2d Cir. 2000). "It is well-settled that, in considering a motion to dismiss, the Court is entitled to take judicial notice of documents integral to or referred to in the complaint, as well as documents filed

in other courts and other public records." *Reyes v. Fairfield Props.*, 661 F. Supp. 2d 249, 255 n.1 (E.D.N.Y. 2009) (citing *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006)). As such, the Court takes notice of the action docketed at Index Number 100551/2020 in the Supreme Court of the State of New York, New York County, and in particular the Decision and Order filed on January 21, 2021, dismissing that case in its entirety (the "NY Op.").

### A. Plaintiff's action is not barred by the doctrine of claim preclusion

**\*5** Under the doctrine of res judicata, or claim preclusion, a " 'final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.' " *St. Pierre v. Dyer*, 208 F.3d 394, 399 (2d Cir. 2000) (quoting *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981)).[5] Thus, the claim preclusion doctrine bars "later litigation if [an] earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action." *In re Teltronics Servs., Inc.*, 762 F.2d 185, 190 (2d Cir. 1985). Res judicata, and claim preclusion, "is a rule of fundamental repose important for both the litigants and for society." *In re Teltronics Servs.*, 762 F.2d at 190. These doctrines serve the goals of avoiding costs and vexation of duplicative litigation, conserving judicial resources, and preventing inconsistent decisions. *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980).

---

[5]     The Court notes that *res judicata* refers to both claim and issue preclusion, but that the Second Circuit has acknowledged they are "significantly different doctrines." *Marcel Fashions Group, Inc. v. Lucky Brand Dungarees, Inc.*, 779 F.3d 102, 107 (2d Cir. 2015).

To determine whether the doctrine of claim preclusion applies to a New York state court judgment, this Court must apply New York *res judicata* law. *See New York v. Mountain Tobacco Co.*, 942 F.3d 536, 543 (2d Cir. 2019) ("A federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered.") (internal quotation marks omitted). New York law bars "a later claim arising out of the same factual grouping as an earlier litigated claim even if the later claim is based on different legal theories or seeks dissimilar or additional relief." *Mountain Tobacco*

*Co.*, 942 F.3d at 543 (internal quotation marks omitted); *see also Washington v. Blackmore*, 468 F. App'x 86, 87 (2d Cir. 2012) ("[A] claim is barred by res judicata so long as it could have been litigated in a prior action."); *Giannone v. York Tape & Label, Inc.*, 548 F.3d 191, 193 (2d Cir. 2008).

The court dismissed Plaintiff's New York state complaint "in its entirety" and directed the clerk "to enter judgment accordingly." NY Op. at 4. [6] That dismissal, however, was "pursuant to CPLR 3211(a)(7)." NY Op. at 1. "Under New York law, a dismissal pursuant to N.Y. C.P.L.R. 3211(a)(7), for failure to state a cause of action, is presumptively not on a case's merits and lacks *res judicata* effect; indeed a Rule 3211(a)(7) dismissal is only on the case's merits if the rendering court explicitly says so." *DDR Constr. Servs. v. Siemens Indus.*, 770 F. Supp. 2d 627, 647 (S.D.N.Y. 2011) (collecting cases); *Pereira v St. Joseph's Cemetery*, 78 A.D.3d 1141, 1142, 912 N.Y.S.2d 121 (2010) ("As a general rule, a dismissal for failure to state a cause of action is not on the merits and, thus, will not be given res judicata effect."). Justice Jaffe did not indicate in her decision that the dismissal of "the entire complaint" was on the merits, and therefore this Court cannot agree with Defendants that the dismissal was merits-based. As a result, Plaintiff's claims are not barred by the doctrine of claim preclusion.

[6]      The Court notes that Defendants provided only a copy of the New York opinion, but not the judgment entered by the Clerk of the Court dismissing the case.

### B. Plaintiff's claims are not barred by the doctrine of issue preclusion

Defendants argue, in the alternative, that Plaintiff's claims under the ADA and the Rehabilitation Act are barred by the doctrine of issue preclusion. The doctrine of issue preclusion "is a narrower species of res judicata, [which] precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party or those in privity, whether or not the tribunals or causes of action are the same." *Tsirelman v. Daines*, 19 F. Supp. 3d 438, 449 (E.D.N.Y. 2014) (quoting *Ryan v. N.Y. Tel. Co.*, 62 N.Y.2d 494, 500, 467 N.E.2d 487, 478 N.Y.S.2d 823 (1984)). For issue preclusion to apply, the following four requirements must be met: "(1) the identical issue was actually raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the part[ies] had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was

necessary to support a valid and final judgment on the merits." *Wyly v. Weiss*, 697 F.3d 131, 141 (2d Cir. 2012) (alteration in original). The party seeking to apply issue preclusion bears the burden of showing that the issues are identical and were necessarily decided in the prior action, and the party opposing its application bears the burden of showing that the prior action did not afford a full and fair opportunity to litigate the issues. *Id.*

**\*6** The Court concludes that issue preclusion does not bar Plaintiff's ADA or Rehabilitation Act claim here for substantively the same reasons that this action is not barred by claim preclusion. Where "the prior claims were dismissed for pleading deficiencies and were not litigated on the merits, neither ... collateral estoppel, nor the doctrine of issue preclusion are applicable." *Capellan v. Jackson Ave. Realty, LLC*, 2011 N.Y. Misc. LEXIS 6929, at \*5 (N.Y. Sup. Ct. Sept. 26, 2011). A motion to dismiss pursuant to CPLR 3211(a)(7) accepts the facts alleged in the complaint as true, draws all inferences in the plaintiff's favor, and determines whether the facts alleged comport with a cognizable legal theory. *See Mendelovitz v Cohen*, 37 A.D.3d 670, 671, 830 N.Y.S.2d 577 (2007). But it does not resolve the issues on the merits.

\* \* \*

Because Plaintiff's action is not barred under a theory of *res judicata*, the Court will review the sufficiency of Plaintiff's Third Amended Complaint. The Court agrees with its sister court, the Supreme Court of the State of New York, that Plaintiff fails to state a claim upon which relief may be granted.

## II. PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

The Court construes Plaintiff's Third Amended Complaint as asserting causes of action pursuant to the ADA, the Rehabilitation Act, and the FHA. [7] The Court addresses the ADA and Rehabilitation Act claims together, and the FHA claim separately.

[7]      To the extent the Plaintiff's Third Amended Complaint could raise a claim under Section 1983, *see* Defs. Mem. at 11-12, any such claim necessarily fails because the Defendants are private parties. Private parties are not generally liable for constitutional violations under Section 1983. *See Sykes v. Bank of America*, 723 F.3d 399, 406 (2d

Cir. 2013). This Court has previously ruled that Plaintiff's then-operative complaint failed to plead that the Defendants were "state actors," or acting under color of law, for purposes of Section 1983 liability, [ECF No. 9 at 4-5], and Plaintiff has not cured that deficiency.

### A. Plaintiff's ADA and Rehabilitation Act claims fail as a matter of law

Title III of the ADA forbids discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation." 42 U.S.C. § 12182(a). The Court construes Plaintiff's Third Amended Complaint as alleging that the VOA Shelter is a place of public accommodation under the ADA, and that he was denied the enjoyment or accommodation of that space on the basis of his disability. In order to state a claim under Title III of the ADA, a plaintiff must allege: (1) that he is disabled under the meaning of the ADA; (2) that defendant(s) own, lease or operate a place of public accommodation; and (3) that defendant(s) discriminated against him by denying them a full and equal opportunity to enjoy the services defendants provide because of that known disability. *Krist v. Kolombos Rest Inc.*, 688 F.3d 89, 94-95 (2d Cir. 2012); *Camarillo v. Carrols Corp.*, 518 F.3d 153, 156 (2d Cir. 2008). Rehabilitation Act claims are "treated identically" to ADA claims. *See Getso v. City University*, 2009 WL 4042848, at *4 (S.D.N.Y. Nov. 18, 2009); *Rodriguez v. City of New York*, 197 F.3d 611, 618 (2d Cir. 1998) (Rehabilitation Act and the ADA "impose identical requirements").

### 1. A claim for money damages does not lie under the ADA or Rehabilitation Act here

Assuming *arguendo* that Plaintiff makes out the required elements for a claim under Title III of the ADA or the Rehabilitation Act, Plaintiff is nonetheless not entitled to the relief he seeks. It is well established that a private plaintiff suing under the ADA "may only obtain injunctive relief for violations of a right granted under Title III; he cannot recover damages." *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 86 (2d Cir. 2004); *see also Brief v. Albert Einstein Coll. of Med.*, 423 F. App'x. 88, 90 (2d Cir. 2011) (Title III of the ADA "allows only for injunctive relief"). Similarly, a private individual may only obtain injunctive relief for violations of the Rehabilitation Act. *Forzian v. Indep. Group Home Living Program*, 613 F. App'x 15, 18-19 (2d Cir. 2015); *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 275 (2d Cir. 2009);

*Castro v. City of New York*, 24 F. Supp. 3d 250, 259 (E.D.N.Y. 2014) (dismissing ADA and Rehabilitation Act claims against individual defendants because neither statute provides for individual liability for claims for monetary damages); *Cohn v. KeySpan Corp.*, 713 F. Supp. 2d 143, 154-55 (E.D.N.Y. 2010). Plaintiff here seeks $800,000 for "pain and injuries and emotional stress and suffering." Third Am. Compl. at 6. Plaintiff's request for monetary relief is not cognizable under the ADA or the Rehabilitation Act. *See* 42 U.S.C. § 12188(b)(1)(B) (money damages for civil suit plaintiffs under Title III of the ADA is appropriate "when requested by the Attorney General."); *Forziano*, 613 F. App'x at 18-19. [8]

[8]  To the extent that Plaintiff seeks to bring an ADA retaliation claim against any Defendant pursuant to 42 U.S.C. § 12203(a), it appears that Plaintiff's claim would fail because that section also does not provide for punitive or compensatory damages under the ADA in this case. *Spiegel v. Schulmann*, 604 F.3d 72, 79 (2d Cir. 2010); *Shipman v. New York State Office of Persons with Developmental Disabilities*, 2012 WL 897790, at *9 (S.D.N.Y. Mar. 12, 2012) (even in the retaliation context, "individuals cannot be held liable for money damages under the ADA in either their personal or official capacities."), *report and recommendation adopted* 2012 WL 3704837, at *3 (S.D.N.Y. Mar. 26, 2012) (money damages unavailable under the ADA); *Kramer v. Banc of America Securities, LLC*, 355 F.3d 961 (7th Cir. 2004), *cert. denied*, 542 U.S. 932, 124 S. Ct. 2876, 159 L. Ed. 2d 798 (2004) (holding that a plaintiff can only recover equitable relief for a retaliation claim under the ADA);. *Alvarado v. Cajun Operating Co.*, 588 F.3d 1261, 1269-70 (9th Cir. 2009) (holding "punitive and compensatory damages are not available for ADA retaliation claims.").

### 2. Plaintiff lacks standing to seek injunctive relief

**\*7** Construing Plaintiff's Third Amended Complaint as seeking declaratory or injunctive relief does not save Plaintiff's ADA and Rehabilitation Act claims. Plaintiff asks for the "termination" of Defendants Thomas and Tavarez, a "Certified Letter of Apology For Defendants Failure to Comply w/ Rule of Law," and a "Complete 'Overhaul' of VOA" management and leadership. Third Am. Compl. at 6. Plaintiff acknowledges that he no longer resides at the VOA, and is instead living at a facility which he finds much

2022 WL 768681

more amenable to his requests. *See* Third Am. Compl. at 13. Plaintiff's non-monetary claims for relief are therefore moot.

"[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969). A case may be considered mooted when it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *See also Adarand Constructors, Inc. v. Slater*, 528 U.S. 216, 221-22, 120 S.Ct. 722, 145 L.Ed.2d 650 (2000) (citation and italics omitted). Plaintiff can suffer no ongoing harm at the hands of the Defendants because he no longer lives at the facility at-issue in this cause of action. *See Am. Freedom Def. Initiative v. Metro. Transp. Auth.*, 815 F.3d 105, 110 (2d Cir. 2015) (case moot where ongoing harm not present and where challenged conduct has been completely eliminated); *Wiltz v. New York Univ.*, 2019 WL 8437456, at *19, 2019 U.S. Dist. LEXIS 220563, at *46-47 (S.D.N.Y. Dec. 23, 2019) (no standing under FHA, ADA, or Rehabilitation Act where plaintiff no longer resided with defendants, so no showing of "a real or immediate threat that he will be wronged again.") *report and recommendation adopted* 2020 U.S. Dist. LEXIS 22866 (S.D.N.Y. Feb 10, 2020) *appeal dismissed* 2020 U.S. App. LEXIS 41705 (2d Cir. Sept. 23, 2020).

Here, even if this Court could order the termination of employees, or the reorganization of a private, non-profit organization (a specious proposition), doing so would not give Plaintiff any relief because he no longer interacts with those employees or resides at the VOA Shelter, thereby mooting Plaintiff's non-monetary requests for relief. *See Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307, 132 S.Ct. 2277, 183 L.Ed.2d 281 (2012) ("A case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party.") (internal quotation marks omitted).

The Court therefore grants Defendants' Motion to Dismiss Plaintiff's Third Amended Complaint with respect to the asserted ADA and Rehabilitation Act claims.

### B. Plaintiff's FHA claims fails to state a claim upon which relief can be granted

The FHA "broadly prohibits discrimination in housing." *Mitchell v. City of New York*, 2019 WL 2725615, at *3 (S.D.N.Y. July 1, 2019). The FHA, as applicable here, makes it unlawful "[t]o ... make unavailable or deny, a dwelling to any buyer or renter" or "[t]o discriminate against any person

in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith," on the basis of, *inter alia*, disability. 42 U.S.C. §§ 3604 (a), (b), (f)(1)-(2). For purposes of the FHA, discrimination includes a refusal to make "reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). The FHA also makes it "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of ... any right granted or protected by" Section 3604. 42 U.S.C. § 3617. The Court liberally construes *pro se* Plaintiff's Third Amended Complaint as alleging a disparate treatment or impact claim, a denial of reasonable accommodations claim, and a retaliation claim under the FHA. To the extent Plaintiff asserts such claims, the FHA claims fail as a matter of law and must be dismissed.

### 1. Plaintiff is not within the category of persons protected by the FHA and does not have standing to assert a claim under the FHA

**\*8** As stated, the Fair Housing Act makes it illegal to "to discriminate in the sale or rental, or otherwise make unavailable or deny, a dwelling to any buyer or renter because of a" disability. 42 U.S.C. § 3604(f). Based on the plain language of the FHA, a plaintiff must—at minimum—allege that he was discriminated against 1) in the sale or rental, or otherwise was made unavailable or denied, 2) a dwelling, 3) as a buyer or renter, 4) because of a disability. *See also Jenkins v. NY City Dep't of Homeless Servs.*, 643 F. Supp. 2d 507, 516-20 (S.D.N.Y. 2009) *aff'd* 391 F. App'x 81 (2d Cir. 2010); *Ricks v. Beta Development Co.*, 92 F.3d 1193, 1996 U.S. Dist. LEXIS 19743, 1996 WL 436548, at *1 (9th Cir. Jul. 10, 1996). (upholding dismissal of a Section 3604(f) claim and holding that the FHA "employs the terms 'renter or buyer', suggesting that, at the very least, [the plaintiff] must allege that he is a prospective buyer to achieve standing."). As a fundamental matter, Plaintiff must be a "buyer or renter" to maintain an FHA claim. [9]

[9]
    The Court assumes without agreeing that the VOA Shelter constitutes a "dwelling" for purposes of the FHA. *See Madison v. Graham*, 2021 WL 2784763, at *5, 2021 U.S. Dist. LEXIS 124437, at *12 (S.D.N.Y. July 1, 2021) ("District courts in the Second Circuit have held that the FHA does not apply to certain shelters" and the question remains open).

The FHA defines "to rent" as "to lease, to sublease, to let and otherwise to grant *for a consideration* the right to occupy premises not owned by the occupant. 42 U.S.C. § 3602(e) (emphasis added). Plaintiff does not allege that he paid anything to live at the VOA Shelter. Indeed, the most generous read of Plaintiff's Third Amended Complaint indicates that he was *directed* to live there from February 2020 to July 2020. *See* Third Am. Compl. at 10, 13 (Plaintiff was "transferred" to the VOA Shelter from another in Manhattan, and later "transferred" to his current facility in Brooklyn). On these facts, no inference arises that Plaintiff was a "buyer or renter" under the FHA. *Jenkins*, 643 F. Supp. 2d at 519-20. Plaintiff's FHA claims are not cognizable for the simple fact that the plain language of the statute does not apply to Plaintiff as a non-renter. [10]

[10]    The FHA's prohibition on "otherwise mak[ing] unavailable or deny[ing]" a dwelling on the basis of disability is of no help to Plaintiff because he is not a buyer or renter for purposes of the statute. *Jenkins*, 643 F. Supp. 2d at 519-20 (the " 'otherwise make unavailable' clause may expand the prohibited activities under § 3604(f) beyond simply renting and selling but it does not expand the class of individuals who are protected from discrimination on the basis of handicap beyond renters or buyers."); *Ricks*, 1996 WL 436548, at *1, 92 F.3d 1193 (no standing if not renting or buying).

Even if this Court were to assume that Plaintiff was a renter or buyer at the VOA Shelter, Plaintiff's claims under the FHA would still fail to state a claim upon which relief may be granted.

### 2. Plaintiff's FHA reasonable accommodation claim fails to state a claim

The only provision of the FHA that Plaintiff explicitly invokes is 42 U.S.C. § 3604(f)(3)(B). Third Am. Compl. at 2. A plaintiff may make out an FHA violation under Section 3604(f)(3) by claiming a failure to make a reasonable accommodation. *Regional Economic Community Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 48 (2d Cir. 2002). To bring a reasonable accommodation claim, a complaint must make out that: (1) the plaintiff suffers from a handicap as defined by the FHA; (2) the defendant knew or reasonably should have known of plaintiff's handicap; (3) accommodation of the handicap may be necessary to afford plaintiff an equal opportunity to use and enjoy the dwelling; (4) the requested accommodation was reasonable; and (5) the

defendant refused to make such accommodation. *See Olsen v. Stark Homes, Inc.*, 759 F.3d 140, 156 (2d Cir. 2014).

**\*9** The Second Circuit appears to differentiate between "intentional" and "non-intentional" discrimination claims under the FHA, treating a reasonable accommodation as "non-intentional." *See Forziano*, 613 F. App'x at 18-19 (Section 3604(f)(3) is a "non-intentional discrimination claim" under the FHA). Non-intentional discrimination claims provide only for "injunctive relief," not money damages. *See id.* ("Plaintiffs' reasonable accommodation damages claims must be dismissed because it is well-settled that injunctive relief is the only relief available for non-intentional violations of the [FHA, ADA, and the Rehabilitation Act]."). As discussed above in the context of Plaintiff's ADA and Rehabilitation Act claims, Plaintiff's request for injunctive relief is moot. The Court therefore is constrained to dismiss Plaintiff's reasonable accommodations claim under the FHA. *Id.*; *Wiltz*, 2019 WL 8437456, at *16, 2019 U.S. Dist. LEXIS 220563, at *46-47 (no standing under FHA, ADA, or Rehabilitation Act where plaintiff no longer resided with defendants).

### 3. Plaintiff's FHA disparate treatment or impact claim fails to state a claim

A plaintiff alleging violations of Section 3604(f)(1) or (f)(2) of the FHA may proceed under two theories: disparate treatment or disparate impact. *See LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412, 425 (2d Cir. 1995).

**Disparate treatment.** To state a claim under either Section 3604(f)(1) or (f)(2) on the basis of disparate treatment at the motion to dismiss stage, a "plaintiff must allege enough facts to state a plausible claim that animus against the protected group was a significant factor in the position taken by the [ ] decision-makers." *Perricone-Bernovich v. Tohill*, 843 F. App'x 419, 421 (2d Cir. 2021) (internal quotation marks omitted); *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 73 (2d Cir. 2021) (FHA discrimination claim must "plausibly allege ... at least minimal support for the proposition that the [defendant] was motivated by discriminatory intent."); *see also Palmer v. Fannie Mae*, 755 F. App'x. 43, 45 (2d Cir. 2018) (disparate treatment plaintiff must state he was a "member of a protected class," suffered relevant "adverse" treatment, and plead facts that suggest "an inference of discriminatory motivation."). The Second Circuit has instructed that an "inference of discrimination can be shown through circumstances demonstrating that a person or group is treated differently from others who are 'similarly

situated.' " *Littlejohn v. City of N.Y.*, 795 F.3d 297, 312 (2d Cir. 2015). [11]

[11]  *Littlejohn*, and its progeny, concerned employment discrimination claims. The Second Circuit, and courts within it, have applied its teachings to the framework of FHA claims. *See Palmer*, 755 F. App'x at 45 n.1.

Plaintiff fails to provide facts that could plausibly support even a minimal inference of discriminatory motivation. Nowhere in Plaintiff's Third Amended Complaint does he allege, conclusory or otherwise, that an action taken by any Defendant was because of his disability. Nor does Plaintiff identify other individuals, disabled or not, at the shelter who were treated differently than he was. Nothing suggests, for example, a non-disabled resident was allowed to keep his medication in the refrigerator while others—including Plaintiff—were not. *See Perricone-Bernovich*, 843 F. App'x at 421 (FHA disparate treatment claim properly dismissed where "nothing in the complaint" suggested that Plaintiff's treatment was "different from those faced by similarly-situated [people] without disabilities."). To the extent that *no one* was allowed cleaning supplies or medical equipment, the only inference is that *all* residents were treated equally (*i.e.* there was no disparate treatment), and in all events it would be difficult to impute a discriminatory motive to any Defendant. Plaintiff therefore cannot succeed on a disparate treatment theory.

**Disparate impact.** Plaintiff also fails to state a claim on a disparate impact theory. A "*prima facie* case under a disparate impact theory requires a showing of 'a significantly adverse or disproportionate impact on persons of a particular type' produced by a facially neutral practice." *Perricone-Bernovich*, 843 F. App'x at 421 (quoting *Tsombanidis v. W. Haven Fire Dep't*, 352 F.3d 565, 574-75 (2d Cir. 2003)). Plaintiff's Third Amended Complaint relays grievances with the way he was treated by the Defendants, not how the practices of the Defendants had a disproportionate impact on people with disabilities generally. Because the gravamen of Plaintiff's Third Amended Complaint relates to his individual experiences with the Defendants—and does not plead *any* facts about how his treatment was indicative of systemic adverse impact on those with disabilities generally—Plaintiff cannot succeed on a disparate impact theory of FHA liability.

### 4. Plaintiff's FHA retaliation claim fails to state a claim

**\*10**  A *prima facie* retaliation claim under the FHA Section 3617 must allege "(1) the plaintiff engaged in [a] protected activity, (2) the defendant was aware of this activity, (3) the defendant took adverse action against the plaintiff, and (4) a causal connection exists between the protected activity and the adverse action." *Wilson v. Wilder Balter Partners, Inc.*, 2015 WL 685194, at *8 (S.D.N.Y. Feb. 17, 2015). Section 3617 requires "a showing of a particular state of mind, *i.e.*, a retaliatory motive." *Austin v. Town of Farmington*, 826 F.3d 622, 630 (2d Cir. 2016). "[R]egardless of how the prima facie standard is articulated, the plaintiff is required to show that defendant's action against him arose from a discriminatory motive." *Haber v. ASN 50th St. LLC*, 847 F. Supp. 2d 578, 586 (S.D.N.Y. 2012).

The Court notes that Defendants oppose Plaintiff's FHA reasonable accommodation claim because he "does not allege that he exercised his rights under the FHA and [that] Defendants coerced, intimidated, or threatened him, or interfered with his exercise of those rights." Mem. at 10. That statement, and the pithy argument that follows, is cookie cutter, almost word-for-word lifted from the Court's August 27 Opinion ordering Plaintiff to amend his complaint. *Compare* Mem. at 10 *with* August 27 Opinion at 7. Defendants' stolen argument that the "only specific fact that Plaintiff alleges" relates to an interaction with his probation officer is nonsensical where Plaintiff has amended his complaint *two times* since the Court's August 27 Opinion, and now includes an additional "factual statement of record" in his Third Amended Complaint that includes information beyond that originally pled.

However, Plaintiff fails to plead any *new* factual allegations that draw a causal connection between a protected activity and an adverse action. Plaintiff characterizes certain of his complaints throughout his tenure at the VOA shelter as "formal grievances." Third Am. Compl. at 15. Without more, the Court cannot understand if these were protected activities that allow the Court to draw a nexus between them and any adverse action. Plaintiff does state that he contacted "DHS, NYS Agencies and 311" and received a complaint number in early-late July 2020. Third Am. Compl. at 12. Following that, Plaintiff pleads he "started having more issues with the Directors" of the VOA Shelter. Third Am. Compl. at 12. But the Court cannot credit the vague and conclusory allegation that a complaint was met with "more issues" for purposes of this motion. *See Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not

suffice."); *cf. Kastrati v. Progress of Peoples Mgmt. Corp.,* 2020 U.S. Dist. LEXIS 221464, 2020 WL 6940991, at *5 (E.D.N.Y. Nov. 24, 2020) ("Plaintiff's allegations purportedly supporting an inference of retaliatory intent rest exclusively on timing. However, Plaintiff was subject to gradual adverse actions well before" the allegedly protected activity took place).

In any event, as the Court discussed with respect to Plaintiff's disparate treatment and impact theories above, the Third Amended Complaint is devoid of any reference to a desire to discriminate against Plaintiff because of his disability or because of an alleged protected activity with respect to that disability. *Cf. Francis,* 992 F.3d at 73 (FHA claim must "plausibly allege ... at least minimal support for the proposition that the [defendant] was motivated by discriminatory intent"); *Austin,* 826 F.3d 622 (an FHA retaliation claim "require[s] a showing of a particular state of mind, *i.e.,* a retaliatory motive."). Accordingly, Plaintiff's FHA retaliation claim must therefore be dismissed.

### III. LEAVE TO FURTHER AMEND THE COMPLAINT FOR A FOURTH TIME IS NOT WARRANTED

**\*11** Leave to amend a complaint should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). While Plaintiff does not ask for leave to amend, the Court nonetheless has considered whether, as a *pro se* litigant, Plaintiff again should be given leave to amend his deficient complaint. *See Gomez v. USAA Fed. Sav. Bank,* 171 F.3d 794, 795-96 (2d Cir. 1999) (per curiam) (*pro se* plaintiffs should generally be given leave to amend). A district court may deny leave to amend when amendment would be futile because the problem with the claim "is substantive [and] better pleading will not cure it." *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir. 2000).

"[E]ven the special solicitude afforded to *pro se* litigants does not entitle Plaintiff to file an infinite number of amended pleadings." *Boykin v. Moreno,* 2020 WL 882195, at *8 (S.D.N.Y. Feb. 24, 2020). This is especially true where "Plaintiff has fixed virtually none of the deficiencies highlighted by the Court in its" prior opinions and orders. *Id.* Under such circumstances, Courts in this district routinely dismiss a Plaintiff's amended pleadings with prejudice. *See Al-Qadaffi v. Servs. for the Underserved (SUS),* 2015 WL 585801, at *8 (S.D.N.Y. Jan. 30, 2015), *aff'd* 632 F. App'x 31 (2d Cir. 2016) (dismissing a pro se plaintiff's claim with prejudice where he "already had one chance to amend his Complaint, and there is still no indication that a valid claim might be stated if given a second chance"); *Boykin,* 2020 WL 882195, at *8 (dismissing a plaintiff's fourth amended pleadings).

Plaintiff has been given—in federal court—four chances to state a legally cognizable claim. [ECF Nos. 2, 6, 11, 25]. The substantive issues in Plaintiff's Third Amended Complaint —also identified in the Court's prior August 27 Opinion [ECF No. 9]—cannot be cured through further amendment. Amendment would therefore be futile, and Plaintiff is not granted leave to further amend his complaint. *See Cuoco,* 222 F.3d at 112 ("[A] futile request to replead should be denied.").

\* \* \*

The Court has carefully reviewed Plaintiff's Third Amended Complaint and the Parties' briefs. Any remaining allegations not specifically discussed in this opinion are without merit and fail to state a claim upon which relief can be granted. To the extent that Plaintiff's Third Amended Complaint raises questions of state law, the Court declines to exercise supplemental jurisdiction over them. Third Am. Compl. at 2 (denoting basis for jurisdiction is federal question jurisdiction); Third Am. Compl. at 3 (plaintiff, and at least one defendant, is a New York citizen); *see United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) (a district court should decline supplemental jurisdiction if, as here, all federal claims have been dismissed at the pleading stage).

### CONCLUSION

For the reasons stated herein, Defendants' Motion to Dismiss is GRANTED with prejudice. The Clerk of the Court respectfully is requested to close this case.

**SO ORDERED.**

**All Citations**

Slip Copy, 2022 WL 768681

---

WESTLAW   © 2022 Thomson Reuters. No claim to original U.S. Government Works.      10

2012 WL 897790
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Dennis SHIPMAN, Plaintiff,
v.
NEW YORK STATE OFFICE OF PERSONS
WITH DEVELOPMENTAL DISABILITIES,
Metro Developmental Disabilities Services
Office, Max E. Chmura, Jill Gentile, Delores
Lark, and Patricia Schuckle, Individually and
in Their Official Capacities, and Professional
Employees Federation, AFL/CIO, Defendants.

No. 11 Civ. 2780(GBD)(FM).
|
March 13, 2012.

***REPORT AND RECOMMENDATION TO
THE HONORABLE GEORGE B. DANIELS***

FRANK MAAS, United States Magistrate Judge.

I. *Introduction*

**\*1** In this employment discrimination case, *pro se* plaintiff
Dennis Shipman ("Shipman"), proceeding *in forma pauperis,*
seeks monetary and injunctive relief from the New York
State Office of Persons With Developmental Disabilities
("OPWDD"), the Metro Developmental Disabilities Services
Office ("DDSO" and, together with OPWDD, the "Agency"),
and four current or former Agency officials: former Acting
Commissioner Max E. Chmura ("Chmura"); Associate
Commissioner Jill Gentile ("Gentile"); Director of the Office
of Affirmative Action, Delores Lark ("Lark"); and former
Acting Director of the DDSO, Particia Schuckle ("Schuckle")
("Individual Defendants" and, together with the Agency,
the "State Defendants"). Shipman also has sued his union,
the New York State Public Employees Federation, AFL–
CIO ("PEF"), mistakenly identified in his pleadings as the
Professional Employees Federation, for failing to provide him
with legal representation.

Shipman, who allegedly suffers from Post–Traumatic Stress
Disorder ("PTSD") as a result of his service as a volunteer
emergency medical technician at Ground Zero on September
11, 2001, contends that the State Defendants failed to provide

him with a reasonable accommodation for his disability, in
violation of the Americans with Disabilities Act ("ADA"), 42
U.S.C. § 12181, *et seq.,* and that this failure ultimately caused
him to quit his job.

The State Defendants and PEF each have moved to dismiss
Shipman's claims pursuant to Rules 12(b)(1) and 12(b)(6) of
the Federal Rules of Civil Procedure. For the reasons set forth
below, their motions should be granted.

II. *Background*

A. *Facts*
The following facts are either undisputed or set forth in the
light most favorable to Shipman for purposes of this motion:

In September 2002, Shipman began working at the DDSO
(an OPWDD facility) as a "social worker assistant." (ECF
No. 72 ("Pl.'s Opp'n") at 1). [1] In July 2005, Shipman's PTSD
caused him to take an unpaid leave of absence pursuant to
New York Civil Service Law Section 73. (*Id.*). Although the
unpaid leave lasted much longer than one year, the Agency
"grudgingly reinstated" Shipman in August 2009. [2] (*Id.*).

[1]  Shipman's opposition papers consist of three
documents, each captioned "Opposition to Motion
To Dismiss" and independently numbered.
Although much of the text of each document
is identical, there are non-duplicative portions.
Accordingly, I will refer to the first document as
"Pl.'s Opp'n," the second as "Pl.'s Opp'n Ex. A,"
and the third as "Pl.'s Opp'n Ex. B."

[2]  Section 73 of the Civil Service Law provides in
relevant part:
When an employee has been continuously absent
from and unable to perform the duties of
his position for one year or more by reason
of a disability ... his employment status may
be terminated and his position may be filled
by a permanent appointment. Such employee
may, within one year after the termination
of such disability, make application ... for a
medical examination to be conducted .... If, upon
such medical examination, such medical officer
shall certify that such person is physically and
mentally fit to perform the duties of his former
position, he shall be reinstated to his former

Shipman v. New York State Office of Persons with..., Not Reported in...

Case 5:22-cv-00811-LEK-TWD    Document 3    Filed 10/17/22    Page 80 of 102

2012 WL 897790

position, if vacant, or to a vacancy in a similar position ... in his former department or agency.

N.Y. Civ. Serv. Law § 73.

After his reinstatement, Shipman was subjected to "life threatening stress levels" caused by "vindictive managers" who "harass[ed] him daily." (*Id.* at 2). In particular, former DDSO Treatment Team Leader Paul Blackwell ("Blackwell"), with the "tacit consent" of Program Specialist Josie Astacio–Cancel ("Astacio–Cancel"), "badgered" Shipman about his weekly work schedule. (ECF No. 24 ("Amended Complaint" or "Am. Compl.") ¶ 6(3)). Although other Agency employees were afforded wide latitude in selecting their schedules as long as they worked eight and one-half hours per day, Blackwell told Shipman that he could not begin work before 8:30 a.m. (*Id.*). Blackwell and Astacio–Cancel also directed Shipman to perform tasks that were redundant or unnecessary, which necessitated his taking a sick day as "a coping mechanism." (*Id.* ¶ 6(5)). Blackman subsequently caused an unwarranted "counseling memo" to be placed in Shipman's file. (*Id.*).

**\*2** In either March or May 2010, Shipman reported his disability to Donald Odom ("Odom"), a DDSO Affirmative Action Counselor. Shipman requested that he be reassigned to a less stressful position within the Agency or another state agency, noting that his PTSD caused "an inability to effectively cope with stress or stressful situations." (*Id.* at ¶ 6(7); Pl.'s Opp'n at 3). [3] His request for an accommodation was denied, however, "because his medical records were not updated and, more importantly, he was stable." (Am.Compl.¶ 6(7)). Shipman concedes that he did not comply with the Agency's request for medical records, but contends that any such submissions would have been unnecessarily duplicative because "[Agency] Personnel had already been provided with an application for accommodation despite their protestations to the contrary, which are frankly untrue." (Pl.'s Opp'n at 3).

[3]    In his Amended Complaint, Shipman contends that he asked Odom for the accommodation in "March"—presumably March 2010. (*See* Am. Compl. ¶ 6(7)). In his opposition papers, however, Shipman states that he requested the accommodation on May 24, 2010. (Pl.'s Opp'n at 3).

Shipman "immediately reported this exchange" to Lark, the DDSO Director of Affirmative Action, who failed to respond. (Am.Compl.¶ 6(8)). Shipman also wrote to Schuckle, who

was serving as DDSO's Acting Director. Schuckle also did not respond. (*Id.* ¶ 6(9)).

On May 25, 2010, Shipman suffered what he describes as "a nervous breakdown" triggered by the "discriminatory conduct" of Blackwell and Astacio–Cancel. (*Id.* ¶¶ 6(1), 6(3)). Around that time, Shipman informed Astacio–Cancel and other Agency personnel that he was unable to perform his job and, therefore, "was taking a leave of absence because he could no longer tolerate the stress [,] and was experiencing strong or violent anger while having flashbacks to a prior traumatic event[.]" (*Id.* ¶ 6(9)).

Shipman wrote to Schuckle again on June 1, 2010, "asking to not be removed from the payroll or to be accommodated." (*Id.* ¶ 6(10)). Schuckle failed to respond, and Shipman was removed from the state payroll on June 3, 2010. (*Id.* ¶¶ 6(10–11)).

On July 17, 2010, Shipman sent a letter to Schuckle's supervisor, Associate Commissioner Gentile, who responded on July 27, 2010, and apologized for her delayed response. Gentile promised to contact Shipman "once [she] ha[d] information for [him]." (*Id.* ¶ 6(14)). On July 27, Shipman also wrote a letter to then-Acting Commissioner Chmura. Chmura did not respond to that letter or a letter that Shipman sent to him on August 1. (*Id.*).

Shipman promptly communicated the foregoing facts to his union, PEF. (*Id.* ¶ 6(19)). Shipman's numerous attempts to discuss his situation with PEF personnel proved unsuccessful, however, until Field Representative Barry Markman ("Markman") "responded after an urgent call was placed to him on September 16, 2010, when [Shipman] was directed to leave the premises of ... DDSO with no written notice as to why he was ordered to vacate the premises." (*Id.*). According to Shipman, "PEF has done little or nothing ... to redress what is a blatant violation of th[e] collective bargaining agreement, New York State Civil Service [Law, and New York] Worker Compensation Law." (*Id.*). Shipman further surmises that, by failing to advocate on his behalf, PEF is "acting in concert with ... DDSO in furtherance of an illegal scheme to deny [Shipman] reasonable accommodation ... [and] employment, and aggravate the hardship with which he has been confronted since being removed from the state payroll." (*Id.*).

**\*3** On January 31, 2011, Shipman was "compelled to resign." (Pl.'s Opp'n at 4). As a result of being removed

Shipman v. New York State Office of Persons with..., Not Reported in...
Case 5:22-cv-00811-LEK-TWD   Document 3   Filed 10/17/22   Page 81 of 102
2012 WL 897790

from the DDSO payroll, Shipman has suffered serious financial difficulties and emotional distress, and subsequently has been forced to file for bankruptcy in the District of Delaware, where he now lives. (*See* Am. Compl. ¶¶ 6(17–18); Pl.'s Opp'n at 5). Shipman therefore seeks relief in the form of "reinstatement of pay with lost time; reasonable accommodation; re-assignment, and, an inter-agency transfer." (Am.Compl.¶ 7). Shipman also renews a prior request for a temporary restraining order or preliminary injunction requiring the State Defendants to reinstate him pending the final resolution of this case. (Pl.'s Opp'n at 1).[4] Shipman further seeks relief from PEF in the form of legal representation and sanctions. (*Id.* at 2).

[4]   Consistent with Section 73 of the New York Civil Service Law, Shipman contends that he only had until January 31, 2012, (one year after the date he resigned) to request reinstatement to his former position. (Pl.'s Opp'n at 1, 5).

B. *Procedural History*

Shipman commenced this action on July 30, 2010, by filing a complaint in the Northern District of New York. (*See* ECF No. 1 ("Original Complaint")). Shipman subsequently filed his Amended Complaint on October 20, 2010. (Am. Compl. at 1). On April 19, 2011, the parties stipulated to a transfer of venue to this District pursuant to 28 U.S.C. 1404(a). (ECF No. 52). Thereafter, on April 29, 2011, Your Honor referred this case to me for a Report and Recommendation with respect to any dispositive motions. (ECF No. 57). The State Defendants and PEF then filed their motions to dismiss on July 17, 2011. (ECF Nos. 65, 67). Those motions are fully submitted. (*See* ECF Nos. 65–76).

C. *In Forma Pauperis Application*

When he filed the Original Complaint, Shipman also filed a motion for leave to proceed *in forma pauperis* ("IFP"). (ECF No. 3). Magistrate Judge Randolph F. Treece of the Northern District of New York granted that motion on August 30, 2010. (ECF No. 9). In his affidavit in support of the IFP motion, Shipman stated under oath that he earned no income from any "[b]usiness, profession or form of self-employment" in the twelve months preceding the filing of this lawsuit. (ECF No. 3). That statement is contradicted, however, by Shipman's admission that the Agency paid him through June 2010, one month before he filed his Original Complaint. (Pl.'s Opp'n at 4 ("The last check plaintiff had received from defendants is dated June 2010."); *see also* ECF No. 68 (Aff. of

Herminia Torres, sworn to on July 12, 2011 ("Torres Aff.")), ¶ 3 ("[Shipman] was paid the sum of $41,323.80 ... within the twelve months preceding the date of his affidavit)).

Shipman contends that "[a]ny error made on [the] affidavit relative to his income for the 12 months preceding his emergency *ex parte* application is a red herring; strictly innocuous and, by extension, unintentional." (Pl.'s Opp'n Ex. A at 16). In response to that assertion, the State Defendants have submitted evidence that Shipman also provided false information in his IFP applications in other cases. For example, in *Shipman v. Verizon Communications Corp.,* 10 Civ. 271 (D.Del.), Shipman's IFP affidavit, sworn to on March 30, 2010, stated that he was unemployed and had earned no income in the previous twelve months. If his allegations in this case are true, however, Shipman was employed by the Agency from August 2009 through March 2010. (*See* ECF No. 6 (Aff. of Barbara K. Hathaway, Esq., Ass't Att'y Gen., sworn to on July 15, 2011 ("Hathaway Aff."), Ex. B)). Similarly, in *Shipman, a/k/a Shipman Holdings LLC v. Sprint Nextel Corp.,* 10 Civ. 130 (D.Del.), Shipman stated under penalties of perjury in his IFP application that he was unemployed and had earned no income in the twelve months prior to February 5, 2010. (*See* Hathaway Aff. Ex. C).

**\*4** In yet another *pro se* case, *Shipman v. TD Bank,* 10 Civ. 2217 (D.N.J.), the district judge dismissed Shipman's complaint due to: (1) "significant inconsistencies between [Shipman's IFP] application and his civil suit," which alleged that Shipman had suffered substantial losses to his business, and (2) Shipman's failure to submit a timely response to the court's request that he amend his IFP application to clarify his financial situation. (*See* Hathaway Aff. Ex. D).

III. *Discussion*

A. *Standard of Review*

1. *Rule 12(b)(6)*

A Rule 12(b)(6) motion to dismiss for failure to state a claim tests the legal sufficiency of a plaintiff's claims for relief. *Krasner v. HSH Nordbank AG,* 680 F.Supp.2d 502, 511 (S.D.N.Y.2010) (Lynch, D.J.). In deciding the motion, the Court must accept as true all factual allegations made in the complaint and draw all reasonable inferences in favor of the plaintiff. *Allaire Corp. v. Okumus,* 433 F.3d 248, 249–50 (2d Cir.2006). The complaint need not contain "detailed factual allegations." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citing *Bell Atl. Corp. v.*

Shipman v. New York State Office of Persons with..., Not Reported in...

Case 5:22-cv-00811-LEK-TWD   Document 3   Filed 10/17/22   Page 82 of 102

2012 WL 897790

*Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Nonetheless, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly,* 550 U.S. at 555).

To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Id.* (quoting *Twombly,* 550 U.S. at 570).[5] Determining whether the allegations of a complaint nudge a plaintiff's claims across the line from merely "conceivable to plausible" requires the Court to "draw on its judicial experience and common sense." *Id.* at 1950–51.

[5]  Citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), Shipman contends that his claim cannot be dismissed "unless it appears beyond a doubt that [he] can prove no set of facts ... which would entitle him to relief." (Pl.'s Opp'n at 14). In *Twombly,* however, the Supreme Court cautioned that the "no set of facts" formulation is "best forgotten as an incomplete, negative gloss on an accepted pleading standard." 550 U.S. at 563.

In making its assessment, the Court may consider, in addition to the plaintiff's factual averments, any written instrument upon which the plaintiff necessarily relies, regardless of whether it is attached to the complaint or incorporated therein by reference. *See Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152–53 (2d Cir.2002). When a plaintiff is proceeding pro se, the Court also may rely on any opposition papers in assessing the legal sufficiency of the plaintiff's claims. *See Crum v. Dodrill,* 562 F.Supp.2d 366, 373 n. 13 (N.D.N.Y.2008) (citing *Gadson v. Goord,* No. 96 Civ. 7544(SS), 1997 WL 714878, at *1 n. 2 (S.D.N.Y. Nov.17, 1997)). Furthermore, the Court may take judicial notice of indisputable facts. *See* Fed.R.Evid. 201. Legal conclusions masquerading as factual averments, however, may not be taken into account. *Smith v. Local 819 I.B.T. Pension Plan,* 291 F.3d 236, 240 (2d Cir.2002) (citing *Gebhardt v. Allspect, Inc.,* 96 F.Supp.2d 331, 333 (S.D.N.Y.2000)).

Because Shipman is proceeding *pro se,* the Court must read his pleadings "liberally" and interpret them "to raise the strongest arguments" that they may suggest. *Chavis v. Chappius,* 618 F.3d 162, 170 (2d Cir.2010) (citing *Harris v. City of N.Y.,* 607 F.3d 18, 24 (2d Cir.2010)). "Dismissal of a pro se complaint is nevertheless appropriate where a plaintiff

has clearly failed to meet minimum pleading requirements." *Carvel v. Ross,* No. 09 Civ. 722(LAK)(JCF), 2011 WL 856283, at *8 (S.D.N.Y. Feb. 16, 2011).

### 2. *Rule 12(b)(1)*

**\*5**  Under Rule 12(b)(1), a complaint must be dismissed if a court lacks subject matter jurisdiction over the action. In deciding a Rule 12(b)(1) motion, a court is not limited to the face of the complaint and may consider evidence outside the pleadings to resolve disputed factual issues. *State Emp. Bargaining Agent Coal. v. Rowland,* 494 F.3d 71, 77 n. 4 (2d Cir.2007); *Phifer v. City of N .Y.,* 289 F.3d 49, 55 (2d Cir.2002). The plaintiff has the burden of proving by a preponderance of the evidence that subject matter jurisdiction exists. *Phifer,* 289 F.3d at 55 (citing *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir.2000)).

When a court is faced with a motion to dismiss pursuant to both Rules 12(b)(1) and 12(b)(6), it should "decide the 'jurisdictional question [under Rule 12(b)(1) ] first because a disposition of a Rule 12(b)(6) motion is a decision on the merits, and therefore, an exercise of jurisdiction.' " *Tirone v. N.Y. Stock Exch., Inc.,* No. 05 Civ. 8703(WHP), 2007 WL 2164064, at *3 (S.D.N.Y. July 27, 2007) (quoting *Magee v. Nassau Cnty. Med. Ctr.,* 27 F.Supp.2d 154, 158 (E.D.N.Y.1998)). Accordingly, I will turn first to the State Defendants' Rule 12(b)(1) motion seeking dismissal of Shipman's ADA claim on jurisdictional grounds.

### B. *ADA Claim Against the State Defendants*

#### 1. *Eleventh Amendment*

Under the Eleventh Amendment to the United States Constitution, a State and its agencies generally are immune from suit in federal court. *See Seminole Tribe of Fla. v. Florida,* 517 U.S. 44, 54–56, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). "For Eleventh Amendment purposes, [OPWDD] is to be considered an arm of New York State." *Komlosi v. N.Y. Office of Mental Retardation & Developmental Disabilities,* 64 F.3d 810, 815 (2d Cir.1995); *see Komlosi v. Fudenberg,* No. 88 Civ. 1792(HBP), 2009 WL 4722758, at *3 (S.D.N.Y. Dec.9, 2009).

There are only two exceptions to Eleventh Amendment sovereign immunity. These exceptions apply when there has been an explicit and unequivocal waiver of immunity by a State or a similarly clear abrogation of the immunity by Congress. *See Pennhurst State Sch. & Hosp. v. Halderman,*

Shipman v. New York State Office of Persons with..., Not Reported in...

Case 5:22-cv-00811-LEK-TWD   Document 3   Filed 10/17/22   Page 83 of 102

2012 WL 897790

465 U.S. 89, 99, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). "A claim that is barred by a state's sovereign immunity must be dismissed pursuant to the Eleventh Amendment for lack of subject matter jurisdiction." *Henry v. New York,* No. 08 Civ. 10981(KMK), 2012 WL 335732, at \*10 (S.D.N.Y. Jan.30, 2012) (citing *Va. Office for Prot. & Advocacy v. Stewart,* ––– U.S. ––––, ––––, 131 S.Ct. 1632, 1637, 179 L.Ed.2d 675 (2011); *Seminole Tribe,* 517 U.S. at 54).

Here, there is no suggestion that the State Defendants have waived their sovereign immunity. *See Perciballi v. New York,* No. 09 Civ. 6933(WHP), 2010 WL 3958731, at \*3 (S.D.N.Y. Sept.28, 2010). The Court must, however, consider several separate provisions of the ADA to determine whether Congress has abrogated the State Agency's sovereign immunity.

### 2. *ADA Claim Against the Agency*

#### a. *Title I*

**\*6** Title I of the ADA provides that, "no covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a) ("Title I").

In *Board of Trustees of the University of Alabama v. Garrett,* 531 U.S. 356, 121 S.Ct. 955, 148 L.Ed.2d 866 (2011), the Supreme Court held that Title I did not validly abrogate state Eleventh Amendment immunity, despite the fact that Congress "unequivocally intend[ed] to do so." *Id.* at 363–64, 368–74 (citing 42 U.S.C. § 12202 ("A State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in [a] Federal or State court of competent jurisdiction for a violation of [the ADA].")). The Court explained that "Congress may not ... base its abrogation of the States' Eleventh Amendment immunity upon the powers enumerated in Article I" of the Constitution. *Id.* at 364. Instead, "Congress may subject nonconsenting States to suit in federal court" only pursuant to a valid exercise of Section 5 of the Fourteenth Amendment. *Id.* Because Section 5 of the Fourteenth Amendment only permits Congress to enact legislation enforcing the substantive guarantees contained in Section 1 of that amendment, Congress may not abrogate state Eleventh Amendment immunity "unless Congress' actions were congruent and proportional in enforcing the constitutional guarantees set forth in Section 1 [.]" [6] *Castells v. Fisher,* No. 05 CV

4866(SJ), 2007 WL 1100850, at \*3 (E.D.N.Y. Mar.24, 2007) (citing *Garrett,* 531 U.S. at 368; *City of Boerne v. Flores,* 521 U.S. 507, 512, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997)).

6          Section 1 of the Fourteenth Amendment provides, in relevant part:

> "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

In *Garrett,* the Court found that "States are not required by the Fourteenth Amendment to make special accommodations for the disabled, so long as their actions toward such individuals are rational." *Garrett,* 531 U.S. at 367. In doing so, the Court recognized that States "could quite hardheadedly—and perhaps hardheartedly—hold to job-qualification requirements which do not make allowance for the disabled" without violating the Equal Protection Clause of the Fourteenth Amendment. *Id.* at 367–68. The Court further found that the legislative record of the ADA failed to demonstrate "a pattern of unconstitutional discrimination on which [Section] 5 legislation must be based," *id.* at 370, and that "the accommodation duty" created by Title I "far exceeds what is constitutionally required." *Id.* at 372. The Court therefore held that Title I did not validly abrogate the States' Eleventh Amendment immunity. *Id.* at 374.

Applying *Garrett* here, Shipman's ADA claim must be dismissed to the extent that he seeks money damages or injunctive relief from the Agency under Title I. *See also Fed. Mar. Comm'n v. S.C. State Ports Auth.,* 535 U.S. 743, 765, 122 S.Ct. 1864, 152 L.Ed.2d 962 (2002) ("[S]overeign immunity applies regardless of whether a private plaintiff's suit is for monetary damages or some other type of relief."); *Seminole Tribe,* 517 U.S. at 58 (The Supreme Court has "often made it clear that the relief sought by a plaintiff suing a State is irrelevant to the question whether the suit is barred by the Eleventh Amendment.").

Shipman v. New York State Office of Persons with..., Not Reported in...
Case 5:22-cv-00811-LEK-TWD Document 3 Filed 10/17/22 Page 84 of 102
2012 WL 897790

b. *Title II*

**\*7** Apparently cognizant of his inability to bring a successful Title I claim against the Agency, Shipman seeks to characterize his claim as having been brought pursuant to Title II of the ADA. *See* 42 U.S.C. § 12132 ("Title II"). Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from the participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Id.*

Neither the Supreme Court nor the Second Circuit has decided whether employment discrimination claims against public employers can be brought under Title II. *See Garrett,* 531 U.S. at 360 n. 1 (declining to decide "whether Title II of the ADA ... is available for claims of employment discrimination when Title I of the ADA expressly deals with that subject"); *Brown v. Connecticut,* 08–CV–1478, 2010 WL 2220580, at \*18 (D.Conn. May 27, 2010) ("[T]he Second Circuit has not yet decided whether claims of discrimination in employment are cognizable under Title II of the ADA."). The circuit courts that have addressed the issue are split, as are district courts in this District. *Compare Zimmerman v. Or. Dep't of Justice,* 170 F.3d 1169, 1173 (9th Cir.1999) (Title II not applicable to discrimination claims), and *Henny,* 2012 WL 335732, at \*14 (same), *with Bledsoe v. Palm Beach Cnty. Soil & Water Conservation Dist.,* 133 F.3d 816, 820 (11th Cir.1998) (employment discrimination claims may be brought pursuant to Title II), and *Transp. Workers Union of Am., Local 100 v. N.Y.C. Transit Auth.,* 342 F.Supp.2d 160, 175 (S.D.N.Y.2004) (same).

The Court need not resolve whether the availability of Title I precludes an employment discrimination claim under Title II because, even if it does not, the same Eleventh Amendment bar that precludes Shipman's Title I claim also precludes any employment discrimination claim that might be brought under Title II.

In *Garrett,* the Supreme Court chose not to "decide the constitutional issue whether Title II, which has somewhat different remedial provisions from Title I, is appropriate legislation under [Section] 5 of the Fourteenth Amendment." 531 U.S. at 360 n. 1. Nevertheless, five years later, in *United States v. Georgia,* 546 U.S. 151, 126 S.Ct. 877, 163 L.Ed.2d 650 (2006), the Court held that Title II *is* a valid abrogation of the States' Eleventh Amendment immunity, "insofar as Title II creates a private cause of action for damages against

the States for conduct that *actually* violates the Fourteenth Amendment." *Id.* at 159 (emphasis in original). The Court declined to decide whether a State is immune to Title II claims "premised on conduct that does not independently violate the Fourteenth Amendment," because

> lower courts will be best situated to determine in the first instance, on a claim-by-claim basis, (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.

**\*8** *Id.*

Applying those factors here, Shipman's Title II claim is clearly barred by the Eleventh Amendment. At the outset, the State conduct that allegedly violated Title II in this case is the Agency's failure to make a reasonable accommodation for an employee's disability. As the Court made clear in *Garrett,* such conduct does not violate the Fourteenth Amendment, as long as the State acts rationally. 531 U.S. at 367 ("States are not required by the Fourteenth Amendment to make special accommodations for the disabled, so long as their actions toward such individuals are rational."). Shipman contends that the reason the Agency did not grant him an accommodation was "because his medical records were not updated and, more importantly, he was stable." (Am.Compl.¶ 6(7)). Assuming that is true, the Agency, at a minimum, acted rationally by requiring Shipman to prove that he was disabled before it granted him an accommodation. The Agency therefore did not violate the Fourteenth Amendment, even if its conduct amounts to a violation of Title II. *See Castells,* 2007 WL 1100850, at \*5 (finding no Fourteenth Amendment violation on similar facts, and noting that "the ADA's legislative record fails to show that Congress identified a history and pattern of irrational employment discrimination by the States against the disabled").

Shipman v. New York State Office of Persons with..., Not Reported in...

2012 WL 897790

Turning to the third *Georgia* factor, even if Congress validly abrogated the States' immunity with respect to certain Title II claims "premised on conduct that does not independently violate the Fourteenth Amendment," any such abrogation is clearly inapplicable to employment discrimination claims. *See Garrett,* 531 U.S. at 374; *see also Castells,* 2007 WL 1100850, at \*5 ("it is well-settled that government employment is not a fundamental right") (citing *United Bldg. & Const. Trades Council v. Camden,* 465 U.S. 208, 219, 104 S.Ct. 1020, 79 L.Ed.2d 249 (1984); *Mass. Bd. of Retir. v. Margia,* 427 U.S. 307, 313, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1967)).

In sum, the alleged Agency conduct in this case did not violate the Fourteenth Amendment, and Congress did not validly abrogate the States' Eleventh Amendment immunity with respect to such conduct. Shipman's Title II claim against the Agency therefore must be denied. *See Castells,* 2007 WL 1100850, at \*5 ("Accordingly, specifically where there is no fundamental right at issue, Title II of the ADA does not abrogate the States' Eleventh Amendment immunity .").

### c. *Title V*

Construed liberally, the Amended Complain also alleges that Blackman and Astacio–Cancel assigned Shipman unnecessary and redundant work and improperly disciplined him in retaliation for complaining about discrimination. (*See* Am. Compl. ¶¶ 6(3–5); *see also* Pl.'s Opp'n at 2 (the Agency "*never, ever* reprimanded, counseled, or disciplined [Shipman] for his conduct, work performance, or any other alleged abuse ... until *after* he filed a formal ADA disability discrimination complaint with the United States Equal Opportunity Commission") (emphasis in original)).

\*9 Title V of the ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U .S.C. § 12203 ("Title V"). Although the Supreme Court and Second Circuit have not explicitly held that the Eleventh Amendment bars Title V claims against state agencies, "every district court in this Circuit to consider the issue has concluded that sovereign immunity bars Title V claims." *Padilla v. N.Y.S. Dep't of Labor,* No. 09 Civ. 5291(CM)(RLE), 2010 WL 3835182, at \*4 (S.D.N.Y. Sept. 13, 2010) (collecting cases); *see also Chiesa v. N.Y.S. Dep't of Labor,* 638 F.Supp.2d 316, 323 (N.D.N.Y.2009) ("If a state is immune from

underlying discrimination, then it follows that the state must be immune from claims alleging retaliation for protesting against discrimination."); *Demshki v. Monteith,* 255 F.3d 986, 988–89 (9th Cir.2001) ("nothing in the ADA's legislative findings demonstrate [es] a pattern of discrimination by states against employees who oppose unlawful employment discrimination against the disabled," and "[a]bsent a history of such evil by the states, Congress may not abrogate the states' Eleventh Amendment immunity from Title V claims").

Consequently, to the extent Shipman alleges that the Agency retaliated against him in violation of Title V, his claim must be dismissed.

### 2. *ADA Claims Against the Individual Defendants*

To the extent Shipman seeks to sue any of the Individual Defendants for money damages under the ADA, his claims are barred because individuals cannot be held liable for money damages under the ADA in either their personal or official capacities. *See Perciballi,* 2010 WL 3958731, at \*4; *Candelaria v. Cunningham,* No. 98 Civ. 6273(LAP), 2000 WL 798636, at \*2 (S.D.N.Y. June 20, 2000). This includes retaliation claims brought under Title V. *See Spiegel v. Schulmann,* 604 F.3d 72, 79–80 (2d Cir.2010). Shipman's claims against the Individual Defendants for money damages therefore must be dismissed.

Certain individual defendants, however, may be held liable in their official capacity pursuant to *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). Under the *Ex parte Young* exception, the Eleventh Amendment does not bar "suit against a state official when that suit seeks ... prospective injunctive relief." *Seminole Tribe,* 517 U.S. 44 at 73, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996); *see also In re Dairy Mart Convenience Stores, Inc.,* 411 F.3d 367, 372 (2d Cir.2005) ("Whether a litigant's claim falls under the *Ex parte Young* exception to the Eleventh Amendment's bar against suing a state is a 'straightforward inquiry' that asks 'whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.' ") (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.,* 535 U.S. 635, 645, 122 S.Ct. 1753, 152 L.Ed.2d 871 (2002)).

\*10 In the employment context, "claims for reinstatement to previous employment satisfy the *Ex parte Young* exception to the Eleventh Amendment's sovereign immunity bar." *State Emps. Bargaining Agent,* 494 F.3d at 96. Shipman, however, has failed to allege that either Chmura, Gentile, Lark, or Schuckle has the authority to reinstate him. Indeed, Shipman

Shipman v. New York State Office of Persons with..., Not Reported in...

2012 WL 897790

has indicated that he became *ineligible* for reinstatement on January 31, 2012. (*See* Pl.'s Opp'n at 1, 5). When a plaintiff "fails to allege that any [i]ndividual [d]efendant has the authority to reinstate him," his "claim for injunctive relief against the [i]ndividual [d]efendants cannot proceed." *Percibali,* 2010 WL 3958731, at *4. Accordingly, Shipman's claim for injunctive relief against the Individual Defendants must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim. Shipman, however, should be permitted to replead if he complies with Section III.D, *infra.*

### C. *Breach of the Duty of Fair Representation*

Construing the Amended Complaint liberally, Shipman appears to allege that PEF breached its duty of fair representation. (*See* Am. Compl. ¶ 6(19)). This claim also must be dismissed on jurisdictional grounds.

"It is well settled that [federal courts] lack subject matter jurisdiction over duty of fair representation claims brought by employees of political subdivisions." *Gear v. Dep't of Ed.,* No. 07 Civ. 11102(NRB), 2010 WL 5297850, at *3 (S.D.N.Y. Dec.21, 2010) (citing *Ford v. D.C. 37 Union Local 1549,* 579 F.3d 187, 188 (2d Cir.2009) (*per curiam* ) (holding as such and noting that "[w]e deem it appropriate to issue a published opinion and thereby make clear beyond peradventure that this is the law of our Circuit")). Consequently, because the Agency clearly is a political subdivision of the state, the Court lacks subject matter jurisdiction over Shipman's fair representation claim against PEF. [7]

[7]     In his opposition papers, Shipman objects to the characterization of his claim against PEF as being based on a breach of the duty of fair representation. (*See* Pl.'s Opp'n at 13). Instead, Shipman maintains that his claim against PEF is brought pursuant to the ADA (*Id.*). Shipman's pleadings, however, merely speculate that PEF is "acting in concert with [the Agency] in furtherance of an illegal scheme to deny [Shipman] reasonable accommodation, employment, and aggravate the hardship with which he has been confronted since being removed from the state payroll." (Am.Compl.¶ 6(19)). These conclusory allegations are insufficient to state an ADA claim against PEF. *See* Fed.R.Civ.P. 12(b)(6).

### D. *IFP Application*

The statute governing IFP applications provides that "the court shall dismiss the case at any time if the court determines

that ... the allegation of poverty is untrue[.]" 28 U.S.C. § 1915(e)(2)(A). Courts disagree as to whether a case must be dismissed any time the allegations in the affidavit are discovered to be untrue, or only if the plaintiff was not actually impoverished. *Compare McRoyal v. Commonwealth Edison Co.,* 263 Fed. App'x 500, 502 (7th Cir.2008) ( "Whether the false statements actually result in a grant of in forma pauperis status or other relief is irrelevant under § 1915(e)(2)(a)."), *with Lee v. McDonald's Corp.,* 231 F.3d 456, 459 (8th Cir.2000) (plaintiff's claim need not be dismissed unless the court finds that he "is not sufficiently poor to qualify for in forma pauperis status given the facts that are true").

Although Shipman clearly earned income during the twelve months preceding the filing of this suit, it is unclear whether he would have qualified for IFP status had his affidavit been truthful. In any event, assuming that a truthful application would have been granted, the only claim that Shipman potentially might have been able to pursue without the payment of fees would have been a claim for injunctive relief against the Individual Defendants. Here, because Shipman has knowingly made false statements on several IFP applications, including his affidavit in this case, if he wishes to proceed with that narrow claim, he should be required to pay (1) the $350 filing fee to the Clerk of the Court and (2) a $112 sanction to reimburse the United States Marshals Service for the costs incurred in serving the defendants. (*See* ECF No. 45); *see also Moorish Nat'l Republic v. City of Chicago,* No. 10 C 1047, 2011 WL 1485574, at *6 (N.D.Ill. Apr.18, 2011) (requiring, on similar facts, that the plaintiff "disgorge the benefits of *in forma pauperis* status" by paying the $350 filing fee and a $100 sanction for the costs of service).

### IV. *Conclusion*

**\*11** For the foregoing reasons, PEF's motion to dismiss Shipman's breach of the duty of fair representation claim should be granted with prejudice, as well as the State Defendants' motion to dismiss his ADA claims against the Agency and his ADA claim for money damages against the Individual Defendants. Additionally, the State Defendants' motion to dismiss Shipman's ADA claim against the Individual Defendants should be denied without prejudice to the extent he seeks injunctive relief. If Shipman wishes to proceed with that claim, he should first be required to pay the Clerk of the Court the sum of $462.

Because all of Shipman's claims are subject to dismissal, his renewed application for a temporary restraining order or

injection should also be denied. Further, if the Court adopts this Report and Recommendation, it may wish to certify, pursuant to 28 U.S.C. § 1915(a)(3), that *in forma pauperis* status is denied for purposes of an appeal because an appeal would not be taken in good faith.

## V. *Notice of Procedure for Filing of Objections to this Report and Recommendation*

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. *See also* Fed.R.Civ.P. 6(a) and (d). Any such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable George B. Daniels and to the chambers of the

undersigned at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be directed to Judge Daniels. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72(b); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).

SO ORDERED.

## All Citations

Not Reported in F.Supp.2d, 2012 WL 897790

---

**End of Document**                    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 3704837
Only the Westlaw citation is currently available.
United States District Court,
N.D. Georgia,
Atlanta Division.

Calvin Cecil JONES, Movant,

v.

UNITED STATES of America, Respondent.

Criminal Action No. 1:02–CR–443–CC–LTW–1.
|
Civil Action No. 1:12–CV–2392–CC–LTW.
|
Aug. 27, 2012.

**Attorneys and Law Firms**

Angela Marie Jordan, U.S. Attorneys, Atlanta, GA, for Respondent.

*ORDER*

CLARENCE COOPER, District Judge.

**\*1** Movant, pro se, filed a motion under 28 U.S.C. § 2255 to vacate his sentence in this case, which the Court imposed on March 11, 2003. (Doc. 139 in 1:02–cr–443–CAP–LTW.) Magistrate Judge Walker issued a Report and Recommendation that the motion be denied under Rule 4 of the Rules Governing § 2255 Proceedings for the U.S. District Courts because it is untimely. (Doc. 141 ("R & R").)

The R & R correctly noted that Movant's conviction became final on March 25, 2003. (R & R at 5.) Absent the applicability of one of the alternate starting dates for § 2255's one-year statute of limitations, Movant had until March 25, 2004 to file his § 2255 motion. (*Id.* at 5–6); *see* 28 U.S.C. § 2255(f). Movant filed his § 2255 motion on July 3, 2012. (Doc. 139–1 at 3.)

In his § 2255 motion and his objections to the R & R, Movant argues that the one-year limitations period did not begin until the U.S. Court of Appeals for the Fourth Circuit issued its opinion in *United States v. Simmons,* 649 F.3d 237 (4th Cir.2011) (en banc) on August 17, 2011. Movant contends that the Fourth Circuit ruling is a "fact" for purposes of § 2255(f)(4), which provides that the limitations period may begin on

"the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." (Doc. 143); *see* 28 U.S .C. § 2255(f)(4).

As Judge Walker correctly concluded, a court decision cannot serve as a "fact" that triggers the limitations period under § 2255(f)(4). *See E.J.R.E. v. United States,* 453 F.3d 1094, 1097–98 (8th Cir.2006) ("A decision such as the one promulgated [by this court] in *J.W.T.,* unlike a predicate conviction, is a ruling exclusively within the domain of the courts and is incapable of being proved or disproved."); *United States v. Hardison,* No. 4:11–CV–196–FL, 2011 WL 6780783, at *2 (E.D.N.C. Dec.27, 2011) (holding that "the Fourth Circuit's decision in *Simmons* does not constitute a 'fact supporting [petitioner's] claim' " because "[t]o hold now that appellate court decisions constitute 'facts' under § 2255(f)(4), and therefore could serve as the tolling dates for § 2255 motions, would render moot § 2255(f)(3)"); Order, *Valdovinos–Busto v. United States,* No. 1:03–CR–043–ODE–7, at *6 (N.D.Ga. Feb. 15, 2011). While there may be similarities between the facts in the *Simmons* case and Movant's case, § 2255(f)(4) applies only to facts in the present case, i.e., Movant's case. Movant was not a party to *Simmons* and has no personal connection to that case. *See generally Simmons.* Similar legal issues in Simmons and this case do not trigger application of § 2255(f)(4), as that provision focuses solely on factual evidence, not law, supporting a movant's claims.

The Court disagrees with Movant that this is a "complex issue" warranting a certificate of appealability. (Doc. 143 at 3.) The U.S. Court of Appeals for the Eleventh Circuit has rejected an argument, like Movant's, that discovery of new law or a court opinion separate from the § 2255 movant's case triggers § 2255(f) (4). *See Madaio v. United States,* 397 F. App'x 568 (11th Cir.2010) (claim in § 2255 motion relying on recent Ninth Circuit decision was untimely). "Since Section 2255(f)(4) is predicated on the date that '*facts* supporting the claim' could have been discovered, the discovery of a new court legal opinion, as opposed to new factual information affecting the claim, does not trigger the limitations period." *Id.* at 570. That conclusion is not reasonably debatable given the text of § 2255(f)(4).

**\*2** Accordingly, Movant's objections to the R & R [143] are **OVERRULED .** The Court **ADOPTS** the R & R [141] as the opinion of the Court. Movant's § 2255 motion [139] is **DENIED** and Movant is **DENIED** a certificate of appealability.

**SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 3704837

---

© 2022 Thomson Reuters. No claim to original U.S. Government Works.

 © 2022 Thomson Reuters. No claim to original U.S. Government Works.

Burke v. Vonnard, Not Reported in Fed. Supp. (2015)

2015 WL 13744417

Case 5:22-cv-00811-LEK-TWD   Document 3   Filed 10/17/22   Page 90 of 102

2015 WL 13744417
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Janice E. BURKE, Plaintiff,

v.

Tom VONNARD, Defendant.

5:15-CV-1133 (MAD/TWD)
|
Signed 09/25/2015
|
Filed 09/28/2015

**Attorneys and Law Firms**

JANICE E. BURKE, Plaintiff pro se, 309 Westfall Street,
Syracuse, New York 13209.

### ORDER AND REPORT-RECOMMENDATION

Thérèse Wiley Dancks, United States Magistrate Judge

**\*1**  The Clerk has sent this pro se civil rights complaint,
brought pursuant to 42 U.S.C. §§ 1981, 1982, and 3604, 29
U.S.C. § 794, and United States Tort Law [1], together with an
application to proceed in forma pauperis ("IFP Application")
to the Court for review. (Dkt. Nos. 1 and 2.)

[1]      Plaintiff has not identified the United States Tort
         Law to which she is referring, and the Court is
         unaware of any such law applicable to her claim
         that she was wrongfully evicted by Defendant.

### I. IFP APPLICATION

A court may grant in forma pauperis status if a party "is
unable to pay" the standard fee for commencing an action. 28
U.S.C. § 1915(a)(1) (2006). After reviewing Plaintiff's IFP
Application (Dkt. No. 2), the Court finds that she meets the
standard and her IPF Application is is granted. [2]

[2]      Plaintiff should note that although her IFP
         Application has been granted, she will still be
         required to pay fees that she may incur in this
         action, including copying and/or witness fees.

### II. LEGAL STANDARDS FOR INITIAL REVIEW

Even when a plaintiff meets the financial criteria for in forma
pauperis, 28 U.S.C. § 1915(e) directs that when a plaintiff
proceeds in forma pauperis, "the court shall dismiss the case
at any time if the court determines that ... the action ... (i)
is frivolous or malicious; (ii) fails to state a claim on which
relief may be granted; or (iii) seeks monetary relief against
a defendant who is immune from such relief." 28 U.S.C. §
1915(e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must
look to see whether the complaint lacks an arguable basis
either in law or in fact. Neitzke v. Williams, 490 U.S. 319,
325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). "An action
is frivolous when either: (1) the factual contentions are clearly
baseless such as when the claims are the product of delusion
or fantasy; or (2) the claim is based on an indisputably
meritless legal theory." Livingston v. Adirondack Beverage
Co., 141 F.3d 434, 437 (2d Cir. 1998) (citations and internal
quotation marks omitted). Although extreme caution should
be exercised in ordering sua sponte dismissal of a pro se
complaint before the adverse party has been served and the
parties have had an opportunity to respond, Anderson v.
Coughlin, 700 F.2d 37, 41 (2d Cir. 1983), the court still has a
responsibility to determine that a claim is not frivolous before
permitting a plaintiff to proceed. See, e.g., Thomas v. Scully,
943 F.2d 259, 260 (2d Cir. 1991) (per curiam) (holding that a
district court has the power to dismiss a complaint sua sponte
if the complaint is frivolous).

To survive dismissal for failure to state a claim, a complaint
must plead enough facts to state a claim that is "plausible
on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544,
570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has
facial plausibility when the plaintiff pleads factual content
that allows the court to draw the reasonable inference
that the defendant is liable for the misconduct alleged."
Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173
L.Ed.2d 868 (2009). While Rule 8(a) of the Federal Rules
of Civil Procedure, which sets forth the general rules of
pleading, "does not require detailed factual allegations, ... it
demands more than an unadorned, the-defendant-harmed-me
accusation." Id. In determining whether a complaint states
a claim upon which relief may be granted, "the court must
accept the material facts alleged in the complaint as true and
construe all reasonable inferences in the plaintiff's favor."
Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir. 1994)
(citation omitted). "[T]he tenet that a court must accept as true
all of the allegations contained in a complaint is inapplicable
to legal conclusions." Iqbal, 556 U.S. at 678, 129 S.Ct. 1937.

Case 5:22-cv-00811-LEK-TWD   Document 3   Filed 10/17/22   Page 91 of 102

Burke v. Vonnard, Not Reported in Fed. Supp. (2015)

2015 WL 13744417

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

**\*2** Where a plaintiff proceeds *pro se*, the pleadings must be read liberally and construed to raise the strongest arguments they suggest. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (citation omitted). A *pro se* complaint should not be dismissed "without giving leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

### III. PLAINTIFF'S COMPLAINT

On September 2, 2011, Plaintiff entered into a written lease with Defendant Tom Vonnard for a two bedroom apartment at 1214 Milton Avenue. (Dkt. No. 1 at 2.) Plaintiff paid a security deposit and the first month's rent. *Id.* Plaintiff made a number of improvements to the apartment. *Id.*

Plaintiff was employed when she leased the apartment but was released from her job on February 10, 2012. *Id.* Plaintiff continued to pay rent for two months as she looked for new employment. *Id.* On April 1, 2012, an acquaintance who had just been released from a drug rehabilitation facility appeared at Plaintiff's apartment in need of temporary shelter. [3] *Id.* Plaintiff agreed to the temporary arrangement. *Id.* When Defendant came to the apartment to pick up rent on April 5, 2012, he asked about the person staying in her apartment, and Plaintiff explained the temporary arrangement. [4] *Id.*

[3] The date alleged in the complaint is April 1, 2011. (Dkt. No. 1 at 2.) Because Plaintiff had not yet leased the apartment in April 2011, the Court has assumed that the intended date is April 1, 2012.

[4] The date set forth in the complaint is April 5, 2011. (Dkt. No. 1 at 2.) Again, the Court has assumed the intended year is 2012.

Plaintiff also explained to Defendant that she had been released from her employment and had only $400.00 of the agreed upon rent of $575.00. *Id.* She told Defendant she was applying for public assistance while looking for employment. *Id.* At Defendant's suggestion, Plaintiff and the acquaintance who was staying with her applied for public

assistance as "co-op tenants." *Id.* Within forty-five days, the Department of Social Services ("DSS") issued two checks to Defendant, each in the amount of $287.50, for Plaintiff and her acquaintance as co-tenants. *Id.*

On December 16, 2013, DSS sanctioned Plaintiff for 150 days. *Id.* at 3. Plaintiff requested a fair hearing and explained the situation to Defendant. *Id.* On May 16, 2014, DSS issued all monies due Defendant. *Id.*

On April 9, 2014, prior to Plaintiff's fair hearing, National Grid shut off the power in the apartment for lack of payment. *Id.* After Plaintiff's sanction was lifted by DDS, she went to HEAP and National Grid to have the power restored. *Id.* Plaintiff and Defendant agreed to September 17, 2014 [5], for power to be restored. *Id.* However, Plaintiff was denied restoration because her co-tenant had been sanctioned and DSS stated that no payment arrangement could be made with National Grid until the co-tenant was cleared. *Id.*

[5] September 17, 2014, is the date set forth in the complaint. (Dkt. No. 1 at 3.) Inasmuch as DSS issued all rent monies due Defendant May 16, 2014, it is unclear why power would not be restored until September 17, 2014. *Id.*

The co-tenant lost her keys on or about May 16, 2014, and broke a back porch window to gain entry into the apartment. *Id.* The co-tenant admitted to Defendant that she had broken the window and agreed to have it repaired. *Id.*

**\*3** On September 29, 2014, Plaintiff left the apartment for temporary shelter due to lack of power, mice, chest congestion, and cataracts. *Id.* She returned to the apartment several times and discovered that her key no longer worked. *Id.* When Plaintiff called Defendant, he informed her that she and her co-tenant had been evicted for non-payment of rent on October 31, 2014. [6] *Id.* Plaintiff informed Defendant that her share of the rent had been paid, along with November and December rent, and that she had not been served with eviction papers, which Defendant told her had been placed on the apartment door. *Id.* Plaintiff requested a copy of the eviction notice, and it was faxed to her three days later. *Id.*

[6] The date set forth in the complaint is October 31, 2011. (Dkt. No. 1 at 4.) Given the chronological order in which the allegations in the complaint are

**Burke v. Vonnard, Not Reported in Fed. Supp. (2015)**

2015 WL 13744417

set forth, the Court has assumed the intended year is 2014.

Plaintiff contends that Defendant: (1) falsified documents to be granted eviction; (2) was aware that the total contents of the apartment, excluding the co-tenant's clothes, were Plaintiff's; (3) was aware that once Plaintiff and her co-tenant entered into a co-op tenant agreement, the living arrangement was no longer temporary, and that as landlord he was the only one who could have the co-tenant removed for non-payment of rent; (4) denied Plaintiff, who had not defaulted, entry into the apartment after he had accepted rent for November and December of 2014 and denied her the right to move or obtain another tenant to share the rent costs; (5) maliciously disposed of Plaintiff's belongings including items of sentimental value, her high school and college diplomas, confidential documents such as her birth certificate and social security card, and her computer and laptop, which were placed out in the street; and (6) failed to return her security deposit based on falsified documents filed in court. *Id.* at 3-4.

Plaintiff claims that as a result of Defendant's actions, she is experiencing severe mental depression, apathy, and muscle loss due to the inability to utilize the commercial exercise equipment she had purchased and kept in her apartment. *Id.* at 4. According to Plaintiff, she has been forced to use prescription drugs to alleviate pain and swelling due to the lack of physical exercise. *Id.*

Plaintiff seeks as relief a letter of apology from Defendant, all applicable punishment for the offenses alleged, and any other relief the court deems applicable for the loss of Plaintiff's belongings, which are identified in an attachment to the complaint. *Id.* at 5-11.

## IV. ANALYSIS

**A. Plaintiff's Claim under 42 U.S.C. §§ 1981 and 1982**
Section 1981(a) provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State ... to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens...." 42 U.S.C. § 1981(a). To establish a claim under § 1981, a plaintiff must show that (1) he is a member of a protected class; (2) defendant intended to discriminate against plaintiff based upon his membership in the protected class; and (3) the discrimination concerned one or more of the activities enumerated in § 1981. *Brown*

*v. City of Oneonta*, 221 F.3d 329, 339 (2d Cir. 2000). Like the Equal Protection Clause, § 1981 can only be violated by purposeful discrimination. *Gen. Bldg. Contractor's Assn., Inc. v. Pennsylvania*, 458 U.S. 375, 391, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982).

42 U.S.C. § 1982 states that "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." Section 1982 has been interpreted to prohibit "intentional discrimination" based on race. *Shaare Tefila Congregation v. Cobb*, 481 U.S. 615, 617, 107 S.Ct. 2019, 95 L.Ed.2d 594 (1987) (citation omitted).

**\*4** Plaintiff has not identified her race or alleged in her complaint that she is a member of a protected class. Nor has she set forth facts plausibly showing that Defendant intended to discriminate against her based upon her race or membership in some other protected class. Therefore, the Court finds that Plaintiff has failed to state a claim under 42 U.S.C. §§ 1981 and 1982. *See Francis v. Kings Park Manor, Inc.*, No. 14-cv-3555 (ADS) (GRB), 91 F.Supp.3d 420, 2015 WL 1189579, at \* 4, 2015 U.S. Dist. LEXIS 31787 (E.D.N.Y. March 16, 2015)[7] (to state a claim for racial discrimination under §§ 1981 or 1982, a plaintiff must allege intentional discrimination on the part of the defendant) (citation and internal quotation marks omitted).

[7]     Copies of the unpublished decision will be provided to Plaintiff in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

**B. Plaintiff's Fair Housing Act Claim**
The Fair Housing Act ("FHA"), enacted as Title VIII of the Civil Rights Act of 1968, as amended, imposes liability on private actors who discriminate against protected class members in the real estate market. 42 U.S.C. §§ 3601, *et seq.* The FHA provides a private right of action for enforcement. 42 U.S.C. § 3613.

Section 3604 of the FHA prohibits private actors in the housing market from engaging in certain discriminatory actions regarding those seeking housing. More specifically, § 3604(a) makes it unlawful "[t]o refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin." Section 3604(b) makes it

Burke v. Vonnard, Not Reported in Fed. Supp. (2015)

2015 WL 13744417

unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." Section 3604(f)(1) makes it unlawful "[t]o discriminate in the sale or rental, or otherwise to make unavailable or deny a dwelling to any buyer or renter because of a handicap of (A) that buyer or renter, (B) a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available; or (C) any person associated with that buyer or renter."

Plaintiff has not alleged in her complaint that Defendant evicted her from the Milton Avenue apartment because of race, color, religion, sex, familial status, national origin, or because of a handicap. (Dkt. No. 1.) Therefore, the Court finds that Plaintiff has failed to state a claim under § 3604 of the FHA.

### C. Rehabilitation Act Claim

"Section 504 of the Rehabilitation Act provides in pertinent part that [n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his handicap, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance...." 29 U.S.C. § 794(a); Bryant v. N.Y.S. Educ. Dept., 692 F.3d 202, 216 (2d Cir. 2012), cert. denied, 569 U.S. 958, 133 S.Ct. 2022, 185 L.Ed.2d 885 (2013).

Plaintiff has failed to allege that she is handicapped or that Defendant evicted her solely because of a handicap for purposes of stating a claim under the Rehabilitation Act. Furthermore, Plaintiff's complaint does not set forth facts plausibly showing the receipt of federal financial assistance in connection with her rental of the Milton Avenue apartment or eviction by Defendant.

Plaintiff has alleged that she was the recipient of public assistance and that DSS issued checks to Defendant for rent for Plaintiff and her co-tenant. (Dkt. No. 1 at ¶ 4.) However, those allegations are insufficient to state a claim against Defendant under the Rehabilitation Act. See Reyes v. Fairfield Properties, 661 F.Supp.2d 249, 264 (E.D.N.Y. 2009) (recognizing that "an entity or person who received housing assistance payments under a housing assistance payments program or a voucher program is not a 'recipient' of federal financial assistance by virtue of receipt of such payments.") (citation omitted); 24 C.F.R. § 8.3 ("An entity

or person receiving housing assistance payments from a recipient on behalf of eligible families under a housing assistance payments program or a voucher program is not recipient or subrecipient merely by virtue of receipt of such payments.")

**\*5** Based upon the foregoing, the Court finds that Plaintiff has failed to state a claim under the Rehabilitation Act.

### D. Lack of Subject Matter Jurisdiction Over Plaintiff's Eviction Claim

Federal courts are courts of limited jurisdiction and may not preside over cases absent subject matter jurisdiction. Exxon Mobil Corp. v. Allapattah Services, Inc., 545 U.S. 546, 552, 125 S.Ct. 2611, 162 L.Ed.2d 502 (2005). Federal jurisdiction is available only when a "federal question" is presented, 28 U.S.C. § 1331, or when plaintiff and defendant are of diverse citizenship and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. In order to invoke federal question jurisdiction, a plaintiff's claims must arise "under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

When a court lacks subject matter jurisdiction, dismissal is mandatory. Arbaugh v. Y & H Corp., 546 U.S. 500, 514, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006). Therefore, a plaintiff, even if appearing pro se, must establish that the court has subject matter jurisdiction. Ally v. Sukkar, 128 F. App'x 194, 195 (2d Cir. 2005) ("Although we construe a pro se plaintiff's complaint liberally, a plaintiff attempting to bring a case in federal court must still comply with the relevant rules of procedural and substantive law, including establishing that the court has subject matter jurisdiction over the action.") (citations omitted).

The allegations in Plaintiff's complaint are akin to a state law claim for wrongful eviction. Federal courts, unlike state courts, have no jurisdiction over landlord-tenant matters. See Galland v. Margules, No. 05-CV-5639 (DC), 2005 WL 1981568, at * 1, 2005 U.S. Dist. LEXIS 17125 (S.D.N.Y. Aug. 17, 2005) (noting that federal courts do not have federal question jurisdiction over state residential landlord-tenant matters), aff'd, 191 F. App'x 23 (2d Cir. 2006); see also Rosen v. Shore Towers Apartments, Inc., No. 11-CV-0752 (RRM) (LB), 2011 WL 2550733, at * 5, 2011 U.S. Dist. LEXIS 68412 (E.D.N.Y. June 27, 2011) (noting that courts in this Circuit "routinely dismiss for lack of subject matter jurisdiction" claims concerning eviction (collecting cases) ). Therefore,

**Burke v. Vonhard, Not Reported in Fed. Supp. (2015)**

2015 WL 13744417

the federal court has no jurisdiction over Plaintiff's state law wrongful eviction claim. [8]

[8]   Because the Court is recommending dismissal of Plaintiff's federal claims, it recommends that the District Court decline without prejudice to exercise supplemental jurisdiction over Plaintiff's state law wrongful eviction claim.

**V. CONCLUSION**

Based upon the foregoing, the Court has concluded that Plaintiff has failed to state a claim under 42 U.S.C. §§ 1981 and 1982, the FHA, and the Rehabilitation Act. The Court has further found that there is no subject matter jurisdiction over her state law claim for wrongful eviction. Therefore, the Court recommends that Plaintiff's complaint be dismissed for failure to state a claim with leave to amend.

**ACCORDINGLY**, it is hereby

**ORDERED** that Plaintiff's IFP Application (Dkt. No. 2) is **GRANTED**; and it is

**RECOMMENDED** that Plaintiff's complaint be **DISMISSED WITH LEAVE TO AMEND** for failure to

state a claim upon initial review under 28 U.S.C. § 1915(e)(2)(B)(ii); and it is further

 ***6  RECOMMENDED** that the District Court **DECLINE WITHOUT PREJUDICE** to exercise supplemental jurisdiction over Plaintiff's state law wrongful eviction claim; and it is

**ORDERED**, that the Clerk send Plaintiff a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein, in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989) ); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

**All Citations**

Not Reported in Fed. Supp., 2015 WL 13744417

---

**End of Document**                           © 2022 Thomson Reuters. No claim to original U.S. Government Works.

2016 WL 3176653

2016 WL 3176653
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Janice E. BURKE, Plaintiff,

v.

Tom VONNARD, Defendant.

5:15-CV-1133 (MAD/TWD)
|
Signed 06/07/2016

**Attorneys and Law Firms**

JANICE E. BURKE, 309 Westfall Street Syracuse, New York 13209, pro se.

### ORDER

Mae A. D'Agostino, U.S. District Judge

*1 Plaintiff, Janice Burke, commenced this action *pro se* on September 21, 2015, against Defendant, Tom Vonnard. *See* Dkt. No. 1. Plaintiff asserts claims pursuant to 42 U.S.C. §§ 1981, 1982, and 3604, 29 U.S.C. § 794, and United States Tort Law alleging wrongful eviction by Defendant. Plaintiff filed an application to proceed in *forma pauperis*. *See* Dkt. Nos. 1 and 2.

On September 28, 2015, Magistrate Judge Thérèse Wiley Dancks issued an Order and Report-Recommendation granting Plaintiff's IFP application, recommending that Plaintiff's complaint be dismissed with leave to amend for failure to state a claim upon initial review under 28 U.S.C. § 1915(e)(2)(B)(ii), and further recommending that the District Court decline without prejudice to exercise supplemental jurisdiction over Plaintiff's state law wrongful eviction claim. *See* Dkt. No. 4 at 11.

A court may grant a motion to proceed in *forma pauperis* ("IFP") if the party is "unable to pay" the standard fee for commencing an action. 28 U.S.C. § 1915(a)(1) (2006). When a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). In making this determination, "the

court has the duty to show liberality towards pro se litigants," however, "there is a responsibility on the court to determine that a claim has some arguable basis in law before permitting a plaintiff to proceed with an action in forma pauperis." *Moreman v. Douglas*, 848 F. Supp. 332, 333–34 (N.D.N.Y. 1994) (internal citations omitted); *see, e.g., Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991) (per curiam) (holding that a district court has the power to dismiss a complaint *sua sponte* if the complaint is frivolous).

To survive dismissal for failure to state a claim, a party need only present a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, ... it demands more than an unadorned" recitation of the alleged misconduct. *Id.* (citations and quotation omitted). In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).

*2 When a party files specific objections to a magistrate judge's order and report-recommendation, the district court "make[s] a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C) (2009). However, when a party files "[g]eneral or conclusory objections, or objections which merely recite the same arguments [that he] presented to the magistrate judge," the court reviews those recommendations for clear error. *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, *2 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

Burke v. Vonhard, Not Reported in Fed. Supp. (2016)

2016 WL 3176653

A litigant's failure to file objections to a magistrate judge's report and recommendation, even when that litigant is proceeding *pro se*, waives any challenge to the report on appeal. *See Cephas v. Nash*, 328 F.3d 98, 107 (2d Cir. 2003) (holding that, "[a]s a rule, a party's failure to object to any purported error or omission in a magistrate judge's report waives further judicial review of the point" (citation omitted)). A *pro se* litigant must be given notice of this rule; notice is sufficient if it informs the litigant that the failure to timely object will result in the waiver of further judicial review and cites pertinent statutory and civil rules authority. *See Frank v. Johnson*, 968 F.2d 298, 299 (2d Cir. 1992); *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (holding that a *pro se* party's failure to object to a report and recommendation does not waive his right to appellate review unless the report explicitly states that failure to object will preclude appellate review and specifically cites 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and former 6(e) of the Federal Rules of Civil Procedure).

In the present matter, Magistrate Judge Dancks provided Plaintiff adequate notice that she was required to file any objections to the Order and Report– Recommendation, and specifically informed her that failure to object to any portion of the report would preclude her right to appellate review. *See* Dkt. No. 4 at 12. Specifically, Magistrate Judge Dancks informed Plaintiff that "**FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72." *See* Dkt. No. 4 at 12. Magistrate Judge Dancks clearly provided Plaintiff with sufficient notice of the consequences of failing to object to the Order and Report– Recommendation.

42 U.S.C. § 1981(a) provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State ... to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." 42 U.S.C. § 1981(a) (1977). In order to establish a claim under § 1981, "a plaintiff must allege facts supporting the following elements: (1) plaintiffs are members of a racial minority; (2) defendants' intent to discriminate on the basis of race; and (3) discrimination concerning one of the statutes enumerated activities." *Brown v. City of Oneonta*, 221 F.3d 329, 339 (2d Cir. 2000) (citation omitted). Section 1982 states that

"[a]ll citizens of the United states shall have the same right, in every State ... as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." 42 U.S.C. § 1982 (1978). Section 1982 has been interpreted to prohibit "intentional discrimination" based solely on a person's "ancestry or ethnic characteristics." *Shaare Tefila Congregation v. Cobb*, 481 U.S. 615, 617 (1987) (citation and internal quotation marks omitted).

**\*3** As Magistrate Judge Dancks correctly found, Plaintiff has not identified her race or alleged in her complaint that she is a member of a protected class based on her ancestry or ethnic characteristics under 42 U.S.C. §§ 1981 and 1982. Nor has the Plaintiff set forth facts plausibly showing that Defendant intended to discriminate against her based on her race, ancestry or ethnic characteristics. Therefore, the Court finds the Plaintiff failed to state a claim under 42 U.S.C. §§ 1981 and 1982.

Section 3604 of the Fair Housing Act ("FHA") prohibits private actors in the housing market from engaging in certain discriminatory actions regarding those seeking housing. 42 U.S.C. § 3604 (2012). More specifically, § 3604(a) makes it unlawful "[t]o refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(a). Section 3604(b) makes it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b). Section 3604(f)(1) makes it unlawful "[t]o discriminate in the sale or rental, or otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of (A) that buyer or renter; (B) a person residing in or intending to reside in that dwelling after it is sold, rented, or made available; or (C) any person associated with that buyer or renter." 42 U.S.C. § 3604(f)(1).

Again, Magistrate Judge Dancks correctly determined that Plaintiff failed to present factual allegations in her complaint that Defendant evicted her from the Milton Avenue apartment because of her race, color, religion, sex, familial status, national origin, or because of a handicap. Therefore, the Court finds that Plaintiff has failed to state a claim under § 3604 of the FHA.

Burke v. Vonnard, Not Reported in Fed. Supp. (2016)

2016 WL 3176653

Section 504 of the Rehabilitation Act provides in pertinent part that "[n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his handicap, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a) (1998); *Bryant v. N.Y.S. Educ. Dept.*, 692 F.3d 202, 216 (2d Cir. 2012), *cert. denied*, 133 S. Ct. 2022. "An entity or person receiving housing assistance payments from a recipient on behalf of eligible families under a housing assistance payments program or voucher program is not a recipient or subrecipient merely by virtue of receipt of such payments." 24 C.F.R. § 8.3 (1989).

Plaintiff has failed to allege that she has a handicap or that Defendant evicted her solely on the basis of that handicap for purposes of stating a claim under § 504 of the Rehabilitation Act. Furthermore, Plaintiff's complaint does not set forth facts plausibly showing the receipt of federal funding by Defendant in connection with Plaintiff's rental of the Milton Avenue apartment or her eviction from the same. Plaintiff has alleged that she was the recipient of public assistance and that the Department of Social Services issued checks to Defendant for Plaintiff and her co-tenant's rent. However, those disbursements are insufficient to establish a claim against Defendant under § 504 of the Rehabilitation Act. *See Reyes v. Fairfield Properties*, 661 F. Supp. 2d 249, 264 (E.D.N.Y. 2009) (recognizing that "an entity or person who receives housing assistance payments under a housing assistance payments program or a voucher program is not a 'recipient' of federal financial assistance by virtue of receipt of such payments" (quotation omitted)). Based on the foregoing, the Court finds that Plaintiff has failed to state a claim under § 504 of the Rehabilitation Act.

**\*4** Federal courts are courts of limited jurisdiction and may not preside over cases absent subject matter jurisdiction. *Exxon Mobil Corp v. Allapattah Services, Inc.*, 545 U.S. 546, 552 (2005). Federal jurisdiction is available only when a "federal question" is presented, when the plaintiff and the defendant are of diverse citizenship and the amount in controversy exceeds $75,000, or when supplemental jurisdiction is appropriate. 28 U.S.C. §§ 1331, 1332, and 1367. In order to invoke federal question jurisdiction, a plaintiff's claims must arise "under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. District courts have supplemental jurisdiction over all state-law claims that are so related to federal claims over which they exercise original jurisdiction that they form

part of the same case or controversy under Article III of the Constitution. 28 U.S.C. § 1367(a). Application of supplemental jurisdiction is discretionary, and "it requires a balancing of the considerations of comity, fairness to the litigants, judicial economy, and the avoidance of needless decisions of state law." *Federman v. Empire Fire & Marine Ins. Co.*, 597 F.2d 798, 809 (2d Cir. 1979) (citation omitted).

When a court lacks subject matter jurisdiction, dismissal is mandatory. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006). Therefore, although courts "construe a pro se plaintiff's complaint liberally, a plaintiff attempting to bring a case in federal court must still comply with the relevant rules of procedural and substantive law, including establishing that the court has subject matter jurisdiction over the action." *Ally v. Sukkar*, 128 Fed. Appx 194, 195 (2d Cir. 2005) (internal citation omitted).

The allegations set forth in Plaintiff's complaint are analogous to a state law claim for wrongful eviction. Federal courts do not have jurisdiction over landlord-tenant matters unless they are so related to a federal question that a court finds supplemental jurisdiction appropriate. *See Galland v. Margules*, No. 05-CV-5639 (DC), 2005 WL 1981568, *5 (S.D.N.Y. Aug. 17, 2005) (noting that federal courts do not have federal question jurisdiction over state residential landlord-tenant matters), *aff'd*, 191 Fed. Appx. 23, 24 (2d Cir. 2006).

Since the Court has dismissed all of Plaintiff's federal claims, it declines to exercise supplemental jurisdiction over her state-law claims and dismisses them without prejudice pursuant to 28 U.S.C. § 1367(c)(3). Upon a review of the Order and Report-Recommendation, and considering that the parties have failed to object to any of Magistrate Judge Dancks' thorough and well-reasoned recommendations, the Court finds no clear error in Magistrate Judge Dancks' recommendations and hereby affirms and adopts the Order and Report-Recommendation as the opinion of the Court.

Accordingly, the Court hereby

**ORDERS** that Magistrate Judge Dancks' September 28, 2015 Order and Report-Recommendation is **ADOPTED in its entirety**; and the Court further

**ORDERS** that Plaintiff's IFP application (Dkt. No. 2) is **GRANTED**; and the Court further

**ORDERS** that Plaintiff's complaint is **DISMISSED without prejudice**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2016 WL 3176653

---

**End of Document**                    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

2011 WL 2550733
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Sol ROSEN and Florence Rosen, Plaintiffs,

v.

NORTH SHORE TOWERS
APARTMENTS, INC., Defendant.

No. 11–CV–00752 (RRM)(LB).
|
June 27, 2011.

**Attorneys and Law Firms**

Sol Rosen, Manhasset, NY, pro se.

Florence Rosen, Floral Parkway, NY, pro se.

Richard M. Resnik, Eddy Salcedo, Jerry Montag, Seyfarth Shaw LLP, New York, NY, Errol A. Brett, Law Office Errol Brett, Floral Park, NY, for Defendant.

### *MEMORANDUM AND ORDER*

ROSLYNN R. MAUSKOPF, District Judge.

**\*1** Plaintiffs, husband and wife, both appearing *pro se,*[1] bring this action to recover possession of a cooperative apartment appurtenant to shares of defendant North Shore Towers Apartments, Inc., from which they were evicted pursuant to an order of Queens County Housing Court Judge Anne Katz. (Am.Compl. (Doc. No. 6) at ¶¶ 3, 5; Decl. of Jerry A. Montag in Supp. of Mot. to Dismiss ("Montag Decl."), Ex. E (Doc. No. 43–2) at 2 (Decision and Order of Housing Court Judge Katz).) Presently before the Court is defendant's motion to dismiss for lack of subject matter jurisdiction under 12(b)(1) of the Federal Rules of Civil Procedure. (Mot. to Dismiss (Doc. No. 43) at 1–2.) For the reasons set forth below, defendant's motion is GRANTED.

---

[1]    Plaintiff did not file this action *in forma pauperis,* and, therefore, the sua sponte screening procedures of 28 U.S.C. § 1915 do not apply.

## BACKGROUND

On February 15, 2011, plaintiffs filed this action together with an affidavit in support of an Order to Show Cause for temporary and preliminary injunctive relief, seeking an order compelling defendant to restore plaintiffs to possession of the apartment. (Compl.(Doc. No. 1) at ¶¶ 4–5; Aff. in Supp (Doc. 1–2) at 1–2). The following day, plaintiffs filed an amended complaint, expanding on the circumstances of their eviction. (Am. Compl. at ¶¶ 3–5.)

On February 17, 2011, the Court held a lengthy hearing on plaintiffs' request for injunctive relief. (*See* Minute Entry dated Feb. 17, 2011 (Doc. No. 5).) Present at the hearing were both plaintiffs, and then-counsel for defendant, Errol Brett, an attorney with North Shore Towers who represented defendant in prior state court proceedings against plaintiffs. The parties, at times contentiously, revealed a protracted history relating to plaintiffs' non-payment of maintenance and other charges, which culminated in plaintiffs' eviction and the forced sale of plaintiffs' apartment pursuant to order of both the Queens County Housing Court and the Queens County Supreme Court. In addition, plaintiff Sol Rosen presented a rambling, unfocused allegation that defendant's directors, officers and accountants had defrauded defendant and its shareholders of $44,000,000 through the levying of fraudulent capital assessments, and the fraudulent valuation of revenue, expenses and surplus. (*See, e.g.,* Minute Entry dated Feb. 17, 2011, Pls.' Ex. 4 (Doc 5–10), at 1–3 [2].) These allegations, not included in the original or amended complaints, comprise much of plaintiff Sol Rosen's opposition to the instant Motion to Dismiss, and which are, themselves, confused discursions, comprised of printouts, photocopies, diagrams, documents from other litigation, and other miscellany, many accompanied by scrawled handwritten notes and annotations. (*See, e.g.,* Notice to the Court (Doc. No. 10) at 4–6, 16–20, 27–28; Letter dated Mar. 25, 2011 from Sol Rosen (Doc. No. 21) at 8–14.)

---

[2]    Reference to pages of Plaintiffs' submissions use the page numbers assigned by the Court's Electronic Case Filing system.

The Court denied plaintiffs' request for injunctive relief, finding that questions surrounding this Court's subject matter jurisdiction rendered success on the merits unlikely. (*See* Minute Entry dated Feb. 17, 2011; Mem. and Order dated

2011 WL 2550733

March 7, 2011 (Doc. No. 16) (denying, *inter alia,* Plaintiffs' Mot. for Recons.).)

**\*2** Plaintiffs' eviction followed a July 2010 non-payment proceeding in Queens County Housing Court, in which Judge Ann Katz granted Defendant's motion for summary judgment, awarding defendant possession and an order of eviction, as well as a money judgment for back rent. (Montag Decl., Ex. E at 2.)

Shortly after Judge Katz issued that decision, on July 30, 2010, plaintiffs commenced an action in New York Supreme Court for Queens County, seeking an order temporarily and preliminarily enjoining the eviction, as well as damages for the same fraud and accounting claims raised at the preliminary injunction hearing in this Court. *Rosen v. N. Shore Towers Apartments, Inc.,* No. 19301–2010, slip op. 2 (Sup.Ct. Queens Cnty. Sept. 15, 2010). That court granted the temporary injunction restraining execution of the warrant of eviction pending the disposition of plaintiffs' allegations of fraud. *Id.* In January 2011, Supreme Court Judge Alan Weiss dismissed the complaint, finding that plaintiffs had failed to state a claim for fraud, and vacated the temporary injunctive relief. *Id.* at 4–6. On February 14, 2011, City Marshal George Essock executed the warrant of eviction. (*See* Montag Decl., Ex. I (Doc. No. 43–11) (warrant of eviction).)

Pursuant to an amended briefing schedule established by this Court's Order dated May 13, 2011 (Doc. No. 37), defendant submitted the instant motion to dismiss on May 27, 2011. On May 31, 2011, plaintiff Sol Rosen submitted several untimely responses to defendant's motion. (Pl.'s Opp'n to Defs.' Mot. to Dismiss (Doc. No. 45) ("Pl.'s Opp'n I"); Pl.'s Opp'n to Defs.' Mot. to Dismiss (Doc. No. 47) ("Pl.'s Opp'n II"); Pl.'s Opp'n to Defs.' Mot. to Dismiss (Doc. No. 48) ("Pl.'s Opp'n III"); Pl.'s Reply to Defs.' Mot. to Dismiss (Doc. No. 50) ("Pl.'s Reply").) In light of plaintiff's *pro se* status, the Court accepts plaintiff Sol Rosen's untimely opposition papers, and has considered them in deciding the instant motion as though they were timely. Plaintiff Florence Rosen does not oppose defendant's motion to dismiss. (Decl. of Florence Rosen (Doc. No. 42) at 1). For the reasons below, defendant's motion is GRANTED and plaintiffs' amended complaint is dismissed in its entirety.

### STANDARD OF REVIEW

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir.2000) (citing Fed.R.Civ.P. 12(b)(1)); *see also Oscar Gruss & Son, Inc. v. Hollander,* 337 F.3d 186, 193 (2d Cir.2003) ("Failure of subject matter jurisdiction, of course, is not waivable and may be raised at any time by a party or by the court *sua sponte.* ") In considering a motion to dismiss for lack of subject matter jurisdiction, a district court "must accept as true all material factual allegations in the complaint, but [is] not to draw inferences from the complaint favorable to plaintiffs." *J.S. ex rel. N.S. v. Attica Cent. Sch.,* 386 F.3d 107, 110 (2d Cir.2004) (citation omitted). This Court, however, "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but [it] may not rely on conclusory or hearsay statements contained in the affidavits." *Id.* (citations omitted). "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys. Inc.,* 426 F.3d 635, 638 (2d Cir.2005).

**\*3** Furthermore, when considering a motion to dismiss a *pro se* complaint, the Court must interpret the complaint liberally to raise the strongest claims that the allegations suggest. *See Cruz v. Gomez,* 202 F.3d 593, 597 (2d Cir.2000); *see also Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (per curiam) (noting that courts should hold *pro se* pleadings "to less stringent standards than formal pleadings drafted by lawyers" (internal quotation marks omitted)). However, mere "conclusions of law or unwarranted deductions" need not be accepted. *First Nationwide Bank v. Gelt Funding Corp.,* 27 F.3d 763, 771 (2d Cir.1994) (quoting 2A Moore & Lucas, Moore's Federal Practice ¶ 12.08, at 2266–69 (2d ed.1984)).

### DISCUSSION

The rambling, largely incoherent amended complaint, read together with plaintiffs' equally confusing subsequent submissions, seeks, in essence, an order vacating both the Housing Court's judgment of eviction and the Supreme Court's dismissal of plaintiffs' complaint on the grounds that the state court decisions were wrongly decided. (*See, e.g.,* Am. Compl at ¶¶ 3–5; Notice to the Court (Doc. No. 10) at 1–3.) Although not stated in the pleadings, plaintiffs also attempt to raise the haphazard claims of fraud and accounting malpractice mentioned above, through submissions fraught

2011 WL 2550733

with recycled state court documents, scribbled rants, Internet postings, jumbled calculations, and demands that the Court appoint lawyers and accountants to investigate and recover $44,000,000 which is alleged to have been taken from the coffers of North Shore Towers. ((*See, e.g.,* Notice to the Court at 4–6, 16–20, 27–28; Letter dated March 25, 2011 from Sol Rosen (Doc. No. 21) at 8–14; Letter dated March 29, 2011 from Sol Rosen (Doc. No. 24) at 2; Letter dated April 5, 2011 from Sol Rosen (Doc. No. 23) at 3–10; *see generally* Pl.'s Opp'n I–III; Pl.'s Reply; Letters from Sol Rosen dated April 13, 2011 (Doc. No. 25), April 16, 2011 (Doc. No. 26), April 26, 2011 (Doc. No. 32), April 29, 2011 (Doc. No. 33), April 30, 2011 (Doc. No. 34), May 5, 2011 (Doc. No. 36), May 16, 2011 (Doc. No. 41)). Defendants move to dismiss for lack of subject matter jurisdiction under the *Rooker–Feldman* doctrine.

## I. *Rooker–Feldman*

The *Rooker–Feldman* doctrine provides that "federal district courts lack jurisdiction over suits that are, in substance, appeals from state court judgments." *Hoblock v. Albany Cnty. Bd. of Elections,* 422 F.3d 77, 84 (2d Cir.2005); *see Rooker v. Fid. Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *D.C. Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *see also Gyadu v. Unemployment Compensation,* 173 F.3d 844 (unpublished table decision), No. 98–7594, 1999 WL 132179, at *1 (2d Cir. Mar.9, 1999) (" '[L]ower federal courts possess no power whatever to sit in direct review of state court decisions.' " (quoting *Atl. Coast Line R.R. v. Bhd. of Locomotive Eng'rs,* 398 U.S. 281, 296, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970))). The *Rooker–Feldman* doctrine operates to bar subject matter jurisdiction in " 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.' " *McKithen v. Brown,* 481 F.3d 89, 96 (2d Cir.2007) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005)).

**\*4** The Second Circuit has set forth four requirements necessary for *Rooker–Feldman* to apply to bar an action: 1) the federal-court plaintiff must have lost in state court; 2) the plaintiff must be complaining of injuries caused by a state-court judgment; 3) the plaintiff must be inviting district court review and rejection of that judgment; and 4) the state-court judgment must have been rendered before the district court proceedings commenced. *Hoblock,* 422 F.3d at 85.

Here, the gravamen of plaintiffs' claims is that the Housing Court judgment of eviction, and subsequent Supreme Court order, were wrongly decided, and that the plaintiffs should, therefore, be returned to possession. All four *Hoblock* requirements are met here. First, plaintiffs lost in state court when the Housing Court judgment awarded possession to defendants, and the Supreme Court dismissed plaintiffs' complaint. *See Rosen,* No. 19301–2010, slip op. 2–3, 5–6 (Sup.Ct. Queens Cnty. Sept. 15, 2010); Montag Decl., Ex. E, at 2). Second, plaintiffs' principal injury—dispossession from their home—was caused by the Housing Court judgment because, but for the judgment, plaintiffs would remain in possession of their home. Third, plaintiffs seek "review and rejection" of the judgment because a judgment in plaintiffs' favor necessarily would require the district court to "determine that a state-court judgment was erroneously entered or was void" or "fraudulently procured." *See Kropelnicki v. Siegel,* 290 F.3d 118, 129 (2d Cir.2002). Fourth, the Housing Court judgment and Supreme Court order were issued before this action was commenced.

The Court notes that plaintiffs' claims are indistinguishable from others brought by state-court losers seeking vacatur of Housing Court judgments of eviction, which courts in this Circuit routinely dismiss for lack of subject matter jurisdiction under *Rooker–Feldman. See Torres v. City of N.Y.,* No. 09–CV–1894 (KAM), 2009 WL 1346396, at *2 (E.D.N.Y. May 13, 2009) (district court lacks jurisdiction to vacate "the orders of the state courts regarding [plaintiff's] upcoming eviction from her home"); *Trang v. Concris Realty Co.,* No. 05–CV–5441 (RJD)(LB), 2005 WL 1398004, at *2 (E.D.N.Y. June 14, 2005) (federal court lacks jurisdiction over eviction proceedings); *McAllan v. Malatzky,* No. 97–CV–8291 (JGK), 1998 WL 24369, at *2–3 (S.D.N.Y. Jan.22, 1998) (no subject matter jurisdiction where plaintiff attempted to recloak his charges regarding a state housing matter as a violation of his constitutional rights), *aff'd,* 173 F.3d 845 (2d Cir.1999); *see also Ashby v. Polinsky,* No. 06–CV–6778 (DLI), 2007 WL 608268, at *1 (E.D.N.Y. Feb.22, 2007) ("[C]ourts in this Circuit ... consistently [hold] that any attack on a judgment of foreclosure is clearly barred by the *Rooker–Feldman* doctrine.") (internal quotation marks omitted), *aff'd,* 328 F. App'x 20 (2d Cir.2009); *Swiatkowski v. Citibank,* No. 10–CV–114 (JFB), 2010 WL 3951212, at *11 (E.D.N.Y. Oct.7, 2010).

**\*5** Moreover, even giving plaintiffs the benefit of the doubt as *pro se* litigants, plaintiffs wholly fail to present in the

2011 WL 2550733

amended complaint an independent federal question or other basis for invoking the jurisdiction of this Court. Although plaintiffs have couched their amended complaint, in part, in terms of "various civil and constitutional rights violations, [it] essentially amounts to an [appeal of] the disposition of the [Housing Court] action." *Swiatkowski,* 2010 WL 3951212, at *11 (quoting *Swiatkowski v. New York,* 160 F. App'x 30, 32 (2d Cir.2005)). For all of these reasons, the Court lacks subject matter jurisdiction over plaintiffs' amended complaint under the *Rooker–Feldman* doctrine.

**II. Leave to amend**

To the extent that plaintiffs seek to amend their complaint through the hundreds of pages of disjointed and confused submissions, such leave is similarly DENIED. The standard governing leave to amend, flexible to begin with, is further liberalized for *pro se* plaintiffs. *See* Fed R. Civ. P. 15(a)(2); *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000). Even under this broad standard, however, the Court maintains its discretion to deny leave to amend "in instances of futility." *Burch v. Pioneer Credit Recovery, Inc.,* 551 F.3d 122, 126 (2d Cir.2008) (citing *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)). Here, plaintiffs' claims were presented to the Supreme Court and dismissed. Again, having lost in state court, plaintiffs' attempt to accomplish in this Court what they failed to do in state court, and have failed to establish any independent federal question. As with plaintiffs attempts to re-litigate their eviction, these claims fail as a matter of law for lack of subject matter jurisdiction, and repleading would thus be futile. *See Cuoco,* 222 F.3d at 112 ("The problem with [plaintiff's claims] is substantive; better pleading will not cure it. Such a futile request to replead should be denied.").

Moreover, having taken great pains to review these submissions in their entirety, the Court concludes that, even if the claims were not barred under the *Rooker–Feldman* doctrine, a complaint amended to include plaintiffs' muddled fraud and malpractice claims would not survive a motion to dismiss for failure to state a claim under the *Twombly* and *Iqbal* plausibility standard for federal pleading, let alone the heightened standard applicable to fraud pleadings under Federal Rule of Civil Procedure 9(b). *See Ashcroft v. Iqbal,* ––– U.S. ––––, ––––, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) ("[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' ") (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007))); *Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir.1988) (dismissal appropriate where "complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised."); *Prezzi v. Schelter,* 469 F.2d 691, 692 (2d Cir.1972) (per curiam) (dismissal appropriate where complaint is a "labyrinthian prolixity of unrelated and vituperative charges that defied comprehension"); *Iwachiw v. N.Y.C. Bd. of Elections,* 273 F.Supp.2d 224, 227 (E.D.N.Y.2003) (dismissing complaint as "hopelessly unintelligible"). And even in those few snippets where intelligible, plaintiffs' claims are conclusory and wholly unsupported by factual allegations. Indeed, plaintiff Sol Rosen implicitly concedes this point through his multiple requests that this Court aid him in his "investigation" to gather evidence of his alleged fraud. *See, e.g.,* Letter dated April 29, 2011 (requesting that the Court order the appointment of accountants and law firms to investigate and recover losses occasioned by the alleged fraud).

**CONCLUSION**

**\*6** For the above reasons, defendant's motion to dismiss is GRANTED and plaintiffs' complaint is DISMISSED in its entirety for lack of subject matter jurisdiction. Leave to amend is DENIED as futile. The Clerk of Court is directed to enter Judgment accordingly and to close the case. The Clerk is further directed to transmit a copy of this Order to both plaintiffs *pro se* via U.S. Mail at the addresses listed on the docket for each plaintiff.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2011 WL 2550733

---